**FILED**

IN THE UNITED STATES DISTRICT COURT DEC 1 8 2018

FOR THE WESTERN DISTRICT OF TEXAS

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

WACO DIVISION

| | | |
|---|---|---|
| MATCH GROUP, LLC,<br>*Plaintiff,*<br><br>v.<br><br>BUMBLE TRADING INC.,<br>*Defendant.* | § § § § § § § § | CIVIL NO. 6:18-CV-00080-ADA |

## ORDER DENYING DEFENDANT BUMBLE TRADING INC.'S MOTION TO DISMISS MATCH GROUP, LLC'S FIRST AMENDED COMPLAINT

Match Group, LLC ("Match") brought this patent infringement action against Bumble Trading Inc. ("Bumble") on March 16, 2018. Compl., Docket No. 1. The Complaint alleges that Bumble has infringed U.S. Patent Nos. 9,959,023 (the "'023 Patent") and 9,733,811 (the "'811 Patent"). On September 27, 2018, Bumble brought this Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). Docket No. 23. This Motion seeks to have the patent claims dismissed because the asserted patents are patent ineligible under 35 U.S.C. § 101 because they are directed to the abstract concepts of matchmaking and picking certain cards out of a stack. Match filed their Response on October 11, 2018. Docket No. 30. Bumble filed their Reply on October 18, 2018. Docket No. 31. Both Parties filed supplemental briefings. A hearing was held on November 5, 2018 and the matter was taken under submission. For the reasons set forth below, the Court **DENIES** Defendant's Motion.

### I. Background

#### A. The Parties

Tinder, a mobile and web-based online dating application owned by Match, has become an exceptionally popular application. Tinder was released in 2012 and introduced a new method

for people to meet each other using the internet. Tinder uniquely allows users to "like" by swiping right to potentially create a match. Users are provided with information in the form of photos and a short biography. Tinder utilizes a double-blind mutual opt-in system, performed on a specific, draggable-card-based user interface. Match claims, perhaps correctly, that the Tinder application revolutionized the world of online dating and created a cultural phenomenon. Bumble was founded by three former Match executives. It too is a location based social and dating app that helps people searching for dating and professional relationships accomplish those goals.

### B. Overview of the Technology

In December 2007, Match.com filed a provisional application on the previously discussed ideas, disclosing two primary innovations: (1) importing information from social networks into the system, e.g., to increase the ease of signing up for service; and (2) calculating a "score" for users based on various considerations and improving search results by taking those scores into account. *See* Pl.'s Resp. Ex. D, 2007 Provisional at 32:23-25; 39:30-40:4.  The 2007 application also disclosed other improvements.   It described receiving "positive" and "negative" "preferences" concerning users and taking those "preferences" into account when showing search results. *Id.* at 36:10-25 (describing algorithm considering whether Match result entity has expressed a preference for the user); *id.* at 37:13-18 (describing removing entities for which user has expressed negative preferences). This application ultimately became U.S. Patent No. 8,566,327 (not asserted in this case).

Tinder is affiliated with Match. The Tinder app used innovations from the provisional application, and because Match.com and Tinder were affiliates, Match prosecuted the Tinder innovations as a continuation-in-part ("CIP") of the Match.com application.  While claims of the

CIP include innovations from the 2007 application, Match asserts that the claims are directed to new material. *See X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1366 (Fed. Cir.2014) ("[S]ome subject matter of a CIP application is necessarily different . . ."). The CIP portions of the specification focus on improving prior art matchmaking systems in two relevant ways: (1) not allowing communication unless and until both sides have indicated a mutual positive preference; and (2) a card-based interface characterized in part by a specific gesture, labeled in the patents as a "swipe."

Unsurprisingly, given the manner in which Match's well-known product operates, the claims of the '811 and '023 Patents all relate to the use of the dragging or swiping gesture. The '811 Patent's claims also all require the system to "prevent communication" between users unless two users mutually express positive preferences. The '811 Patent was issued on August 15, 2017.  The '023 Patent was issued on May 1, 2018. It is important to note that during the prosecution of both patents the Patent Office had the guidance of the Supreme Court's 2014 *Alice* decision and a significant body of Federal Circuit case law interpreting that decision. The '023 Patent also expressly overcame a subject-matter-eligibility rejection before issuance.

## II. Motion to Dismiss

### A. Bumble's Motion to Dismiss Because the '811 and '023 Patents are Directed to Patent-Ineligible Subject Matter

Rule 8(a) of the Federal Rules of Civil Procedure, which governs pleadings in patent infringement cases, provides that a claim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient factual matter so as to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Iqbal* identifies "[t]wo working principles" that underlie the standard that applies to a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"Section 101 defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Section 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "Section 101 thus specifies four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter." *Bilski*, 561 U.S. at 601. Although acknowledging that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," the Supreme Court has identified three exceptions to Section 101:

4

"laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308–09 (1980). These exceptions are not required by the statutory text but are consistent with the idea that certain discoveries "are part of the storehouse of knowledge of all men" and are "free to all men and reserved exclusively to none." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). Consistent with these principles is that "the concern that drives this exclusionary principle [is] one of pre-emption." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). Consequently, the Supreme Court has required that "[i]f there is to be invention from such a discovery, it must come from the application of the law of nature to a new and useful end." *Funk Bros.*, 333 U.S. at 130. These rules apply equally to product and process claims. *Gottschalk v. Benson*, 409 U.S. 63, 67–68 (1972).

Despite the broad language of § 101, "laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 556 U.S. 66, 70 (2012) (citation omitted). The abstract ideas exception includes mental processes and traditional ways of analyzing information, "[f]undamental economic practice[s] long prevalent in our system of commerce," "longstanding commercial practice[s]," and "method[s] of organizing human activity," *Alice*, 573 U.S. at 219; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011); *Fairwarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).

The Supreme Court has developed a two-part test to distinguish between patents that "claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, a reviewing court determines whether the patent or patents at issue "are directed to a patent-ineligible concept." *Id.* Under *Alice* Step 1, the court asks whether the claims at issue are directed to a judicial exception,

5

which in the case of computer implemented invention implicates the abstract idea exception.  If the patents are so directed, then the court must move to step-two and "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 556 U.S. at 78–79).

The second step has been described as a "search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (quotations omitted). The two steps are related and often involve overlapping scrutiny of the content of the claim:  the first-step looks at the "focus" of the claim, its "character as a whole," and the second-step (where reached) looks more precisely at what the asserted claim elements add—specifically, whether the elements identify an "inventive concept" in the application of the ineligible matter to which the claim is directed.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

*Alice* is the most recent statement on the proper application of these principles. *Alice* expanded the two-step approach for resolving Section 101 issues first adopted in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012). In the first step, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77).  If the claims are not directed to an ineligible concept, the inquiry ends—the claims are eligible.  *Enfish, LLC*, 822 F.3d at 1339. If this standard is satisfied, then in the second step the court must ask "[w]hat else is there in the claims before us?" *Alice*, 573 U.S. at 217. This requires considering "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements

6

'transform the nature of the claim' into a patent eligible application." *Id.* (citing *Mayo*, 566 U.S. at 78–79). In applying this second step, a court must "search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (citing *Mayo*, 566 U.S. at 72–73).

In addition to the cases referenced above, the Federal Circuit has issued a number of precedential decisions finding claims to software-related inventions patent eligible under 35 U.S.C. § 101 because they are not directed to an abstract idea. These cases are consistent with an ever-enlarging number of cases, including *Enfish*, confirming that software-based innovations can make "non-abstract improvements to computer technology" and be deemed patent-eligible subject matter at the first step of the *Alice* analysis. The Federal Circuit has repeatedly confirmed that concrete improvements to user interfaces recite patent-eligible computer improvements. The inventors of the patent concede that they did not invent "menus" or summaries, applications, launching applications, data, or summarizing data.

A claim directed to a computer-device improvement, rather than an "abstract idea" that invokes computers "merely as a tool," is patent eligible. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). In *Core Wireless Licensing S.A.R.L.*, the Federal Circuit held that user interface claims are patent eligible under 35 U.S.C. § 101 because they "recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices." 880 F.3d at 1363. In *Core Wireless Licensing S.A.R.L.*, the claimed invention involved a graphical user interface (GUI) for mobile devices that displays an application summary of each application on the main menu while those applications are in an unlaunched state. The claims to computing devices were held patent eligible because the court

concluded that they were directed to an improved user interface for electronic devices, not to the abstract idea of an index. The court found that the claims were directed to "a particular manner of summarizing and presenting information in electronic devices" and that the claims did not "us[e] conventional user interface methods to display a generic index on a computer." *Id.*

The Federal Circuit also found a user interface claim eligible at step 1 in *Trading Technologies Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017). The claims at issue recited "a method for displaying market information" related to commodity trading. Specifically, the claims recited an interface that displayed dynamic quantity bids and asks information alongside static pricing information, so traders could trade commodities more quickly, while ensuring that their trades were made at their preferred price. *Id.* at 1003. While those inventors did not invent static pricing, dynamic quantities, bid prices, or ask prices, the court found that the interface that was claimed was an improvement upon prior art modes, where, on prior interfaces, a price could change based on changing market conditions while the trade was being executed. *Id.* at 1006.

The Federal Circuit recently reversed a holding (in part) by a district judge that the Borland/DET spreadsheet-tab patent claims were directed to abstract ideas. *Data Engine Technologies v. Google*, ___ F. Cir. ___, 2017-1135 (October 9, 2018). The Federal Circuit determined that at least some of the claims were not abstract but were directed to a specific improved method for navigating through complex three-dimensional electronic spreadsheets. The eligible inventions recited the addition of "notebook tabs" to existing three-dimensional spreadsheet interfaces to navigate between pages. Slip Op. at 7–8. Again, three-dimensional spreadsheets preexisted the claimed inventions and "humans [had] long used tabs to organize information." Slip Op. at 20. Despite this undeniable fact, the Federal Circuit held that the

representative claim recited a patentable improvement to user interface technology. Not unlike the patents asserted here, the Circuit Court found that the patent solved problems in existing interface technology by providing a "highly intuitive, user-friendly interface with familiar notebook tabs for navigating the three-dimensional work-sheet environment," and was therefore patent eligible. Slip Op. at 13. Critical to the analysis here, the Circuit Court disclosed that notebook tab improvement solved computer-based problems specifically because "it include[d] user-familiar objects, i.e., paradigms of real-world objects which the user already knows." Slip Op. at 4.

For purposes of this Motion, the Court finds the decisions in *Core Wireless*, *Trading Technologies*, and *Data Engine* to be persuasive. The claims here are directed to a new user interface—in this case, for a dating application. *See, e.g.*, Claim 1 (reciting a "method of navigating a user interface"); Claim 3 (reciting "a system," comprising "an interface" presenting graphics in a particular way). The application is characterized by a "stack of cards," that are "graphical representations of [] online dating profile[s]," and user preferences regarding those cards are detected by virtue of a "gesture," where the "positive preference" gesture is determined by "detecting a right swiping direction." When a user performs this gesture, the interface is modified to both show a new item of information and to automatically remove the first card. The Court finds that these claims improve existing interface technology sufficiently to survive a motion to dismiss under Section 101.

The claims of the '023 Patent recite "an interface" that presents a "graphical representation of [a first online dating profile] as a first card in a stack of cards," with a processor to "detect a gesture," the gesture "corresponding to a positive preference indication," and where the system can detect a "right swiping direction" associated with the positive gesture. *See, e.g.*,

Claim 3. In response to detecting the gesture, the interface automatically both presents a second graphical representation of a profile and removes the first. *Id.*

The Court agrees for purposes of this motion with Match's contention that the claims of the '023 Patent are indistinguishable from the claims in *Core Wireless*, *Trading Technologies*, and *Data Engine*. Like those eligible patent claims, the claims here are directed to a new user interface—in this case, for a dating application. *See, e.g.*, Claim 1 (reciting a "method of navigating a user interface"); Claim 3 (reciting "a system," comprising "an interface" presenting graphics in a particular way). The application is characterized by a "stack of cards," that are "graphical representations of [] online dating profile[s]," and user preferences regarding those cards are detected by virtue of a "gesture," where the "positive preference" gesture is determined by "detecting a right swiping direction." When a user performs the gesture, the interface is modified to both show a new item of information and to automatically remove the first card. These innovations improve existing interface technology. This improvement has been a commercial success because it has increased "the speed of a user's navigation through [potential matches]," which is apparently important to a substantial number of people who are interested in meeting other people via the internet. *Core Wireless*, 880 F.3d 1363; FAC at ¶¶ 103–105; 125–28.

The '811 Patent is eligible for many of the same reasons as the '023 Patent. Like the '023 Patent, it describes a system employing an interface with graphical representations of online dating profiles. It describes indicating preferences by use of a "swiping gesture," and describes removing one profile and showing another profile after receiving such a gesture. *See, e.g.*, Claim 7 ("[A]utomatically cause the interface to remove the presentation of the first potential match . . . and cause the interface to present . . . a second potential match . . . ."). It thus recites non-

abstract subject matter in much the same manner as the '023 Patent. The Court agrees that the '811 Patent describes narrower functionality and more specifics about the flow of the improved interface and

system.

The Court has also carefully considered the recent decisions in *Berkheimer v HP, Inc.,* 881 F.3d 1360 (Fed. Cir. 2018) and *Aatrix Software, Inc. v Green Shades Software, Inc.,* 890 F.3d 1354 (Fed. Cir. 2018). In *Berkheimer,* the Circuit Court wrote:

> The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. 91, 95, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011). Like indefiniteness, enablement, or obviousness, whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.,* 811 F.3d 1334, 1343 (Fed. Cir. 2016) ("Indefiniteness is a question of law that we review de novo, [ ] subject to a determination of underlying facts."); *Alcon Research Ltd. v. Barr Labs., Inc.,* 745 F.3d 1180, 1188 (Fed. Cir. 2014) ("Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112 is a question of law that we review without deference, although the determination may be based on underlying factual findings, which we review for clear error."); *Apple Inc. v. Samsung Elecs. Co., Ltd.,* 839 F.3d 1034, 1047 (Fed. Cir. 2016) (en banc) ("Obviousness is a question of law based on underlying facts."). We have previously stated that "[t]he § 101 inquiry `may contain underlying factual issues.'" *Mortg. Grader,* 811 F.3d at 1325 (emphasis in original) (quoting *Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1341 (Fed. Cir. 2013)). And the Supreme Court recognized that in making the § 101 determination, the inquiry "might sometimes overlap" with other fact-intensive inquiries like novelty under § 102. *Mayo,* 566 U.S. at 90, 132 S.Ct. 1289.

*Berkheimer,* 881 F.3d at 1368. In *Aatrix,* the Court wrote:

> Whether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time may require "weigh[ing] evidence," "mak[ing] credibility judgments," and addressing "narrow facts that utterly resist generalization." *Id.* at 967 (quoting *Pierce v. Underwood,* 487 U.S. 552, 561–62 (1988)). The Supreme Court in Alice asked whether the claimed activities were "previously known to

the industry," and in Mayo asked whether they were "previously engaged in by researchers in the field." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012). Indeed, the Court recognized that "in evaluating the significance of additional steps, the § 101 patent eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap." *Mayo*, 566 U.S. at 90. "[C]ase law from the Supreme Court and this court has stated for decades that anticipation is a factual question." *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1068 (Fed. Cir. 2017). While the ultimate question of patent eligibility is one of law, it is not surprising that it may contain underlying issues of fact.

*Aatrix*, 890 F.3d at 1355.

Under Fed. R. Civ. P. 12(b)(6) all facts asserted in the complaint by the plaintiff (i.e., the patent owner) are taken as true and dismissal is appropriate only when the plaintiff cannot succeed based on the facts plead in the complaint. Moreover, the Court notes that at this early stage, no discovery has occurred, and no experts have been engaged or deposed. Viewing the allegations made in the Complaint in the light most favorable to Match and construing all reasonable inferences in Match's favor, the Court has no basis on which to disagree with the allegations made by Match at the Rule 12 stage.

There is a presumption that a patent is valid. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000). The defendant bears the burden of proving invalidity by clear and convincing evidence, and the burden never shifts to the plaintiff, the patentee, to prove validity. Where a motion to dismiss is based on a claim of patent ineligible subject matter, dismissal will generally be unwarranted unless the "*only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, Civ. No. 16-212, 2016 WL 4639140, at *1 (D. Del. Sept. 6, 2016) (emphasis in original); *accord Ultramercial, Inc. v. Hulu*, LLC, 722 F.3d 1335, 1339 (Fed. Cir. 2013), vacated sub nom. *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014). In a patent case, success on a motion to dismiss is made more difficult by the presumption of validity that attaches to patents.

See 35 U.S.C. § 282(a) ("A patent shall be presumed valid . . . [and t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."). While not all courts have extended this presumption to challenges of validity under § 101, the Court agrees with the decisions that have applied the statutory presumption of validity. *See, e.g., Proto Labs, Inc. v. Ico Products, LLC*, Civ. No. 15-2562, 2016 WL 4974951, at *5 (D. Minn. Sept. 16, 2016) (citing cases and applying the statutory presumption of validity).

The Court finds, based on these factors, that denial of the motion to dismiss is appropriate at this time. The Court notes that this decision is made without prejudice to it being raised again in the future at the Summary Judgment stage. It is entirely possible that, after discovery and further development of the record, Bumble will be successful in demonstrating that the asserted claims are invalid. The Court's decision is in line with other cases where § 101 invalidation challenges have been denied at the motion-to-dismiss stage. *See, e.g., Bascom Global Internet Servs. v. AT&T Mobility LLC,* 827 F.3d 1341 (Fed. Cir. 2016); and *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).

## B. Bumble's Motion to Dismiss Match's Trade Secret Claim

Match contends that Bumble took a design concept developed in-house at Tinder and released it for its own product. Bumble argues that the identified business concept it stole could not derive value from being a secret because, if implemented, it would not have been one. The Court finds that this is an issue that is not proper for dismissal at the pre-discovery stage and will deny the Motion without prejudice to it being refiled in the future as a motion for summary judgment.

## C. Bumble's Motion to Dismiss Based on the Statute of Limitations

Bumble moves the Court to dismiss on the basis of the statute of limitations. Time-bar is an affirmative defense, and the burden is on Bumble to prove that the claim is time-barred. *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 629 (5th Cir. 1992). The Court denies the Motion without prejudice to it being refiled based on any evidence that is adduced at that deposition that might resolve this issue as a matter of law.

### D. Bumble's Motion to Strike:

Bumble has moved to strike Paragraphs 201-208 of the First Amended Complaint. The Court denies this Motion.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Bumble's Motion to Dismiss in its entirety. Accordingly, it is:

**ORDERED** that Defendant's Motion to Dismiss the '811 and '023 Patents on the Basis That Those Patents are Directed to Patent-Ineligible Subject Matter is **DENIED WITHOUT PREJUDICE**.

**FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Trade Secret Claim is **DENIED WITHOUT PREJUDICE**.

**FURTHER ORDERED** that Defendant's Motion to Dismiss Based on Statute of Limitations is **DENIED WITHOUT PREJUDICE**.

**FINALLY ORDERED** that Defendant's Motion to Strike is **DENIED**.

**SIGNED** this 18th day of December 2018.


_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE