# EXHIBIT 8

PATENT NO.     : 9,733,811 B2
APPLICATION NO.   : 14/059192
DATED        : August 15, 2017
INVENTOR(S)    : Sean Rad et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In the Claims

Column 25, Line 20, after "enable" insert --initial--.
Column 25, Line 26, after "enable" insert --initial--.
Column 25, Line 28, after second reference of "user", delete "both".
Column 25, Line 31, after "regarding a", delete "second" and insert --third--.
Column 25, Line 34, after "of the", delete "second" and insert --third--.
Column 25, Line 37, after "the", delete "second" and insert --third--.
Column 25, Line 39, delete "determining to prevent" and insert --preventing--.
Column 25, Line 40, delete "in response to" and insert --after--.
Column 25, Line 41, delete "both".
Column 25, Line 41, delete "positive" and insert --negative--.
Column 25, Line 42, after "the", delete "second user and the second".
Column 25, Line 43, delete "user has expressed the positive preference indication".
Column 25, Line 44, delete "regarding the first" and insert --third--.
Column 25, Line 46, after "regarding a", delete "third" and insert --fourth--.
Column 25, Line 49, after "representation of the", delete "third" and insert --fourth--.
Column 25, Line 51, before "potential match", delete "third" and insert --fourth--.
Column 25, Line 53, delete "determining to prevent" and insert --preventing--.
Column 25, Line 54, delete "in response to" and insert --after--.
Column 26, Line 43, after "enable" insert --initial--.
Column 26, Line 49, after "enable" insert --initial--.
Column 26, Line 51, after "first user", delete "both".
Column 26, Line 54, after "regarding a", delete "second" and insert --third--.
Column 26, Line 57, after "representation of the", delete "second" and insert --third--.
Column 26, Line 60, after "the", delete "second" and insert --third--.
Column 26, Line 62, delete "determine to".
Column 26, Line 63, delete "in response to" and insert --after--.
Column 26, Line 64, delete "both".

Signed and Sealed this
Twenty-first Day of November, 2017

*Joseph Matal*

Joseph Matal
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user (Claim 23);

- determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user (Claim 30); and

- determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user (Claim 37).

Not only that, *Janssens teaches away* from these limitations. This is significant because "[a] Prima Facie case of obviousness may also be rebutted by showing that the art, in any material respect, teaches away from the claimed invention." *In re Geisler*, 116 F.3d 1465, 1471 (Fed. Cir. 1997); *see also* MPEP 2145(X.D.2).

*Janssens* discloses that users can communicate with each other prior to the "linking" cited by the Examiner. *See, e.g., Janssens* at ¶ 95. Paragraphs 52-53 of *Janssens* suggests that users can freely communicate unless they are prevented upon request by a user. This *teaches away* from the claimed manner of enabling initial communication as users are prevented from communicating until the conditions specified in the claim are met. *See also id.* at ¶ 5. Paragraph 56 of *Janssens* merely discloses users setting preferences but otherwise allowing open communication between users of the system. Paragraph 178 of *Janssens* addresses a "speed dating" situation where users who have expressed no preference for other users are forced to chat with another for a specified period of time. This again *teaches away* from the claimed manner of enabling initial communication which require a particular set of factors to allow for communication between users. Thus, not only has the Examiner failed to identify one passage of *Janssens* that explicitly teaches enabling initial communication in the manner claimed, numerous passages in *Janssens* *teach the opposite* and allow users to communicate before the "linking" feature discussed by the Examiner.

### *The claims are not obvious in view of* Janssens *and* Benschop.

In the alternative, the Office Action rejects the independent claims as obvious by attempting to remedy the deficiencies of *Janssens* noted above with portions of *Benschop*. Office Action at 8. But this rejection suffers from two legal deficiencies. First, obviousness

MTCH-0000174

rejections are inappropriate when a reference teaches away from the claims. *In re Geisler*, 116 F.3d 1465, 1471 (Fed. Cir. 1997); *see also* MPEP 2145(X)(D)(2). Second, obviousness rejections are improper where a proposed modification would render the prior art being modified unsatisfactory for its intended purpose. MPEP 2143.01(V).

*Janssens* teaches away from being combined with *Benschop*. The cited portions of *Benschop* are directed to an e-mail system wherein users can only e-mail each other if they are in each other's address books. *Benschop* at ¶ 60. *Benschop* seeks to allow messaging **between users that already know each other.** *Id.* at ¶ 58. But, as detailed above, *Janssens* **teaches away** from enabling initial communication in the manner claimed because *Janssens* is directed to facilitating communication **between users who do not know each other.**

Incorporating the teachings of *Benschop* would frustrate the purpose of *Janssens*. As explained above, the cited portions *Benschop* is directed to an e-mail system that reduces spam by allowing messaging between users that already know each other. *See Benschop* at ¶¶ 57 & 60. But *Janssens* teaches an electronic dating platform where users **do not know each other** and are using the platform to get acquainted. Thus, combining *Benschop* and *Janssens* in the manner suggested by the Office Action would lead to a system **inoperable for its intended purpose**.

### Objective evidence demonstrates that the claims are not obvious.

The law establishes that secondary considerations based on objective evidence can rebut that the claims are not obvious. MPEP 2145. One such consideration is the commercial success of an embodiment of the claims; another is whether the claimed invention was copied by others. *Id.* A third consideration is whether the claimed invention has received industry praise. *Id.*; *Vulcan Engineering Co. v. Fata Aluminum Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002) ("Appreciation by contemporaries skilled in the field of the invention is a useful indicator of whether the invention would have been obvious"). The claimed inventions of the present application have been commercially successful, copied by others, and have received industry praise as the objective evidence discussed below demonstrates. Therefore, the obviousness rejection of the claims should be withdrawn.

Multiple articles from different publications attest to the overwhelming success of Applicant's system that embodies the independent claims and specifically cite the claimed

MTCH-0000175

| *Applicant-Initiated Interview Summary* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 14/059,192 | RAD ET AL. | |
| | Examiner | Art Unit | |
| | YUK TING CHOI | 2164 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *YUK TING CHOI*.         (3)_____.

(2) *ROSHAN S. MANSHINGHANI*.     (4)_____.

Date of Interview: *27 July 2016*.

Type:   ☒ Telephonic   ☐ Video Conference
      ☐ Personal [copy given to: ☐ applicant   ☒ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.
    If Yes, brief description: _____.

Issues Discussed   ☐101  ☐112  ☒102  ☐103  ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *23*.

Identification of prior art discussed: *JANSSENS*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*Applicant briefly explained the key differences between the Janssens reference and the current claimed invention. Applicant discussed the current claimed invention requires both users like each other before they start a communication but the cited reference Janssens can initiate a communication before both users "liked" each other. The Examiner explained the Jassens referemce has many different ways to initiate a communication between the users, and Applicant has to clarify the enabling feature, e.g. clairfying on what kind of communication, and the claim has to exclude all other communications between the users when both users have not liked each other. No agreement has been reached.*

Applicant recordation instructions: The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

Examiner recordation instructions: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /YUK TING CHOI/ Primary Examiner, Art Unit 2164 | |
|---|---|

MTCH-0000450

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | Sean Rad et al. |
| Serial No.: | 14/059,192 |
| Filing Date: | October 21, 2013 |
| Group Art Unit: | 2164 |
| Examiner: | Yuk Ting Choi |
| Confirmation No.: | 1044 |
| Title: | MATCHING PROCESS SYSTEM AND METHOD |

**MAIL STOP: AF**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## <u>Response to Office Action Pursuant to 37 C. F. R. § 1.116</u>

In response to the Office Action dated December 9, 2015 ("Office Action"), Applicants respectfully request the Examiner to reconsider the rejections of the claims in view of the following amendments and remarks.

MTCH-0000583

**In the Claims**:

    1-22.   (Canceled)

    23.    **(Currently Amended)** A computer implemented method of profile matching, comprising:

    electronically receiving a first request for matching, the first request electronically submitted by a first user using a first electronic device;

    determining a set of potential matches for the first user in response to receiving the first request;

    causing the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

    determining that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

    in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

    determining that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

    determining to enable communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

    in response to determining to enable communication between the first user and the second user, causing the graphical user interface to display to the first user both the graphical representation of the first potential match; **and a text area, the text area configured to receive text inputted by the first user to send to the second user; and**

~~wherein the first user is identified using a first social networking platform and the second user is identified using a second social networking platform that is different than the first social networking platform.~~

**determining that the first user expressed a negative preference indication regarding a second potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the second potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the second potential match corresponding to a third user;**

**determining to prevent communication between the first user and the third user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;**

**determining that the first user expressed a positive preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the third potential match corresponding to a fourth user; and**

**determining to prevent communication between the first user and the fourth user in response to determining that the fourth user has expressed a negative preference indication regarding the first user.**

24.    (Canceled)

25.    (Previously Presented)  The method of Claim 23, further comprising:

in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, causing the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling the text area to be presented to the first user.

26. (Previously Presented) The method of Claim 23, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

27. **(Canceled)**

28. **(Canceled)**

29. (Canceled)

30. **(Currently Amended)** A non-transitory computer-readable medium comprising instructions that, when executed by a processor, are configured to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determine a set of potential matches for the first user in response to receiving the first request;

cause the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to the determination that the first user expressed the positive preference indication regarding the first potential match, automatically cause the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determine to enable communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable communication between the first user and the second user, cause the graphical user interface to display to the first user both the graphical representation of the first potential match~~; and a text area, the text area configured to receive text inputted by the first user to send to the second user; and~~

~~wherein the first user is identified using a first social networking platform and the second user is identified using a second social networking platform that is different than the first social networking platform.~~

**determine that the first user expressed a negative preference indication regarding a second potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the second potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the second potential match corresponding to a third user;**

**determine to prevent communication between the first user and the third user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;**

**determine that the first user expressed a positive preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the third potential match corresponding to a fourth user; and**

**determine to prevent communication between the first user and the fourth user in response to determining that the fourth user has expressed a negative preference indication regarding the first user.**

31.     (Canceled)

32.     (Previously Presented) The medium of Claim 30, further comprising instructions configured to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling the text area to be presented to the first user.

33.     (Previously Presented)  The medium of Claim 30, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

34.     **(Canceled)**

35.     **(Canceled)**

36.     (Canceled)

37.    **(Currently Amended)** A system for profile matching, comprising:

an interface operable to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device; and

a processor coupled to the interface and operable to:

determine a set of potential matches for the first user in response to receiving the first request;

cause the interface to display a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the interface has received a positive preference indication from the first user regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

automatically cause the interface to remove the presentation of the first potential match from the graphical user interface in response to detecting the gesture and cause the interface to present, on the graphical user interface, a second potential match of the set of potential matches to the first user;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match; and

determine to enable communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable communication between the first user and the second user, cause the graphical user interface to display to the first user both the graphical representation of the first potential match; ~~and a text area, the text area configured to receive text inputted by the first user to send to the second user; and~~

~~wherein the first user is identified using a first social networking platform and the second user is identified using a second social networking platform that is different than the first social networking platform.~~

determine that the first user expressed a negative preference indication regarding a second potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the second potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the second potential match corresponding to a third user;

determine to prevent communication between the first user and the third user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

determine that the first user expressed a positive preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the third potential match corresponding to a fourth user; and

determine to prevent communication between the first user and the fourth user in response to determining that the fourth user has expressed a negative preference indication regarding the first user.

38.     (Canceled)

39.     (Previously Presented) The system of Claim 37, the processor further operable to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling the text area to be presented to the first user.

10

40.    (Previously Presented) The system of Claim 37, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

41.    **(Canceled)**

42.    **(Canceled)**

43.    (Canceled)

## REMARKS

This Application has been carefully reviewed in light of the Office Action. Claims 23, 25-28, 30, 32-35, 37 and 39-42 are pending and stand rejected. Applicants amend Claims 23, 30, and 37, and cancel Claims 27, 28, 34, 35, 41, and 42. Applicants respectfully request reconsideration and allowance of all pending claims.

### Section 102 and 103 Rejections

The Examiner rejects Claims 23, 25, 26, 28, 30, 32, 33, 35, 37 and 39-41 under pre-AIA 35 U.S.C. § 102(e) as allegedly being anticipated by U.S. Patent Publication No. 2014/0040368 A1 by Janssens ("*Janssens*"). The Examiner rejects Claims 27, 34 and 42 under pre-AIA 35 U.S.C. § 103(a) as allegedly being unpatentable over *Janssens* and in view of U.S. Patent Publication No. 2011/0087974 A1 by Kulas ("*Kulas*"). Applicants respectfully traverse these rejections for the reasons discussed below.

The cited portions of the proposed *Janssens-Kulas* combination do not disclose, teach, or suggest all of the limitations of amended Claim 23. For example, neither the cited portions *Janssens* nor *Kulas* disclose the particular manner of expressing preferences and enabling and disabling communication as recited in the following limitations of amended Claim 23:

- determining to enable communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;
- determining that the first user expressed a negative preference indication regarding a second potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the second potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the second potential match corresponding to a third user;
- determining to prevent communication between the first user and the third user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;
- determining that the first user expressed a positive preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the third potential match corresponding to a fourth user; and

- determining to prevent communication between the first user and the fourth user in response to determining that the fourth user has expressed a negative preference indication regarding the first user.

*Janssens* discloses a social interaction system that includes a way for a user to find people of interest. *Janssens* at ¶ 0004. A card-feed pane displays "cards," which may display profiles of users. *Id.* at ¶ 0046. A left (backward) arrow and right (forward) enable the user to view other cards within the card-feed. *Id.* at ¶ 0047. Additionally, clicking, mouse dragging, hovering, swiping, and gesturing, may indicate to the system to display a new card. *Id.* The card-feed also includes a "like" button that records an indication that the current user is interested in the user whose card is being displayed. *Id.* at ¶ 0052.

In rejecting a previous version of Claim 23, the Office Action relies on *Janssens* at paragraphs 64 and 95 as allegedly disclosing enabling communication between the first user and the second user in response to determining that the second user has expressed approval for the first user. The cited paragraphs, however, merely disclose updating a user's contact list or chat list. For example, paragraph 64 discloses that when a user links with another user (e.g., where both users indicated they liked the other user), a small image (e.g., a thumbnail picture) of the linked user previously or newly presented in the chat list or elsewhere may be highlighted or otherwise identified on the user interface (e.g., relative to images of other users in the chat list that are not a link). Thus, upon forming a link the user's chat list images are updated. There is no disclosure in paragraph 64 of *Janssens* of <u>enabling and disabling</u> communication in the manner claimed. In fact, as shown above, *Janssens* teaches away from the claim limitations identified above because it discloses that users exist in the chat list (and communicate with each other) before they are linked. Paragraph 95 of *Janssens* merely discloses that a contact may be automatically added to a given user's contact list when two users are linked and suggests that users could communicate before being linked.

Other portions of *Janssens* cited by the Examiner are similarly deficient. Paragraphs 52-53 of *Janssens* suggests that users can freely communicate unless they are prevented once a user requests. This teaches away from the claimed manner of enabling and disabling communication as users are prevented from communicating until the conditions specified in the claim are met. *See also id.* at ¶ 5. Paragraph 56 of *Janssens*, which addresses communication in the system, fails to disclose the claimed manner of <u>enabling and disabling</u> communication. Rather, consistent with the teachings of *Janssens*, it merely discloses users

setting preferences but otherwise open communication between users of the system. Paragraph 178 addresses a "speed dating" situation where users who have expressed no preference for other users are forced to chat with another for a specified period of time. This again teaches away from the claimed manner of <u>enabling and disabling</u> communication which require a particular set of factors to allow for communication between users.

*Kulas* discloses controls in a graphical user interface where a user's touch or swipe of the control indicates the user's state of mind. *Kulas* at ¶ 0005. The cited portions of *Kulas* do not address when communication is allowed between users. As such, the cited portions of *Kuals* do not remedy the deficiencies of *Janssens*.

For at least these reasons, the proposed *Janssens-Kulas* combination at least fails to disclose, teach or suggest the above cited element of Claim 23. Thus, the proposed combination fails to disclose, teach or suggest each element of independent Claim 23. Accordingly, Claim 23 and each of its dependent claims are in condition for allowance.

For analogous reasons, Applicants respectfully submit that Claim 30 is patentable over the cited art used in its rejection and request that the rejection of this claim be withdrawn. In particular, Claim 30 recites a non-transitory computer readable medium comprising instructions that, when executed by a processor, are configured to in part:

- determine to enable communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;
- determine that the first user expressed a negative preference indication regarding a second potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the second potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the second potential match corresponding to a third user;
- determine to prevent communication between the first user and the third user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;
- determine that the first user expressed a positive preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the third potential match corresponding to a fourth user; and
- determine to prevent communication between the first user and the fourth user in response to determining that the fourth user has expressed a negative preference indication regarding the first user.

These elements are not shown by *Janssens* or *Kulas* for reasons analogous to those discussed above regarding Claim 23. Thus, for at least the reasons discussed with respect to Claim 23, Applicants respectfully request that the rejections of Claim 30 and its dependent claims be withdrawn.

For analogous reasons, Applicants respectfully submit that Claim 37 is patentable over the cited art used in its rejection and request that the rejection of this claim be withdrawn. In particular, Claim 37 recites a system for profile matching, comprising in part a processor operable to:

- determine to enable communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;
- determine that the first user expressed a negative preference indication regarding a second potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the second potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the second potential match corresponding to a third user;
- determine to prevent communication between the first user and the third user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;
- determine that the first user expressed a positive preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the third potential match corresponding to a fourth user; and
- determine to prevent communication between the first user and the fourth user in response to determining that the fourth user has expressed a negative preference indication regarding the first user.

These elements are not shown by *Janssens* or *Kulas*, for reasons analogous to those discussed above regarding Claim 23. Thus, for at least the reasons discussed with respect to Claim 23, Applicants respectfully request that the rejections of Claim 37 and its dependent claims be withdrawn.

## No Waiver

Applicants' arguments are made without prejudice or disclaimer. By not responding to additional statements made by the Examiner, Applicants do not acquiesce to the additional

statements.  The distinctions between the applied references and the claims are provided as examples only and are sufficient to overcome the rejections.  Applicants reserve the right to discuss additional or other distinctions in a later response or on appeal, if appropriate.

## CONCLUSION

Applicants have made an earnest attempt to place this case in condition for allowance. For the foregoing reasons and for other reasons clearly apparent, Applicants respectfully request reconsideration and full allowance of all pending claims.

If the Examiner feels that a telephone conference would advance prosecution of this application in any manner, the Examiner is invited to contact Roshan Mansinghani, Attorney for Applicants, at the Examiner's convenience at (214) 953-6737.

Although Applicants believe no fee is due, the Commissioner is authorized to charge any necessary fees or credit any overpayment to Deposit Account No. 02-0384 of Baker Botts L.L.P.

Respectfully submitted,

Baker Botts L.L.P.
Attorneys for Applicants

Roshan S. Mansinghani
Reg. No. 62,429
(214) 953-6737

Date: February 9, 2016

Correspondence Address:
Customer No. **05073**