REDACTED PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **MATCH GROUP, LLC** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BUMBLE TRADING INC. and BUMBLE** | § | |
| **HOLDING, LTD.,** | § | **No. 6:18-cv-00080-ADA** |
| | § | |
| **Defendants.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **BUMBLE TRADING INC. and BUMBLE** | § | |
| **HOLDING, LTD.,** | § | |
| | § | |
| **Cross-Plaintiffs,** | § | |
| **v.** | § | |
| | § | |
| | § | |
| **MATCH GROUP, LLC and** | § | |
| **IAC/INTERACTIVECORP,** | § | |
| | § | |
| | § | |
| **Cross-Defendants.** | § | |
| | § | |

**PLAINTIFF/COUNTERDEFENDANT MATCH GROUP, LLC AND COUNTER-
DEFENDANT /IAC INTERACTIVECORP'S MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS UNDER RULES 12(b)(1), 12(b)(2), 12(b)(6), AND 12(f)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

I.      THE COURT SHOULD DISMISS BUMBLE'S STATE LAW COUNTERCLAIMS....... 2

    A.   The Court Should Dismiss Bumble's State Law Counterclaims
        Against Both Match and IAC for Lack of Subject Matter Jurisdiction......................... 5

    B.   The Court Should Dismiss Bumble's State Law Counterclaims Against IAC for
        Lack of Personal Jurisdiction. ................................................................................ 8

    C.   The Court Should Dismiss Bumble's State Law Counterclaims on the Merits. ......... 11

        1.   The Court Should Dismiss Each State Law Counterclaim Against Match
            Group, LLC for Failure to Plead Any Match Group, LLC Action ......................... 12

        2.   The Court Should Dismiss Each State Law Counterclaim Against Both
            Match and IAC for Failure to Plead Actionable Representations........................... 12

        3.   The Court Should Dismiss Bumble's State Law Counterclaims Because
            Bumble Could Not Have Justifiably Relied on the Pleaded Representations. ........ 15

II.     THE COURT SHOULD DISMISS BUMBLE'S TRADEMARK-RELATED
       CAUSES OF ACTION TWO THROUGH SIX. .......................................................... 19

    D.   Factual Background Concerning Bumble's Trademark-Related Counterclaims ......... 20

    E.   The Court Has No Jurisdiction Under the Lanham Act to Deny Registration
        for Any Pending-Registration Mark Other than SWIPE in Class 45. ....................... 222

        1.   The Court Can Deny Registrations Only When the Request Has a
            "Close Nexus" With a Registered Mark. ............................................................ 222

        2.   Here, There Is No Close Nexus Between Match's Registered "SWIPE"
            Mark and Match's Asserted Pending-Registration Horizontal Marks or
            Match's Unasserted Pending-Registration Marks. .............................................. 23

    F.   The Court Should Decline Declaratory Judgment Act Jurisdiction Over Any
        Denial of Registration Request Concerning Any Pending-Registration Mark
        Other than SWIPE, Class 45. ............................................................................... 25

    G.   The Court Has No Case and Controversy Jurisdiction Over Bumble's Denial
        of Registration Causes of Action Related to the Unasserted Pending-Registration
        Marks; Alternatively, the Court Should Decline Jurisdiction Under the "Primary
        Jurisdiction" Doctrine......................................................................................... 277

III.    THE COURT SHOULD STRIKE BUMBLE'S AFFIRMATIVE DEFENSES............... 28

IV.     CONCLUSION ...................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Addicks Servs., Inc. v. GGP-Bridgeland, LP*
  596 F.3d 286 (5th Cir. 2010) ............................................................... 13, 17

*Adidas-Am., Inc. v. Payless Shoesource, Inc.*
  546 F. Supp. 2d 1029 (D. Or. 2008) ......................................................... 29

*Alpine View Co. v. Atlas Copco AB*
  205 F.3d 208 (5th Cir. 2000) ..................................................................... 9

*Amazing Space, Inc. v. Metro Mini Storage*
  608 F.3d 225 (5th Cir. 2010) ..................................................................... 6

*Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*
  60 F. Supp. 3d 738 (W.D. Tex. 2014) ........................................... 24, 25, 26

*AngioScore, Inc. v. TriReme Med., LLC*
  666 F. App'x 884 (Fed. Cir. 2016) ...................................................... 6, 7, 8

*Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc.*
  684 F.2d 1134 (5th Cir. 1982) ................................................................. 23

*Avon Shoe Co. v. David Crystal, Inc.*
  279 F.2d 607 (2d Cir. 1960) ..................................................................... 25

*BNSF Ry. Co. v. Tyrell*
  137 S.Ct. 1549 (2017) ................................................................................ 9

*Carter v. Target Corp.*
  541 F. App'x 413 (5th Cir. 2013) ............................................................... 3

*CBH Equity, LLC v. Murphy Oil USA, Inc.*
  333 F. Supp. 3d 664 (S.D. Tex. 2018) ...................................................... 18

*Cent. Freight Lines, Inc. v. APA Transport Corp.*
  322 F.3d 376 (5th 2003) ........................................................................... 10

*Cornett v. Longois*
  275 F.3d 42 (5th Cir. 2001) ....................................................................... 8

*Crucci v. Seterus, Inc.*
  2013 WL 6146040 (W.D. Tex. Nov. 21, 2013) ......................................... 3

*Daimler AG v. Bauman*
571 U.S. 117 (2014) ................................................................ 8, 9

*Davis v. Texas Farm Bureau Ins.*
470 S.W.3d 97 (Tex. App.—Hous. [1st Dist.] 2015, no pet.) ................. 18

*Delta Brands Inc. v. Danieli Corp.*
99 Fed. App'x 1 (5th Cir.2004) ..................................................... 9

*E.E.O.C. v. Courtesy Building Servs., Inc.*
2011 WL 208408 (N.D. Tex. Jan. 21, 2011) ................................... 29

*Eagles, Ltd. v. Am. Eagle Found.*
356 F.3d 724 (6th Cir. 2004) ................................................ 23, 27

*Ensley v. Cody Res., Inc.*
171 F.3d 315 (5th Cir. 1999) ....................................................... 15

*F.T.C. v. Think All Pub. L.L.C.*
564 F. Supp. 2d 663 (E.D. Tex. 2008) .......................................... 28

*G & C Land v. Farmland Mgmt. Servs.*
587 F. App'x 99 (5th Cir. 2014) ................................................... 13

*Grant Thornton LLP v. Prospect High Income Fund*
314 S.W.3d 913 (Tex. 2010) ....................................................... 15

*Highway Equip. Co. v. FECO, Ltd.*
469 F.3d 1027 (Fed. Cir. 2006) ..................................................... 8

*Hill Country Bakery, LLC v. Honest Kitchens Grp., LLC*
2017 WL 9362706 (W.D. Tex. Dec. 11, 2017) ................................ 29

*Hoffer v. Shank, P.C.*
2014 WL 12586783 (W.D. Tex. 2014) ............................................ 6

*In re Absolute Res. Corp.*
76 F. Supp. 2d 723 (N.D. Tex. 1999) ....................................... 16, 18

*Joe Hand Promotions, Inc. v. Izalco, Inc.*
2017 WL 3130581 (S.D. Tex. July 24, 2017) ................................. 29

*Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*
1998 WL 766703 (W.D. Wis. June 24, 1998)
*aff'd*, 188 F.3d 427 (7th Cir. 1999) ........................................ 22, 24

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*
  677 F.2d 1045 (5th Cir. 1982)............................................................ 28

*Magna Equities II, LLC v. Heartland Bank*
  2018 WL 4080496 (S.D. Tex. Aug. 27, 2018) ...................................... 17

*Marburger v. Seminole Pipeline Co.*
  957 S.W.2d 82 (Tex. App.—Hous. [14th Dist.] 1997, pet. denied)........................ 18

*Massa v. Jiffy Prod. Co.*
  240 F.2d 702 (9th Cir. 1957)............................................................ 22

*Mercedes-Benz USA, LLC v. Carduco, Inc.*
  2019 WL 847845 (Tex. Feb. 22, 2019) ................................... 15, 16, 17, 18

*Montgomery Indus. Int'l, Inc. v. Thomas Const. Co.*
  620 F.2d 91 (5th Cir. 1980)............................................................. 13

*Neman Fin., L.P. v. Citigroup Glob. Markets, Inc.*
  2018 WL 6265061 (C.D. Cal. Sept. 5, 2018)........................................... 3

*Nike, Inc. v. Already, LLC*
  2011 WL 310321 (S.D.N.Y. Jan. 20, 2011)
  *aff'd*, 568 U.S. 85 (2013)............................................................... 27

*Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*
  477 F.2d 150 (6th Cir.1973)............................................................ 22

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*
  253 F.3d 865 (5th Cir. 2001)........................................................ 10, 11

*Princeton Vanguard, LLC v. Frito Lay N. Am., Inc.*
  786 F.3d 960 (Fed. Cir. 2015)......................................................... 24

*Realty Experts Inc. v. RE Realty Experts, Inc.*
  2012 WL 699512 (S.D. Cal. Mar. 1, 2012)............................................ 27

*Rogers v. McDorman*
  521 F.3d 381 (5th Cir. 2008)........................................................... 28

*Sandefer Oil & Gas, Inc. v. Duhon*
  817 F.3d 526 (5th Cir. 1989)........................................................... 25

*SecurityProfiling, LLC v. Trend Micro Am., Inc.*
  2017 WL 5150682 (E.D. Tex. Mar. 21, 2017)......................................... 29

*Seiferth v. Helicopteros Atuneros, Inc.*
472 F.3d 266 (5th Cir. 2006).................................................................. 8

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*
607 F.3d 1029 (5th Cir. 2010)............................................................... 14

*Simulis, L.L.C. v. Gen. Elec. Capital Corp.*
2008 WL 1747483 (Tex. App.—Hous. [14th Dist.] Apr. 17, 2008)...................... 17

*SnoWizard, Inc. v. Snow Ball's Chance, Ltd.*
2015 WL 5682640 (E.D. La. Sept. 25, 2015) ........................................... 27

*Southmark Corp. v. Life Investors, Inc.*
851 F.2d 763 (5th Cir. 1988).................................................................. 11

*Spolijaric v. Percival Tours, Inc.*
708 S.W.2d 434 (Tex. 1986) .................................................................. 13

*Sugar Busters LLC v. Brennan*
177 F.3d 258 (5th Cir. 1999).................................................................. 24

*Swish Mktg., Inc. v. F.T.C.*
669 F. Supp. 2d 72 (D.D.C. 2009) .......................................................... 26

*Teva Pharm. USA, Inc. v. Sandhu*
291 F. Supp. 3d 659 (E.D. Pa. 2018) ...................................................... 29

*Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n.*
333 F. Supp. 2d 975 (D. Or. 2004)
*aff'd sub nom.*, 465 F.3d 1102 (9th Cir. 2006)......................................... 26

*United Mine Workers v. Gibbs*
383 U.S. 715 (1966) ............................................................................ 6

*Unitek Solvent Servs., Inc. v. Chrysler Grp., LLC.*
2014 WL 5528234 (D. Haw. Oct. 31, 2014)............................................. 28

*Vinewood Capital, L.L.C. v. Al-Maal*
2007 WL 2791876 (N.D. Tex. Sept. 26, 2007) ......................................... 17

*Watson v. CitiMortgage, Inc.*
530 F. App'x 322 (5th Cir. 2013)............................................................ 15

*Wien Air Alaska, Inc. v. Brandt*
195 F.3d 208 (5th Cir.1999).................................................................. 10

REDACTED PUBLIC VERSION

*Wisey's #1 LLC v. Nimellis Pizzeria LLC*
   952 F. Supp. 2d 184 (D.D.C. 2013) ................................................................ 8

*Zany Toys, LLC v. Pearl Enterprises, LLC*
   2015 WL 404644 (D.N.J. Jan. 28, 2015) ...................................................... 22

## Statutes

15 U.S.C. § 1119 .......................................................................... 19, 22, 24

18 U.S.C. § 1836(b)(1) ............................................................................. 6

28 U.S.C. § 1367 ...................................................................................... 5

## Other Authorities

*McCarthy on Trademarks*, § 30:113.50 (4th ed. 2014) ............................ 22

*Trademark Manual of Examining Procedure* § 1202.03 ........................... 28

REDACTED PUBLIC VERSION

## PRELIMINARY STATEMENT

In their most recent answer and counterclaims, Defendants/Counter-Plaintiffs Bumble Trading Inc. and Bumble Holding, Ltd. (collectively, "Bumble") allege a host of legally baseless counterclaims and affirmative defenses against Plaintiff/Counter-Defendant Match Group, LLC ("Match") and Counter-Defendant IAC/InterActiveCorp ("IAC").  The Court should dismiss the vast majority of these on the pleadings.

Bumble has alleged five counterclaims[1] against Match and IAC collectively (Causes of Action 11 through 15) related to alleged conduct during the course of potential acquisition discussions between non-party Match Group, Inc. (Match Group, LLC's corporate parent) and Bumble-related entities (hereinafter, Bumble's "State Law Counterclaims").  The Court should dismiss the State Law Counterclaims for several reasons:  First, the Court has no subject matter jurisdiction to resolve them.  Bumble alleges supplemental jurisdiction, but there is no common nucleus of fact between Match's federal patent infringement, trademark infringement, and trade secret misappropriation claims and the State Law Counterclaims.  To the contrary, the claims, and the underlying facts, are separate and unconnected.[2]  Moreover, even if the Court has subject matter jurisdiction, it should still dismiss the claims.  As to IAC, Bumble fails to allege a *prima*

---

[1] While Bumble designates its claims against IAC as "Cross-Claims," they are actually first-party direct claims.  For simplicity, they are referred to herein as counterclaims despite the fact that IAC is not a plaintiff in this case.

[2] Previously, Bumble alleged *different* counterclaims, in connection with a different lawsuit, that were intertwined with Match's federal claims because they depended on disproving the allegations in Match's federal claims and that Match was asserting its claims in bad faith to interfere with Bumble's sale process.  The same set of facts that would be litigated in the federal claims would also have been litigated in those state-law counterclaims.  Because of their relationship to them, the prior counterclaims also served as a link between Match's federal questions and Bumble's current State Law Counterclaims such that Match sought to have all of the counterclaims litigated in federal court.  Bumble dismissed those original counterclaims with prejudice, and that link no longer exists.

1

REDACTED PUBLIC VERSION

*facie* case of personal jurisdiction.  As to both Match and IAC, the Court should dismiss the claims on their merits; Bumble pleads no relevant facts concerning the appropriate "Match Group" entity, the pleaded representations are not actionable under Texas law, nor could Bumble have justifiably relied on them.

Bumble has also alleged five counterclaims (Cause of Action 2-6) seeking "Denial of Registration" of a variety of Match-owned trademarks, many of which have nothing to do with the other issues pending before the Court.  Because the Court has no jurisdiction to grant Bumble's requested relief, and because exercising jurisdiction would otherwise be wasteful, inefficient, and usurp the PTO's role in deciding registration issues in the first instance, the Court should dismiss these counterclaims as well.

Finally, Bumble pleads 21 separate "affirmative defenses."  The Court should also dismiss or strike most of these.  Ten (1, 4, 5, 8, 11, 15, 17, 18, 19, and 20) are redundant; they are not "affirmative defenses" but simply allegations that Match will not prevail in proving its claims.  Two (14, 19) are simply legally untenable, and eight are wholly conclusory and insufficiently pleaded to put Match on fair notice of the nature of Bumble's defense (3, 7, 9, 12, 13, 14, 21).

The Court should grant Match and IAC's motion in full.

## I.       THE COURT SHOULD DISMISS BUMBLE'S STATE LAW COUNTERCLAIMS.

In the State Law Counterclaims, Bumble alleges five separate causes of action against Match and IAC collectively: fraud, negligent representation, unfair competition, promissory estoppel, and interference with prospective business relations.  Although these are alleged separately, they arise out of substantively identical conduct.  Bumble's theory is that Match and

REDACTED PUBLIC VERSION

IAC allegedly agreed to falsely "use the promise of a superior offer to delay Bumble from closing a deal with another investor."  Dkt. 66 at ¶ 46.[3]

These allegations arise out of an acquisition discussion between a group of Bumble-affiliated companies and Match Group, Inc.  And despite Bumble improperly conflating them, Match Group, Inc. and Match Group, LLC are distinct legal entities.  *Compare* Dkt. 66 ¶ 11-12 (attributing non-Tinder brands to "Match Group LLC"), *with* Dkt. 64 at 1 (indicating that non-Tinder brands are owned by Match Group, Inc.).  Each of Bumble's operative statements about Match Group, LLC actually refers to nonparty Match Group, Inc.  *See* Ex. A at 21.1.[4] (indicating Match Group, LLC is subsidiary of Match Group, Inc.)

On October 17, 2017, ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[3] For purposes of this motion, when Match and IAC refer to paragraphs of Dkt. 66, Match and IAC refer to the paragraphs in Bumble's counterclaim portion of its pleading unless otherwise noted.

[4] In this motion, Match and IAC rely on several documents technically outside the pleadings.  The Court may consider all of these documents.  Exhibits A-B, and E-I are all "public records" from the SEC, PTO, and the U.K. Companies house.  *See, e.g.*, *Neman Fin., L.P. v. Citigroup Glob. Markets, Inc.*, 2018 WL 6265061, at *2 (C.D. Cal. Sept. 5, 2018) (taking judicial notice of "Companies House" document).  The Court may rely on Exhibits C and D because they are referenced in and central to Bumble's counterclaims.  *See, e.g.*, *Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013); *compare* Dkt. 66 at ¶ 65 (describing Feb. 9, 2018 offer) *with* Ex. D (dated Feb. 9, 2018).  Even if not expressly referenced, Exhibit C ████████████
████████████████████████████████████████████████████  *See Crucci v. Seterus, Inc.*, 2013 WL 6146040, at *4 (W.D. Tex. Nov. 21, 2013) ("When a document attached to a motion to dismiss has some operative significance and effect . . . the Court may properly consider that document.").

REDACTED PUBLIC VERSION

████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

    Consistent with this agreement, the parties discussed a possible acquisition.  In a February 9, 2019, letter Bumble's complaint references, *see* Dkt. 66 at ¶ 66, Gary Swidler, Match Group, Inc.'s CFO, ███████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

According to Bumble's theory, Match and IAC allegedly led Bumble on about a potential

acquisition, intending for these alleged potential third-party investors to lose interest in the

acquisition or investment. *See, e.g.*, Dkt. 66 at ¶¶ 46-48. Bumble alleges it was harmed because

it elected to allow other offers and relationships to lapse while waiting on Match. *Id.* ¶ 78. But

the pleadings and incorporated evidence are clear that Bumble made this election of its own

accord despite Match indicating only possible interest:

- Bumble admits the sale was intended to be "an auction-like process," *id.* ¶ 57;

- Bumble admits Match had already indicated that Bumble's desired valuation was outside of Match's comfort level, *id.* ¶ 54;

- Bumble admits Match repeatedly indicated its interest was conditional on due diligence review and ultimate Board approval, Dkt. 66 at ¶¶ 66-70; 73-75

-  Ex. C; and

- Mr. Swidler reiterated that ████████████████████████ ████████████████████ Ex. D;

The Court should dismiss these counterclaims because 1) it has no subject matter

jurisdiction over them; 2) as to IAC, there is no personal jurisdiction in Texas; and 3) they fail to

state a plausible claim for relief on the merits.

### A.   The Court Should Dismiss Bumble's State Law Counterclaims Against Both Match and IAC for Lack of Subject Matter Jurisdiction.

Bumble's State Law Counterclaims each arise entirely under state law. Bumble Trading

Inc. and Match Group, LLC are both Texas residents, and thus complete diversity does not exist.

The only potential jurisdictional basis for these claims is therefore supplemental jurisdiction. 28

U.S.C. § 1367.  A court may exercise supplemental jurisdiction over state law claims where those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Hoffer v. Shank, P.C.*, 2014 WL 12586783 at *1 (W.D. Tex. 2014).  To establish supplemental jurisdiction, Bumble must show a "common nucleus of operative fact" shared by (i) the federal claims alleged in either Match's complaint or in Bumble's counterclaims and (ii) Bumble's State Law Counterclaims.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  Here, there is no such common nucleus.

Match's federal claims here depend entirely on Bumble's role in developing, distributing, and advertising the Bumble mobile dating application.  Match raises three categories of federal claims: (1) patent infringement; (2) trademark infringement and Lanham Act violations; and (3) trade secret misappropriation.  Match's patent infringement claims "relate[] generally to whether the [Bumble app] satisfies the [Patents'] claim limitations." *AngioScore, Inc. v. TriReme Med., LLC*, 666 F. App'x 884, 887 (Fed. Cir. 2016).  Similarly, Match's Lanham Act claims depend on facts pertinent to the enforceability of Match's trademarks, Bumble's uses of them, and the likelihood of confusion those uses create.  *See Amazing Space, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010) (elements of trademark infringement claim).  Finally, Match's Defend Trade Secrets Act ("DTSA") claim depends on whether Bumble used a confidential business idea developed internally at Tinder.  *See* 18 U.S.C. § 1836(b)(1) (elements of a DTSA claim).  Bumble's federal counterclaims either assert defenses to Match's federal claims or otherwise pose trademark-centric issues. *See* Dkt. 66 (Causes of Action 1-10).

However, Bumble's State Law Counterclaims have no common connection with any of these federal claims or counterclaims.  At bottom, the State Law Counterclaims allege that Match engaged in a "sham" negotiation to drag out negotiations and cause potential investors to lose

REDACTED PUBLIC VERSION

interest in Bumble.  *See, e.g.*, ¶¶ 46-48.  Nothing about these counterclaims is intertwined with or even remotely implicates the development or operation of the Bumble app, any likelihood of confusion posed by Bumble's use of Match's marks, or Bumble's theft of an internal Tinder business idea.  Nor do they have anything do with Bumble's other counterclaims for denial of registration, non-infringement, or invalidity.  Instead, Bumble's State Law Counterclaims hinge on proof of entirely unrelated facts concerning whether Match made representations, whether those representations were false, whether Bumble justifiably relied on them, and resulting damages (if any).  In such circumstances, supplemental jurisdiction does not exist.

In *AngioScore, Inc. v. TriReme Medical, LLC*, the Federal Circuit reversed a district court's decision to exercise subject matter jurisdiction over analogous state law claims.  In that case between non-diverse parties, AngioScore alleged both that (i) TriReme Medical infringed AngioScore's patent through its sale of a product called the "Chocolate Device"; and that (ii) TriReme and another defendant, Dr. Konstantino, unlawfully usurped an AngioScore corporate opportunity when they released that allegedly infringing Chocolate Device.  *Id.* at 885-86.  Dr. Konstantino was a member of AngioScore's board, but co-founded TriReme and assisted TriReme in developing the device to compete with AngioScore.  *Id.* at 886.  Although both claims involved the Chocolate Device and would "turn on proof concerning exactly what [] Chocolate is, how it was developed, and its import" relative to damages issues, the Federal Circuit held that those relationships were not sufficient to show a common nucleus of *operative* facts.  *Id.* at 887-88.  Infringement depended on *how the device worked*, while the corporate opportunity claims depended instead on *whether the device was a corporate opportunity*.  *Id.* The only common underlying facts were "background" facts, not "operative" ones.

7

REDACTED PUBLIC VERSION

The relationship between the federal and state claims is far more attenuated here than in *AngioScore*. Bumble's State Law Counterclaims have nothing to do with the Bumble app's operation, any likelihood of confusion, or any trade secret misappropriation. The only common connection here is the parties' identities. But this is not enough, and the Court must dismiss these claims. *See Cornett v. Longois*, 275 F.3d 42, 42 (5th Cir. 2001); *see also Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1038-39 (Fed. Cir. 2006) (patent claim had no common nucleus with claim alleging wrongful termination of dealership agreement); *Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 190 (D.D.C. 2013) ("State common law claims that only 'relate generally' to federal claims through a broader dispute and do not share any operative facts are insufficient for supplemental jurisdiction.").

### B. The Court Should Dismiss Bumble's State Law Counterclaims Against IAC for Lack of Personal Jurisdiction.

The Court should also dismiss the claims against IAC for lack of personal jurisdiction. "Personal jurisdiction can be general or specific." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). General (or "all purpose") jurisdiction exists where a non-resident defendant's contacts with the forum state are "so continuous and systematic as to render it essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 138-139 (2014). Specific jurisdiction, in contrast, exists where the non-resident defendant has sufficient "minimum contacts" with the forum state related to the cause of action sued upon. *Seiferth*, 472 F.3d at 271. To show specific jurisdiction, Bumble must show that IAC "purposefully availed itself of the privileges of conducting activities" in Texas, and that Bumble's cause of action against IAC relates to this purposeful availment. *Id.* Under either theory, Bumble has the burden to plead sufficient facts to set forth a *prima facie* case that personal jurisdiction exists over IAC. *Id.* at 270. Bumble has not done so.

8

Bumble's "jurisdiction" section related to IAC is almost entirely conclusory, pleading "on information and belief" that personal jurisdiction exists because "IAC is Match's parent and IAC is registered with the State of Texas," and that "IAC has extensive other operations and contacts in the State of Texas."  Dkt. 66, Bumble's Counterclaims ¶ 7.  Bumble also alleges that "IAC [has] committed the acts giving rise to liability alleged herein, in large part in this district."  *Id.* ¶ 8.  Yet the only concrete allegations directed at IAC are two paragraphs about alleged representations that IAC's CEO made to JP Morgan.  *Id.* ¶¶ 63, 68.[5]  "Texas" is not mentioned.

Bumble has clearly failed to adequately plead facts sufficient to support "all purpose" jurisdiction over IAC.  IAC does not reside in Texas.  Dkt. 66 at ¶ 4.  It is "at home" in Delaware and New York, not in Texas.  *See Daimler*, 571 U.S. at 138.  And despite Bumble's conclusory allegations that IAC "has extensive operations and other contacts" with Texas, even "continuous and systematic" contacts with Texas would not be enough to create "all-purpose jurisdiction" because "a corporation that operates in many places can scarcely be deemed at home in all of them."  *Id.* at 139 and n.20; *see also BNSF Ry. Co. v. Tyrell*, 137 S.Ct. 1549, 1559 (2017) (no general jurisdiction over defendant despite 2,000 miles of track and 2,000 employees).  Bumble also cannot rely on Match Group, LLC's location because Match Group, LLC is a corporate grandchild of IAC and Bumble has not alleged alter-ego status.[6]  *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) ("Even if we were to assume that all of ACAB's

---

[5] To be sure, the word "IAC" is used elsewhere, but only in ascribing unsupported, speculative motives to "Match and IAC" in a conclusory fashion.  *See* Dkt. 66 ¶¶ 46-47, 56.

[6] To the extent Bumble's State Law Counterclaims could be read to plead a conspiracy between IAC and Match, this is not sufficient to impute Match's contacts to IAC for purposes of personal jurisdiction.  *See Delta Brands Inc. v. Danieli Corp.*, 99 Fed. App'x 1, at * 5 (5th Cir.2004) (plaintiff had to show that defendant, "individually, and not as part of the conspiracy, had minimum contacts")

REDACTED PUBLIC VERSION

subsidiaries had substantial, continuous, and systematic contacts with Texas, those contacts could not be . . . attributed to ACAB.")

Bumble's pleadings also fail to make a *prima facie* showing of specific jurisdiction. Again, the only IAC-specific allegations involve two representations made to JPMorgan, a Delaware corporation headquartered in New York. *Id.* ¶¶ 63, 68. Conspicuously, Bumble does not plead that IAC made these representations in Texas. Nor does Bumble plead that IAC made any other representation in Texas or traveled to Texas. Bumble does not even plead that IAC made a representation directly to Bumble. In such circumstances, no specific jurisdiction exists.

Under different circumstances, specific jurisdiction might be found to exist based on actions occurring outside of the forum that have effects on a forum resident, *if* there is a sufficient showing of purposeful availment to the forum. *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869-70 (5th Cir. 2001). But this test has significant limits. For example, "[f]oreseeable injury alone is not sufficient . . ., absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir.1999).

The requisite "minimum contacts" often differ depending on the type of claim at issue. Where, as here, claims involve alleged torts related to prospective business relationships or contracts with third-parties, specific jurisdiction depends on the non-resident defendants' knowledge of the nature of the relationship between the plaintiff and the third-parties with which the non-resident allegedly interfered. Where a non-resident defendant knowingly interferes with a relationship centered in Texas, jurisdiction may lie. *Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 383-84 (5th Cir. 2003). In contrast, when a non-resident defendant allegedly interferes outside of the forum state with a contract or relationship without knowing

REDACTED PUBLIC VERSION

whether the interfered-with relationship was centered in the forum state, the non-resident lacks

sufficient purposeful availment, even if it knew that the plaintiff was a forum resident. *See, e.g.*,

*Panda Brandywine*, 253 F.3d at 869-70 (no specific jurisdiction where act allegedly interfered

with resident plaintiff's contract but contract was not centered in Texas); *Southmark Corp. v. Life

Investors, Inc.*, 851 F.2d 763, 772-73 (5th Cir. 1988) (regardless of defendant's awareness of

plaintiff's resident status, no specific jurisdiction from alleged interference with not centered in

Texas).  In the latter circumstance, the resident plaintiff's location is considered to be a "mere

fortuity" insufficient to confer jurisdiction. *Id.*

Application of these principles warrants dismissal here.  Not every relationship involving

a Texas company is centered in Texas. *See id.*  And Bumble has not alleged that IAC made

representations to JPMorgan knowing that those representations would interfere with any

Texas-based relationship.  Indeed, the pleaded potential acquisitions of "Bumble" involve a

number of non-Texas entities.  For example, Worldwide Vision Limited, with whom the

discussions took place is a Bermuda company, and Bumble Holding, Ltd. is located in the U.K.

Dkt. 66 at ¶¶ 1-2; ¶¶ 44-78 (discussing proposed acquisition of "Bumble," without defining

"Bumble").  And Bumble has not even alleged the identity of any potential acquirer, so nothing

in the pleadings suggests interference with a Texas relationship.  To the contrary, Bumble has

alleged facts indicating that IAC *could not* have known the situs of any relationship.  Dkt. 66 at ¶

55.  At least because Bumble has not alleged that IAC committed any tortious action *in Texas* or

directed activity at a relationship *in Texas*, Bumble has not pleaded sufficient facts to

demonstrate personal jurisdiction over IAC, and the Court should dismiss these claims the State

Law Counterclaims against IAC for this reason as well.

**C.**   **The Court Should Dismiss Bumble's State Law Counterclaims on the Merits.**

11

As discussed above, each of these claims hinge on an alleged misrepresentation: Match allegedly "promised" to propose a higher offer to acquire Bumble. These claims should be dismissed on the merits for at least three reasons. First, non-party Match Group, Inc., not Match Group, LLC, was the only company that made any representations. Second, even if Bumble identified the right parties, these types of representations are simply not actionable. Finally, even if the representations were otherwise actionable, reliance here would be unjustified as a matter of law.

1.    <u>The Court Should Dismiss Each State Law Counterclaim Against Match Group, LLC for Failure to Plead Any Match Group, LLC Action</u>

The Court should dismiss Bumble's State Law Counterclaims against Match Group, LLC because Bumble alleges no facts making it plausible that the engaged-in conduct was attributable to *Match Group, LLC*. Match Group, LLC is a wholly owned subsidiary of Match Group, Inc. *See* Dkt. 64 at Introduction. The contemplated acquisition discussions involving Bumble occurred ████████████████████████████████████████████████ Ex. C-D (writing on behalf of "Match Group, Inc.") In other words, these alleged representations would necessarily have been made on behalf of Match Group, Inc. since Match Group, Inc. was the corporate entity contemplating the transaction. Yet Bumble conflates the different entities on both sides of the potential transaction in its claim against Match Group, LLC, the entity that owns Tinder's intellectual property, simply because Bumble wants to assert a specious victim-themed counterclaim at trial. Because Bumble fails to allege any Match Group, LLC action, the Court should dismiss the State Law Counterclaims against it.

2.    <u>The Court Should Dismiss Each State Law Counterclaim Against Both Match and IAC for Failure to Plead Actionable Representations.</u>

Bumble's State Law Counterclaims also fail to plead any actionable representations. Under Texas law, vague, contingent representations cannot give rise to liability under any

representation-based theories.  *See, e.g.*, *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d

286, 301 (5th Cir. 2010) (assurances "of an ongoing negotiation process" are too indefinite to

give rise to promissory estoppel).[7]  Even a specifically priced, relied-upon price bid is not

actionable where circumstances clearly indicate that the bid was not final.  *Montgomery Indus.*

*Int'l, Inc. v. Thomas Const. Co.*, 620 F.2d 91, 97 (5th Cir. 1980).

The alleged representations here simply indicate that Match intended to negotiate.  An

acquisition of a group of companies reportedly worth around a billion dollars does not occur

simply by naming a price that is accepted or rejected.  And Bumble's pleading makes clear that

Match repeatedly requested additional diligence information relevant to the acquisition, Dkt. 66

at ¶¶ 62, 65, 67-69, 73-75, and that representations were made contingent on Match Board

approval.  Dkt. 66 at ¶ 74.  Bumble also clearly pleads that Match never made an offer that

satisfied Bumble and there is no indication that Match ever would have.  In other words,

Bumble's own pleading admits that the representations giving rise to its claims were contingent,

qualified statements based on the outcome of due diligence and internal discussion with Match's

board of directors.  Such statements are insufficient to give rise to a claim.

The representations are also non-actionable because they are merely promises of future

performance.[8]  Representations about future performance are actionable only where

circumstances indicate they were made "with the intention, design, and purpose of deceiving,

and with no intention of performing the act."  *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 434,

434 (Tex. 1986).  "Failure to perform, standing alone, is no evidence of the promissor's intent

---

[7] For purposes of this Motion, Match applies Texas law.  Texas law is forum law, and Bumble
has previously contended that Texas law applied.  *See, e.g.*, -350 Dkt. No. 1-6 at ¶¶ 63-71.

[8] To the extent Bumble pleads negligent misrepresentation, "promises of future action are not
actionable as a negligent misrepresentation tort" under Texas law.  *G & C Land v. Farmland
Mgmt. Servs.*, 587 F. App'x 99, 105 (5th Cir. 2014).  This claim clearly must be dismissed.

not to perform when the promise is made." *Id.* at 435.  And while only "slight circumstantial evidence" beyond the failure to perform is sufficient to plead a then-existing intention not to perform, *id.*, a misrepresentation plaintiff must plead more than merely facts "consistent with" a knowing falsehood.  *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034-35 (5th Cir. 2010).  Rather, the party must plead facts "creat[ing] the reasonable inference of" a knowing falsehood.  *Id.*  In other words, a plaintiff must plead circumstantial facts over and above non-performance making more likely than not that the defendant never intended to perform.

This distinction is illustrated in *Shandong Yinguang Chemical Industrial Joint Stock Co. v. Potter*.  There, the plaintiff alleged that the defendant company promised to pay certain amounts of money and subsequently failed to do so.  607 F.3d at 1034.  Proceeding on a theory of an intention not to perform at the time the promise was made, the plaintiff alleged that the then-existing intention was supported by the actions of the defendant company's owner, individual defendant Potter, in subsequently "funneling" money from the defendant company to other companies he owned.  *Id.*  Recognizing that "moving money from one company to another" was equally consistent with "business as usual" as with fraud, the Fifth Circuit dismissed the claim.  *Id.* at 1034-35.  Because the facts alleged did not make it *more* likely that the promise was fraudulent as opposed to legitimate, the pleadings were insufficient.  *Id.*; *see also* Dkt. No. 46 (reasoning that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" (citations and quotations omitted)).

This reasoning also compels dismissal here.  Based on the facts alleged, it is at least as likely that Match ultimately did not present a "higher offer" for entirely legitimate reasons rather

14

than illegitimate ones.  Match's alleged representations were couched in contingencies.  These representations also followed a previous lower offer, and prior representations indicated that a "market value" offer was, in Match's view, too much.  Dkt. 66 at ¶¶ 51, 54, 62, 65, 67-69, 73-75. Bumble also fails to allege a single fact indicating that Match *knew* that Bumble had other offers, much less that Bumble would (inexplicably) allow those offers to expire while awaiting Match. (In fact, Bumble pleads Match couldn't have, *see* Dkt. 66 at ¶ 55.)  These facts are at least as consistent with legitimate conduct as with any "sham," and so the State Law Counterclaims should be dismissed for failure to plead actionable representations.  *See Ensley v. Cody Res., Inc.*, 171 F.3d 315, 322–23 (5th Cir. 1999) (reversing judgment based on future-looking promise where there was no evidence of present intention not to perform).

3.    The Court Should Dismiss Bumble's State Law Counterclaims Because Bumble Could Not Have Justifiably Relied on the Pleaded Representations.

The Court should also dismiss the State Law Counterclaims because even if the alleged representations were actionable, the alleged reliance on them was not justified as a matter of law.

Bumble's State Law Counterclaims require pleading justifiable reliance.  *See, e.g.*, *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (fraud and negligent misrepresentation); *Watson v. CitiMortgage, Inc.*, 530 F. App'x 322, 327 (5th Cir. 2013) (promissory estoppel); Dkt. 66 at ¶¶ 188-93 (pleading representations to support tortious interference).  In evaluating reliance, courts look to the plaintiff's "individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the [representation]."  *Grant Thornton*, 314 S.W.3d at 923.  "[I]f there are red flags indicating that such reliance is unwarranted," reliance is not justified.  *Id.*  A party may not justifiably rely on a representation that directly contradicts a written agreement.  *Mercedes-Benz USA, LLC v.*

15

REDACTED PUBLIC VERSION

*Carduco, Inc.*, 2019 WL 847845, at \*5 (Tex. Feb. 22, 2019).  Similarly, reliance is unjustified if it was negligent.  *See In re Absolute Res. Corp.*, 76 F. Supp. 2d 723, 731-32 (N.D. Tex. 1999).

Bumble contends that it was justified in allowing other competitive investment offers to expire because Match representatives "promised" to make a "market-value" or "competitive offer."  Dkt. 66 at ¶¶ 60.  Bumble has failed to plausibly allege that it justifiably relied on these pleaded representations.  For one, Bumble cannot justifiably rely on these representations because they are directly contradicted by ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████████████ it directly contradicts the alleged misrepresentations that Match "promised" a "competitive offer."  As in *Mercedes-Benz*, Bumble had a duty to have "it and its lawyers edit the written contractual provisions," 2019 WL 847745, at \*5, if it wished to rely on any representation not "made in a final definitive agreement."  Justifiable reliance is therefore negated as a matter of law.  *See Id.*

While direct contractual contradiction is alone sufficient to negate justifiable reliance as a matter of law, the existence of overwhelming "red flags" further confirms that any reliance was

16

REDACTED PUBLIC VERSION

unjustified. ██████████████████████ "a large red flag" that makes reliance not justified.  *See*

*Mercedes-Benz USA, LLC*, 2019 WL 847845, at *5.  The parties agreed ████████████

████████████████  Match Group, Inc. subsequently ████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████  Ex. C.  As its pleading admits, Bumble, a sophisticated company reportedly worth

around $1 billion, *see* Dkt. 66 at ¶ 51, also knew that (i) Match's initial offer was much lower

than Bumble desired, *see* Dkt. 66 at ¶ 18; (ii) Match previously represented its belief that

Bumble's perceived valuation "was too high for Match to afford," *id.* ¶ 54; and (iii) Match

repeatedly indicated that its offer was contingent on due diligence and approval of the Board of

Directors.  Dkt. 66 at ¶¶ 62, 65, 67-69, 73-75.

These "red flags" defeat justifiable reliance as a matter of law for at least three reasons:

*First*, Bumble could not justifiably rely on the alleged representations because they are not the

type of representation that may be relied upon in connection with a billion-dollar transaction.  As

pleaded, Bumble only contends that Match promised a "market-value offer" or a "competitive

offer."  Dkt. 66 at ¶¶ 60, 72.  Such representations are simply not within the category of

statements that sophisticated parties may rely upon in transactions like this one.[9]  *Second*, even

setting "direct contradiction" aside, Bumble also cannot justifiably rely on representations when

it was repeatedly informed that no representations were binding.  *See Magna Equities II, LLC v.*

*Heartland Bank*, 2018 WL 4080496, at *12 (S.D. Tex. Aug. 27, 2018) (rejecting plaintiff's

---

[9] *See Addicks Servs.*, 596 F.3d at 301 (no justifiable reliance based on alleged misrepresentations of an intention to reach agreement); *Vinewood Capital, L.L.C. v. Al-Maal*, 2007 WL 2791876, at *11 (N.D. Tex. Sept. 26, 2007) (reliance on a general promise to invest not justified); *Simulis, L.L.C. v. Gen. Elec. Capital Corp.*, 2008 WL 1747483, at *2 (Tex. App.—Hous. [14th Dist.] Apr. 17, 2008) (holding reliance unjustified as a matter of law based on statements that plaintiff would "receive business" at a volume that would be a "company maker" for plaintiff).

REDACTED PUBLIC VERSION

allegation as having "no merit" where plaintiff alleged it had justifiably relied on a "preliminary term sheet" that on its face stated that it was "***an indication of interest only, and is non-binding on the parties pending execution of a definitive agreement***" (emphasis added)).[10]

*Finally*, any reliance here would have been negligent as a matter of law, and negligent reliance is unjustified.  For example, reliance on statements that an offer is "final" or "non-negotiable" is unjustified because the recipient "need only to make a counter-offer" to test it.  *See Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 86–87 (Tex. App.—Hous. [14th Dist.] 1997, pet. denied).  Here, rather than allow other offers to expire, Bumble could have given a deadline *or simply named its price* to test Match's willingness to make a "competitive offer."  *Compare Davis v. Texas Farm Bureau Ins.*, 470 S.W.3d 97, 109 (Tex. App.—Hous. [1st Dist.] 2015, no pet.) (no justifiable reliance on settlement offer since the defendant had right to withdraw it) *with* Ex. C ██████████████████████████████

Match repeatedly told Bumble that no representations were binding until there was a definitive agreement.  Bumble's parent company expressly agreed to that provision.  And Bumble had numerous other reasons not to expect Match to give it the "competitive" offer it sought.  A sophisticated company negotiating a possible billion-dollar sale is not permitted to "blindly rely[] upon another party's vague assurances," *Mercedes-Benz USA*, 2019 WL 847845, at *5, and sue if things go south.  Bumble accepted the risk that its second-choice investors (if any existed) would lose interest while Bumble waited on Match.  Bumble's own miscalculation (if that is even what it was) cannot give rise to a claim.  *See, e.g.*, *CBH Equity, LLC v. Murphy Oil USA, Inc.*, 333 F. Supp. 3d 664, 670 (S.D. Tex. 2018) (in the absence of protective measures,

---

[10] *See In re Absolute Res. Corp.*, 76 F. Supp. 2d 723, 731-32 (N.D. Tex. 1999) (holding that reliance on offers was unjustified as a matter of law when those offers were made in connection with "facially non-binding proposal letters and oral assurances that a deal would eventually close");.

REDACTED PUBLIC VERSION

plaintiff's reliance was unjustified because he "took his chances" concerning adverse outcome). The Court should dismiss Bumble's State Law Counterclaims.

## II.   THE COURT SHOULD DISMISS BUMBLE'S TRADEMARK-RELATED CAUSES OF ACTION TWO THROUGH SIX.

To clutter this case, Bumble also pleads a host of counterclaims concerning trademark-registration issues, including several regarding marks entirely unrelated to any pending claim.  In its second through sixth counterclaims, Bumble requests the Court order the PTO to "deny registration" of certain Match trademark applications pending before that office. Except for one limited exception,[11] the Court should dismiss these counterclaims as well.

The Court should do so for several reasons.  *First*, 15 U.S.C. § 1119 makes clear that a Court's authority over PTO trademark issues concerns registered marks, not pending applications.  *Id.* ("In any action involving a ***registered*** mark the court may . . . otherwise rectify the register with respect to the ***registrations*** . . ." (emphasis added)).  Here, these deficient counterclaims are related to pending applications, not registered marks.  And while some courts find jurisdiction under § 1119 to address pending applications, even these courts exercise it only where the application has a "close nexus" to a registered mark.  There is no such nexus here.

*Second*, even if § 1119 jurisdiction existed, the Court should nevertheless decline it. Because Bumble's requests implicate third-party rights and issues not otherwise before the Court, short-circuiting the administrative process would be wasteful and inefficient.

*Third*, the Court should dismiss Bumble's requests as to Match's Unasserted Pending-Registration Marks for lack of case-and-controversy jurisdiction over the denial of registration requests.  Indeed, Match has never even discussed these marks with Bumble.

---

[11] Match does not request dismissal of Bumble's Second Counterclaim to the extent Bumble asks for a denial of registration for the "SWIPE" marks in connection with Class 45.

REDACTED PUBLIC VERSION

*Finally*, the Court should dismiss the Causes of Action related to Unasserted Pending-Registration Marks under the "primary jurisdiction" doctrine.

### D. Factual Background Concerning Bumble's Trademark-Related Counterclaims

Match has a number of registered and common-law trademarks (some of the latter represented in pending applications for registration) used in connection with a variety of different goods and services. Many of these trademarks are not at all implicated by Match's complaint. And although Match's infringement claims against Bumble relate only to registered and common-law trademarks for online dating and matchmaking services, Bumble's counterclaims attempt to cancel or deny registration for every Match mark involving the word "swipe," regardless of whether the applied-for marks have any connection to this case. The following is a breakdown of the marks implicated by Bumble's counterclaims:

| Match's Registered and Asserted Mark (the "Registered Mark") | | | |
|---|---|---|---|
| **Word Mark** | **Reg. No.** | **Mark Class** | **Good & Services Description** |
| SWIPE | 4,465,926 | Class 9 | "computer application software for mobile devices, namely, software for social introduction and dating services . . ." |

| Match's Asserted Common-Law Marks with Applications Pending Registration (the "Asserted, Pending-Registration Marks") | | | |
|---|---|---|---|
| **Word Mark** | **App. No.** | **Mark Class** | **Goods and Services Description** |
| SWIPE[12] | 86/680,914 | Class 45 | "dating services, internet-based social networking . . ." |

---

[12] Collectively the Registered Mark and Unregistered Mark, SWIPE App. No. 86/680,914, shall be referred to herein as the "SWIPE Marks."

REDACTED PUBLIC VERSION

| SWIPE RIGHT[13] | 86/680,927 | Class 45 | "dating services, internet-based social networking . . ." |
| SWIPE RIGHT | 86/608,899 | Class 9 | "downloadable software in the nature of a mobile application for internet-based dating and matchmaking . . ." |
| SWIPE LEFT | 86/680,923 | Class 45 | "dating services, internet-based social networking . . ." |
| SWIPE LEFT | 86/608,903 | Class 9 | "downloadable software in the nature of a mobile app for internet-based dating and matchmaking . . ." |

| Match's Unasserted Common-Law Marks with Applications Pending Registration (the "Unasserted Pending-Registration Marks") | | | |
|---|---|---|---|
| **Word Mark** | **App. No.** | **Mark Class** | **Goods and Services Description** |
| SWIPE RIGHT | 87/742,144 | Class 41 | "entertainment services, production and distribution of internet video . . ." |
| SWIPE RIGHT | 87/680,938 | Class 25 | "clothing, namely, top, bottoms, head wear, and foot wear" |
| SWIPE UP | 86/751,974 | Class 9 | "downloadable software in the nature of a mobile app for internet-based dating and matchmaking . . ." |
| SWIPE LIFE | 88/134,879 | Class 42 | "customized on-line web pages and data featuring information on dating . . ." |
| SWIPE SESSIONS | 88/160,784 | Class 41 | "entertainment services . . . namely, programs accessible by means of Internet streaming . . ." |
| SWIPE SESSIONS | 88/160,907 | Class 45 | "dating services, internet-based dating . . ." |

In its Second Cause of Action, Bumble seeks "Denial of Registration" for the Asserted Pending-Registration Marks, as well as Application No. 86/751,974 for SWIPE UP. In its Third Cause of Action, Bumble seeks similar relief for Application No. 87/680,938 for SWIPE RIGHT in Class 25, clothing. In its Fourth Cause of Action, Bumble seeks "Denial of Registration" for

---

[13] Collectively SWIPE RIGHT and SWIPE LEFT Applications Nos. 86/680,927; 86/608,899; 86/680,923; and 86/608,903 shall be referred to herein as the "Asserted, Pending-Registration Horizontal Marks."

REDACTED PUBLIC VERSION

SWIPE RIGHT in Class 41.  In its Fifth Cause of Action, Bumble seeks "Denial of Registration" for Application No. 88/134,879 for SWIPE LIFE in Class 42.  Finally, in its Sixth Cause of Action, Bumble seeks similar relief for the SWIPE SESSIONS marks in Classes 41 and 45.

### E. The Court Has No Jurisdiction Under the Lanham Act to Deny Registration for Any Pending-Registration Mark Other than SWIPE in Class 45.

#### 1. The Court Can Deny Registrations Only When the Request Has a "Close Nexus" With a Registered Mark.

District courts typically have no jurisdiction over issues related to pending registrations. *Zany Toys, LLC v. Pearl Enterprises, LLC*, 2015 WL 404644, at *5 (D.N.J. Jan. 28, 2015); *accord McCarthy on Trademarks*, § 30:113.50 (4th ed. 2014).

A court can exercise jurisdiction over pending applications only where there is a "close nexus between *the issues* in the pending application proceeding and those in the federal court dispute involving the registered mark."  *McCarthy on Trademarks*, § 30:113.50 (emphasis added).  The requisite nexus does not exist simply because the pending applications and registered mark share a word, even when the word is alleged to be generic.  *Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*, 1998 WL 766703, at *12 (W.D. Wis. June 24, 1998), *aff'd*, 188 F.3d 427 (7th Cir. 1999) (concluding that no jurisdiction existed where registered mark involved issues of whether "Rams" was generic and pending applications involved question of priority in "St. Louis Rams" mark).  Instead, a close nexus typically exists only where challenged grounds of the pending application are "tied directly" to the grounds for cancellation of the registered mark.[14]  *Id.*  While this "close nexus" analysis allows courts to

---

[14] This usually involves situations in which resolution of issues related to the registered mark will necessarily impact the pending application—for example, where the marks are the same and the issues involve priority of use or ownership.  *See Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 157 (6th Cir.1973) (directing concurrent use registration for identical mark); *Massa v. Jiffy Prod. Co.*, 240 F.2d 702, 704 (9th Cir. 1957) (ordering cancellation for one party and registration for another party based on ownership decision).

REDACTED PUBLIC VERSION

impact pending applications based on findings inherently related to a registered mark, this power does not extend to making *additional* findings about additional, *distinct* pending-registration marks. *See Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 730 (6th Cir. 2004) (holding that court "did not have authority to decide issues regarding a mark that was not properly before it").

> 2. <u>Here, There Is No Close Nexus Between Match's Registered "SWIPE" Mark and Match's Asserted Pending-Registration Horizontal Marks or Match's Unasserted Pending-Registration Marks.</u>

There is an insufficient nexus between the non-SWIPE marks and the questions at issue related to Match's SWIPE registration to establish § 1119 jurisdiction. For all of the challenged applications, Bumble alleges the same legal theory: that the marks are either generic of the goods and services at issue or they are descriptive and lacking in secondary meaning. Yet there is no connection between the applications other than Match's ownership and the word "swipe."

SWIPE LEFT, SWIPE RIGHT, SWIPE UP, SWIPE LIFE, and SWIPE SESSIONS are all different marks from the registered SWIPE mark. The relevant goods and services among the applications differ as well. SWIPE LIFE, for example, is sought in connection with "on-line web pages and data feeds featuring information on dating." SWIPE RIGHT is sought not only for mobile apps for internet-based dating and internet-based social networking, but also for entertainment services (No. 87/742,144) and clothing (No. 86/680,938).

Each of these marks presents a distinct trademark analysis confined to the goods and services set out in the applications. Whether SWIPE is generic or descriptive in connection with the registered goods and services does not answer the question of whether the other SWIPE-related marks are similarly situated for the same good or services, much less for different ones.

For example, even if the Court cancelled SWIPE for genericness, that would not resolve issues in the pending applications in any respect. Two generic words can be combined to create a protectable mark. *See, e.g., Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d

23

1134, 1140 (5th Cir. 1982) ("Common words . . . may . . . when used in combination, become a valid trademark."). The secondary meaning calculus for "SWIPE" is also not the same for the other SWIPE-related marks, even in connection with the same goods and services. *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 268 (5th Cir. 1999) (composite marks analyzed as a whole). In other words, the issues posed by the infringement and cancellation questions concerning the Registered Mark will not impact the registration questions for the Asserted Pending-Registration Horizontal Marks or the Unasserted Pending-Registration Marks.

The distinctions are particularly pronounced concerning the applications for *different* goods and services. Genericness, descriptiveness, and secondary meaning inquiries also all hinge on whether these marks are generic or descriptive when used in connection with specific goods and the relevant public. *See, e.g.*, *Princeton Vanguard, LLC v. Frito Lay N. Am., Inc.*, 786 F.3d 960, 966 (Fed. Cir. 2015) ("[T]here is only one legal standard for genericness . . . . [T]he Board must first identify the genus of goods or services at issue . . ."). The relevant consuming public differs for marks related to mobile applications for online dating versus those relating to entertainment services or clothing. Resolution of facts as to SWIPE in connection with computer application software for mobile devices will say nothing about SWIPE RIGHT as to clothing or SWIPE SESSIONS as to entertainment services.

In short, each of these applications are independent from the registered SWIPE mark. The mere overlap of a word does not create federal authority to interfere with the PTO here. *Johnny Blastoff*, 1998 WL 766703, at *12 (registered marks for RAMS did not create authority to adjudicate issue related to ST. LOUIS RAMS).[15]

---

[15] The situation in this case is markedly distinct than the situations under which courts have exercised jurisdiction over pending registrations. Match's registered mark is not being used as a defense to a claim of infringement by Bumble. *See Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*,

24

REDACTED PUBLIC VERSION

**F.     The Court Should Decline Declaratory Judgment Act Jurisdiction Over Any Denial of Registration Request Concerning Any Pending-Registration Mark Other than SWIPE, Class 45.**

If the Court decides it has § 1119 authority over these requests, the Court should nevertheless decline jurisdiction under the Declaratory Judgment Act.  In this Circuit, declaratory actions must "serve a useful purpose" and "terminate and afford relief from the uncertainty" giving rise to the issue.  *Sandefer Oil & Gas, Inc. v. Duhon*, 817 F.3d 526, 528 (5th Cir. 1989) (emphasis added). *See also* Fed. R. Civ. P. 57, Adv. Comm. Notes ("When declaratory relief will not be effective in settling the controversy, the court may decline to grant it.").

Here, the Court should decline declaratory judgment jurisdiction because Bumble's requested declaration will not resolve the registrability dispute between the parties.  It is true that if Bumble were to prevail on the merits of its Causes of Action—*i.e.*, if it showed the applied-for marks were either generic or descriptive-and-lacking-secondary-meaning—the marks could not be registered.  But the reverse is not true.  If Match successfully showed non-genericism and non-descriptiveness or descriptiveness with secondary meaning, further questions would remain. Because the PTO's examination of these applications is incomplete, there still may be questions about the potential likelihood of confusion with other registered or applied-for marks not before the Court.  Indeed, the prosecutions of Match's applications concerning the Asserted Pending-Registration Marks, as well as well as Application No. 86/751,974 for SWIPE UP, are currently

---

60 F. Supp. 3d 738, 745 (W.D. Tex. 2014).  The dispute does not involve the likelihood of confusion with a previously filed Bumble mark that could bar registration, nor does it present any issue of concurrent use.  *See id.*; *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 615 (2d Cir. 1960) (ordering concurrent use registration where infringement defendant prevailed on non-infringement of registered mark based on own concurrent use).  Nor is the pending applications dispute limited to priority of use that will be resolved in the case related to the registered mark. *See Amy's Ice Creams,* 60 F. Supp. 3d at 745.

REDACTED PUBLIC VERSION

suspended pending the PTO's examinations of *third-party* applications filed after Match's SWIPE Registration but before the Asserted Pending-Registration or SWIPE UP applications.[16] Ex. E.  Similarly, the PTO has cited entirely different third-party applications as potential bars in the SWIPE SESSIONS proceedings.  Ex. F.

These complications should doom declaratory judgment jurisdiction here.  When evaluating whether a "a declaratory judgment is likely to resolve a controversy," the Court is not permitted to "assume . . . that it will resolve the merits . . . [in Bumble's favor]."  *See Swish Mktg., Inc. v. F.T.C.*, 669 F. Supp. 2d 72, 77 (D.D.C. 2009).  Here, because resolution of Bumble's requested declaration will not *necessarily* resolve the registrability question, the Court should decline declaratory judgment jurisdiction.

The Court should also decline jurisdiction because these issues implicate third-party rights.  Even courts that exercise jurisdiction over pending registrability issues make clear that the result would be different if third-party rights were involved.  *See Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n.*, 333 F. Supp. 2d 975, 980 (D. Or. 2004), *aff'd sub nom.*,  465 F.3d 1102 (9th Cir. 2006) (exercising jurisdiction after "emphasiz[ing] that there do not appear to by any objecting non-parties whose rights would be affected by the registration of [the mark]."); *Amy's Ice Creams, Inc.*, 60 F. Supp. 3d at 745 (exercising jurisdiction over registration request in part because "the rights of third parties should not be affected").

---

[16] These prior-filed applications are for JSWIPE, CHRISTIAN SWIPE, and SWIPEQ in connection with dating services.  To date, the PTO has refused registration based on Match's prior ownership and registration of the Registered SWIPE Mark.  The applicants for CHRISTIAN SWIPE and SWIPEQ applications have already abandoned their applications.  Exs. G-H.  The PTO has maintained its refusal to register the JSWIPE applications based on a likelihood-of-confusion with Match's SWIPE mark.  In response to the PTO's refusal to register its JSWIPE applications, the Applicant has moved to stay the appeal pending its attempts, alongside Bumble to cancel Match's Registered Mark. Ex. I.

REDACTED PUBLIC VERSION

G.     **The Court Has No Case and Controversy Jurisdiction Over Bumble's Denial of Registration Causes of Action Related to the Unasserted Pending-Registration Marks; Alternatively, the Court Should Decline Jurisdiction Under the "Primary Jurisdiction" Doctrine.**

Bumble's counterclaims related to the Unasserted, Pending-Registration Marks are also jurisdictionally deficient for lack of a case and controversy.  A registration dispute before the PTAB "does not automatically create a case or controversy that can be adjudicated in a district court." *SnoWizard, Inc. v. Snow Ball's Chance, Ltd.*, 2015 WL 5682640, at *7 (E.D. La. Sept. 25, 2015).  Instead, there must be a live controversy *concerning the challenged mark at issue*. Where a party is not alleged to infringe a mark, there is no justiciable controversy concerning an application to register it.  *See Nike, Inc. v. Already, LLC*, 2011 WL 310321, at *6-8 (S.D.N.Y. Jan. 20, 2011) *aff'd*, 568 U.S. 85 (2013) (dismissing cancellation claim after plaintiff's covenant not to sue on registered mark).  If jurisdiction exists, courts nevertheless stay or dismiss claims involving non-asserted marks under the doctrine of "primary jurisdiction."  *Realty Experts Inc. v. RE Realty Experts, Inc.*, 2012 WL 699512, at *3-4 (S.D. Cal. Mar. 1, 2012) (dismissing registration questions involving marks for which there was no question of infringement).

Here, Bumble does not use the Unasserted, Pending-Registration Marks, and apparently has no plans to do so.  Match has not alleged that Bumble has infringed them, nor does Bumble allege so in its counterclaims.  Without an infringement dispute, Bumble is seeking an advisory opinion, and no jurisdiction exists.[17]  In any event, even if the Court could exercise jurisdiction,

---

[17] The potential impact of the Court's resolution of live trademark issues also does not create a justiciable controversy over the Unasserted Pending-Registration Marks.  The potential preclusive impact of this Court's rulings is for the PTO to resolve.  *See Eagles, Ltd.*, 356 F.3d at 730-31 (noting that PTO should decide estoppel impact, if any, of prior district court judgments)

the PTO can "more efficiently resolve the[se] [pending application] claims," *Unitek Solvent Servs. Inc. v. Chrysler Grp., LLC*, 2014 WL 5528234, at *6-7 (D. Haw. Oct. 31, 2014), and the Court should allow it to do so in the first instance.[18]

## III.   THE COURT SHOULD STRIKE BUMBLE'S AFFIRMATIVE DEFENSES

The Court should also strike many of Bumble's affirmative defenses.  The Court may strike affirmative defenses for a variety of reasons:  First, the Court may strike any redundant defense.  For example, where a defense is simply a "negative defense" that pleads the negation of an element of the plaintiff's claim, the court should strike it.  *See F.T.C. v. Think All Pub. L.L.C.*, 564 F. Supp. 2d 663, 665 (E.D. Tex. 2008).  Second, the Court should dismiss affirmative defenses that are legally flawed.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) ("[a] Rule 12(f) motion is proper when the defense is insufficient as a matter of law.").  Finally, the Court should dismiss defenses that do not place a plaintiff on "fair notice."  *See Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008).

The first principle compels dismissal of defenses 1, 4, 5, 8, 11, 15, 17, 18, 19, and 20.  Each of these defenses is merely a denial of an element of Match's claims.  They are therefore redundant, and the Court should dismiss them.  *Think All Pub. L.L.C.*, 564 F. Supp. 2d at 665.

The second principle compels dismissal of Bumble's 14th and 19th affirmative defenses.  In its 14th defense, Bumble alleges that Match's claims are barred "by reason of other parties' use of any trademarks or trade dress at issue."  But a claim that a markholder "had abandoned its

---

[18] Indeed, at least one of Bumble's counterclaims also seeks a declaration based on *speculative future events*.  Bumble alleges that Match should be denied registration for SWIPE RIGHT in class 25 because it "would be merely ornamental when used  . . . with clothing items."  Dkt. 66 ¶ 110.  But an ornamental refusal applies to a particular *specimen of use*, not to a trademark.  *See Trademark Manual of Examining Procedure* § 1202.03.  The 86/680,938 Application is based on an *intention to use* the mark, and Match has not yet submitted any specimens of use.  In other words, Bumble asks the Court to declare invalid as ornamental specimens it has never seen.

ability to enforce its mark . . . by permitting third parties to use [it] is not a cognizable defense or

counterclaim." *Adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1077-78 (D.

Or. 2008).  Instead, it is a factor considered in deciphering the general strength of the mark. *Id.*

Similarly, Bumble alleges in its 19th affirmative defense that the DTSA does not apply to

activities occurring before its enactment.  But Match's claims allege that Bumble

misappropriated Match's secret *and continues to use it.  See Teva Pharm. USA, Inc. v. Sandhu*,

291 F. Supp. 3d 659, 675 (E.D. Pa. 2018) ("[O]ne who acquired and used a trade secret

before enactment of the DTSA and continues to use it after enactment is liable.").

Finally, Bumble's affirmative defenses 3, 7, 11, 12, 13, 14, and 21 fail to provide fair

notice.  District courts regularly strike conclusory affirmative defenses with little to no factual

underpinning as failing to meet the "fair notice" standard. *Hill Country Bakery, LLC v. Honest

Kitchens Grp., LLC*, 2017 WL 9362706, at *5 (W.D. Tex. Dec. 11, 2017) (dismissing such

defenses); *SecurityProfiling, LLC v. Trend Micro Am., Inc.*, 2017 WL 5150682, at *7-8 (E.D.

Tex. Mar. 21, 2017) (same).  Here, most of these affirmative defenses are merely statements of

the name of the defense with no facts alleged.  While Bumble provides some sparse factual

underpinning as to the Seventh Affirmative Defense, this defense purports to allege a number of

distinct defenses as to a number of distinct claims.  It fails to give any notice whatsoever

concerning which theory applies to which claims in Match's lawsuit or why.  Nor does it provide

any specifics, even at a high level, as to what misleading conduct or conduct "inconsistent" with

Match's IP rights that Match allegedly engaged in.  It fails to give fair notice, and the Court

should strike it. *See Joe Hand Promotions, Inc. v. Izalco, Inc.*, 2017 WL 3130581, at *3 (S.D.

Tex. July 24, 2017) (dismissing "waiver" affirmative defense because it is a "broad defense and

requires 'factual particularity' to set out the nature of the waiver at play"); *E.E.O.C. v. Courtesy*

REDACTED PUBLIC VERSION

*Building Servs., Inc.*, 2011 WL 208408, at *4 (N.D. Tex. Jan. 21, 2011) (striking similar

defenses where answer failed to "allege[] any facts that could form the basis" of them).

## IV.    CONCLUSION

The Court should grant Match's motion and dismiss Bumble's State Law Counterclaims.

The Court should dismiss Counterclaims Two through Six for lack of jurisdiction except to the

extent Counterclaim Two seeks denial of registration on the SWIPE mark in Class 45.  Finally,

the Court should strike Bumble's affirmative defenses 1, 3-4, 5, 7-8, 11-15, and 17-21.

DATED:  May 1, 2019                    Respectfully submitted,

                                       CALDWELL CASSADY & CURRY

                                       /s/ Bradley W. Caldwell
                                       Bradley W. Caldwell
                                       Texas State Bar No. 24040630
                                       Email:  bcaldwell@caldwellcc.com
                                       John F. Summers
                                       Texas State Bar No. 24079417
                                       Email: jsummers@caldwellcc.com
                                       Warren J. McCarty, III
                                       Texas State Bar No. 24107857
                                       Email: wmccarty@caldwellcc.com
                                       CALDWELL CASSADY CURRY P.C.
                                       2101 Cedar Springs Road, Suite 1000
                                       Dallas, Texas 75201

                                       Telephone: (214) 888-4848
                                       Facsimile: (214) 888-4849

                                       John P. Palmer
                                       State Bar. 15430600
                                       Email: palmer@namanhowell.com
                                       Naman, Howell, Smith & Lee, PLLC
                                       400 Austin Avenue, 8th Floor
                                       P.O. Box 1470
                                       Waco, TX 76701
                                       Telephone: (254) 755-4100
                                       Facsimile: (254) 754-6331

                                       **ATTORNEYS FOR
                                       PLAINTIFF/COUNTER-DEFENDANT
                                       MATCH GROUP, LLC AND
                                       COUNTER-DEFENDANT
                                       INTERACTIVECORP**

REDACTED PUBLIC VERSION

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via electronic mail on May 1, 2019.

_/s/ Bradley W. Caldwell_
Bradley W. Caldwell