## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **MATCH GROUP, LLC,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 6:18-cv-00080-ADA |
| **BUMBLE TRADING, INC., and BUMBLE HOLDING, LTD.** | |
| **Defendants.** | |

## <u>DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF</u>

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   DISPUTED CLAIM TERMS.................................................................................. 1

    A.    the "graphical representation" terms................................................................. 1

    B.    "social networking platform"............................................................................ 5

    C.    "without allowing communication" and "prevent[ing] communication".............. 7

    D.    "associated".................................................................................................... 10

    E.    "the text area" ................................................................................................ 13

III.  CONCLUSION..................................................................................................... 15

**Cases**

*Apple Inc. v. Motorola, Inc.*,
 757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v.
 Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ............................................3, 4

*Aylus Networks, Inc. v. Apple Inc.*,
 856 F.3d 1353 (Fed. Cir. 2017)........................................................................10

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
 132 F.3d 701 (Fed. Cir. 1997)......................................................................2, 3, 4

*Berkheimer v. Hewlett-Packard Co.*,
 No. 12-cv-9023, 2015 WL 4999954 (N.D. Ill. Aug. 21, 2015) ...................13, 14, 15

*Berkheimer v. HP Inc.*,
 881 F.3d 1360 (Fed. Cir. 2018)........................................................................11

*Bicon, Inc. v. Straumann Co.*,
 441 F.3d 945 (Fed. Cir. 2006)...........................................................................4

*Comark Commc'ns, Inc. v. Harris Corp.*,
 156 F.3d 1182 (Fed. Cir. 1998).........................................................................6

*Cuozzo Speed Techs. v. Lee*,
 136 S. Ct. 2131 (2016)...................................................................................12

*GE Lighting Sols., LLC v. Lights of Am., Inc.*,
 No.12-cv-3131, 2015 WL 1564945 (N.D. Ohio April 8, 2015) .............................13

*Interval Licensing LLC v. AOL, Inc.*,
 766 F.3d 1364 (Fed. Cir. 2014).......................................................................13

*Kara Tech. Inc. v. Stamps.com Inc.*,
 582 F.3d 1341 (Fed. Cir. 2009).......................................................................10

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004)...........................................................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 134 S. Ct. 2120 (2014)........................................................................ *passim*

*Pause Tech., LLC v. TiVo, Inc.*,
 419 F.3d 1326 (Fed. Cir. 2005)..........................................................................4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........................................................................11

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999)..........................................................................5

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017)........................................................................12

*Thorner v. Sony Comp. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012).....................................................................5, 6

*Whirlpool Corp. v. Ozcan*,
No. 15-cv-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016)...................11

**Statutes**

35 U.S.C. § 112...............................................................................................12, 13

35 U.S.C. § 311(b)..............................................................................................12

# I. INTRODUCTION

Rather than address clear disclosures in the intrinsic evidence, Plaintiff focuses on mischaracterizing Bumble's arguments and citing inapposite case law. Indeed, for "graphical representation," faced with the overwhelming intrinsic evidence at odds with its original proposal, Plaintiff now offers an alternative. Plaintiff's arguments abandon the basic tenets of claim construction, which focus on the language of the claims themselves and discern the meaning of claims in light of the intrinsic record.

With respect to the two indefinite terms, Plaintiff ignores precedent and fails to cite to intrinsic evidence that makes the scope of the terms reasonably certain to one of ordinary skill in the art. For this reason, the Court should find both terms indefinite.

# II. DISPUTED CLAIM TERMS

## A. the "graphical representation" terms[1]

Plaintiff states that Bumble's Opening Brief "primarily attacks a straw man." (D.I. 82 at 3.) The basis for such an assertion is rooted in the ambiguity of Plaintiff's own proposed construction. In its responsive brief, Plaintiff for the very first time suggested that "pictorial portrayal" means only that the term requires a "portrayal, including some pictorial component, of the various claim terms" and that it can also include other elements, such as text. (*Id*. at 3, 6, n.5.) Faced with the overwhelming intrinsic evidence that a "graphical representation" is not limited to a picture alone, Plaintiff now broadens its proposal. (D.I. 76 at 6-11; D.I. 83 at 2-8.)

Although Plaintiff's proposed construction is a step in the right direction, it is nonetheless overly limiting. A person of ordinary skill in the art would understand "graphical representation" to be "a summary of information displayed on a graphical user interface" representing the claimed

---

[1] Bumble included charts with Plaintiff's and its proposed constructions for each term in Bumble's Opening and Responsive Briefs. (D.I. 76; D.I. 83.)

"potential match," "online dating profile" or "item of information." (*Id.*, D.I. 76-1, ¶¶ 26-30.)  For example, the asserted patents disclose the display of "card 88 **representing** the suggested user" and depict this card in Figure 6.  ('811 Patent, 21:14-15, Fig. 6 (emphasis added); *see also* D.I. 76 at 9; D.I. 83 at 3-4.)  In this embodiment, it is the entire "card 88" that is the claimed "graphical representation," and this card itself, which is displayed on a graphical user interface, would remain a graphical representation if it did not include a picture, but instead contained "one or more of: . . . an icon, a name, location information, gender, physical attributes, hobbies, or other profile information" as disclosed in the specification.  ('811 Patent, 21:18-22; *see also* D.I. 76-1, ¶ 30.)  Unlike both of Plaintiff's proposed constructions—"pictorial portrayal" and "portrayal, including some pictorial component, of"—Bumble's proposed "summary of information displayed on a graphical user interface" construction captures the proper breadth of "graphical representation" to one of ordinary skill in the art in the context of the asserted patents.

Plaintiff's other criticisms of Bumble's proposed construction likewise fail.  As with Plaintiff's opening brief, Plaintiff yet again argues that Bumble's proposed construction renders "graphical" superfluous, because the asserted claims also "expressly" recite a "graphical user interface."  (D.I. 82 at 2-3.)  As explained in Bumble's Responsive Brief, this argument has no merit.  (D.I. 83 at 7-8.)  The recitation of "graphical user interface" in the same claim as "graphical representation" would not shift a person of ordinary skill in the art's understanding of "graphical representation" away from the context of the invention as described in the intrinsic evidence.  Rather, the inclusion of the term "graphical user interface" in the claim would reinforce a person of ordinary skill in the art's understanding that a "graphical representation" is a "summary of information displayed on a graphical user interface."  *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 707 (Fed. Cir. 1997).

Notably, in its responsive brief, Plaintiff's own statements support Bumble's construction of "graphical representation." For example, Plaintiff emphasizes, "all claims also recite touch screen gestures, which inherently assume a graphical user interface." (D.I. 82 at 2.) This claim language, including "swiping," as well as other claim language, such as "computer implemented method of profile matching" and "displaying," all implicate graphical user interfaces. (*See, e.g.,* '811 Patent, cl. 1.) Nonetheless, the claims, in fact, recite "graphical user interface" numerous times. In the context of the "touch screen gestures" highlighted by Plaintiff, the claims recite:

> determining that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second **swiping gesture** associated with a graphical representation of the third potential match **on the graphical user interface**, the second **swiping gesture** different than the first **swiping gesture**, the third potential match corresponding to a third user . . . .

(*Id.*) In its claims, the patentee clearly made the choice to include "graphical user interface" despite other limitations that infer the use of one. As such, a person of ordinary skill in the art would understand all of these terms to be "mutually reinforcing definitions rather than being superfluous" and to "defin[e] a state of affairs" helping, "rather than hinder[ing], understanding." *Bell & Howell*, 132 F.3d at 707. Bumble's proposed construction is no different.

Plaintiff incorrectly claims that adopting Bumble's proposal "would violate numerous binding Federal Circuit precedents." (D.I. 82 at 3.) The case law Plaintiff cites is inapposite. Unlike here, in the three cases cited by Plaintiff, the proposed constructions contradicted or literally removed claimed language. In *Apple*, the asserted claim recited "routines including *an analyzer server* for detecting structures in the data, and for linking actions to the detected structures." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1305 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). Apple's proposed construction reciting "program routines that detect structures and links actions to the detected

structures" took "the claim text and remove[d] the 'analyzer server,' leaving the rest basically unchanged." *Id.* Therefore, Apple, unlike Bumble here, literally removed a term from its construction, rendering it meaningless. *Id.*

Similarly, in *Bicon*, the patentee argued that a preamble that claimed and described an "abutment" was not limiting despite the preamble and other claim language's "detailed description of and references to an abutment." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 949-50 (Fed. Cir. 2006). This is distinguishable from here where Bumble does not dispute that the term "graphical representation" is limiting and proposes a construction that gives meaning to the term "graphical," *i.e.* "displayed on a graphical user interface." The additional recitations of "graphical user interface" merely reinforce this understanding. *Bell & Howard*, 132 F.3d at 707.

Finally, in *Pause Tech.*, Plaintiff had argued for a construction of "time interval of predetermined duration" in which the "the "time interval" could vary. *Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1333-34 (Fed. Cir. 2005). The Federal Circuit rejected this position finding that Plaintiff attached "no significance to the word 'predetermined.'" *Id.* Unlike Plaintiff's proposal in *Pause Tech*, which was contrary to the claim language, Bumble's proposed construction of "graphical representation" gives meaning to "**graphical**" because a "graphical representation" is a "summary of information displayed on a **graphical** user interface" representing something.[2] As discussed above, the separate recitation of "graphical user interface" in the claim term reinforces, rather than contradicts Bumble's proposed construction. *Bell &*

---

[2] Plaintiff also criticizes Bumble for referring to definitions of "graphical user interface" in Bumble's Opening Brief. (D.I. 82 at 5, n.4; *see also* D.I. 76 at 8, n.6.) These definitions, however, are relevant in reinforcing a person of ordinary skill in the art's understanding of "graphical representation." These definitions also are consistent with Mr. Schmandt's understanding of a "graphical representation" as not being limited to a "pictorial portrayal" or necessarily including a picture. (D.I. 76 at 8, n.6.)

*Howard*, 132 F.3d at 707.  Accordingly, the Court should adopt Bumble's proposed construction, which relies on the tenets of claim construction in Federal Circuit precedent.

### B.    "social networking platform"

Plaintiff's argument regarding lexicography and disavowal is a red herring.  (D.I. 82 at 7-10.)  "The starting point for any claim construction must be the claims themselves." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).  Similarly, "the words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  Bumble's construction does just that.  The context of the claims themselves makes clear that the "social networking platform" must be independent or distinct[3] from the system for profile matching.  (D.I. 76 at 11-13; D.I. 83 at 18-21.)  Otherwise, the limitations "each profile . . . associated with a social networking platform" and "at least one or more of the plurality of online dating profiles is associated with a social networking platform" would have no meaning.  (*See* D.I. 83 at 18-21.)

In arguing that the "system for profile matching" itself could be the claimed "social networking platform," Plaintiff fails to look at the actual claim language.  (D.I. 82 at 7-10.)  Instead, Plaintiff summarily asserts, "Nothing about the structure of these claims requires that the 'social networking platform' be 'independent of the system for profile matching." (*Id.* at 8.)  Even a cursory glance at the structure of the '854 Patent's claims refutes this statement.  There, the dependent claims recite "a social networking platform" while the independent claims recite the system for profile matching.  (*See, e.g.,* '854 Patent, cls. 4, 5.)  Claim 5, for example, recites "[t]he

---

[3] Although Bumble's proposed construction requires that the "social networking platform **independent of** the system for profile matching," other words such as distinct or different from or not co-extensive with would also express the same principle.

system of claim 4, wherein at least one or more of the plurality of user on-line dating profiles is associated with a social networking platform." (*Id.*, cl. 5.) As explained in Bumble's Responsive Brief, if the system for profile matching and the "social networking platform" were one in the same, dependent claims 2, 5, 8, and 11 of the '854 Patent would be redundant and meaningless. (D.I. 83 at 19-20.) The dependent claims would have the same exact scope as the independent claims. (*Id.*) This is improper. (*Id.* (citing *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) (citation omitted)).)[4] As explained in Bumble's Responsive Brief, the independent claims of the '811 Patent compel a similar result. (D.I. 83 at 18-20.) Thus, the structure of the asserted claims require the "social networking platform" to be "independent of" the system for profile matching.

While the claims themselves make the construction of "social networking platform" clear, the specification further supports this understanding. Plaintiff cites to portions of the specification discussing the "matching server 20" and "social networking platform 50" in reference to Figure 4, reproduced below. (D.I. 82 at 8-9.) Figure 4 depicts an embodiment "wherein matching server 20, with pool 30, may be configured to interact with **another** platform, such as social networking platform 50, containing a set 52 of users." ('811 Patent, 15:54-57 (emphasis added).)

---

[4] As further evidence that Plaintiff's lexicography and disavowal argument is misplaced, Federal Circuit precedent regarding this issue of claim differentiation make no mention of lexicography and disavowal. In *Comark Commc'ns*, also cited in Bumble's Responsive Brief, the Federal Circuit rejected the appellant's construction of the term because it would render the dependent claim superfluous. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). In reaching this decision, the Court analyzed the claim language itself. *Id.* The same is true for *Liebel-Flarsheim Co.*, where the Court looked to the literal language of the claims and relied on the principles of claim differentiation, and not lexicography and disavowal, to construe the term. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).



*FIG. 4*

As seen in Figure 4, the "matching server 20" of the system for profile matching is separate from the "social networking platform 50." Additionally, Plaintiff's statements equating the two are contrary to the disclosures in the specification. The specification discloses that "matching server 20 may be configured to collect requests from users of social networking platform 50 and perform a search through pool and set 52." (*Id.*, 16:14-16.) Matching server 20 need not be "social networking platform 50" itself to perform this action. The specification discloses that "the system may be configured to do so through capabilities provided by social networking platform 50, such as an application programming interface." (*Id.*, 16:51-54.) The use of an "application programming interface" for the two to interact indicates that the system for profile matching is not the same as the "social networking platform." Overall, the intrinsic evidence is clear that the "social networking platform" is not the claimed system for profile matching.

C. **"without allowing communication" and "prevent[ing] communication"**

Plaintiff double downs on its position that the system for profile matching claimed in the '811 and '854 Patents is "defaulted" to stopping communication between two users. (D.I. 82 at 10-11, 17-18.) The patents' specifications mention the word "default" once—"[i]n some embodiments, matching server 20 may be configured to generate pool 30 by **default** according to various characteristics and preferences of user 14 and other users of the system." ('811 Patent, 6:45-48; '854 Patent, 6:57-60 (emphasis added).) This disclosure has nothing to do with whether

the system is defaulted to stop communication between users. Plaintiff's position is thus completely unsupported by the intrinsic evidence.

Plaintiff asserts that Figure 10 "describes results from both the YES and the NO decision" and the "NO decision merely maintains a default." (D.I. 82 at 11-12, 17.) Plaintiff's descriptions of Figure 10, however, are inaccurate. Figure 10 includes "do not allow communication" as a separate step the system must take, as explained by the patents' specifications. (D.I. 83 at 8-17.) If the system was defaulted to not allow communication, the flowchart would indicate it. To the contrary, as explained in Bumble's Responsive Brief, Figure 10 does not show any default state, but rather shows two distinct steps based on user preferences to either allow or "do not allow" communication. (*Id.* at 10-12.) The affirmative step of "do not allow" communication supports Bumble's construction that "without allowing communication" involves "an affirmative act to ensure no communication between users."

Plaintiff incorrectly suggests that the prosecution history of the related '811 Patent is not relevant for the '854 Patent and the construction of "without allowing." (D.I. 82 at 12.) Not so. As explained in Bumble's Responsive Brief, the prosecution history of the '811 Patent is highly relevant. (D.I. 83 at 12-16 (citing *Absolute Software, Inc. v. World Comput. Sec. Corp.*, No. 09-cv-142, 2014 Markman 496879, at *7-*8 (W.D. Tex. Feb. 6, 2014)).)

Plaintiff states that "Match amended its claims to recite 'preventing' limitations" without noting the import of Match doing so. (D.I. 82 at 15.) Match did so to overcome a rejection in light of Janssens. (D.I. 76, Ex. 8 at MTCH-585.) The applicants amended their claims and described the invention of the patents as "enabling and disabling communication." (D.I. 76, Ex. 8 at MTCH-594.) Before the PTO, patentees never once used the word "default" or stated that their invention was "defaulted" to prevent communication. (*See id.*) Indeed, their primary focus in distinguishing

Janssens focused on Janssens' "disclos[ures] that users exist in the chat list (and communicate with each other) before they are linked." (*Id.*) Similarly, Janssens "addresses a 'speed dating' situation where users who have expressed no preference for other users are forced to chat with another for a specified period of time." (*Id.* at MTCH-595.) According to patentees, this "teaches away from the claimed manner of <u>enabling and disabling</u> communication which require a particular set of factors to allow for communication between users." (*Id.*) Patentees focus largely on the "allowing" steps and "enabling communication" in distinguishing from the prior art, but make it a point to characterize their invention as "enabling and disabling." (*Id.*) And, at this time, contrary to Plaintiff's statements, the claims recited "determining to enable communication," not "determining to enable initial communication." (*Id.* at MTCH-587-88, 590-91.)

Moreover, as Plaintiff notes, "the claims were amended to recite that 'preventing' must occur 'after' the negative preference indication." (D.I. 82 at 15, n.7; *see also* D.I. 77-10 at 2-6 (claims of the '811 Patent reciting "preventing communication between the first user and the third user **after** determining that the first user has expressed the negative preference indication regarding the third user" (emphasis added)).) This temporal element to "preventing" communication indicates that the system is not "defaulted" to stop communication. Rather, as Plaintiff acknowledges, something else must happen, and then only *after* that, communication is "prevented" between users. "Here again, the claims describe both enabling communication in response to a certain condition and then preventing **after a scenario in which that certain condition does not exist**." (*Id.* at 18 (emphasis added).) The claim language itself and Plaintiff's own statements undermine Plaintiff's "default" system argument and support Bumble's proposed construction.

Turning to the extrinsic evidence, Plaintiff argues that the definition of "allow" it points to is "more accurate" than others, but fails to provide any support for why that is so. (D.I. 82 at 13.) While one definition of "allow" means "permit," other definitions, such as "to forbear or neglect to restrain or prevent," are also informative in light of the intrinsic record. (*Id.*; D.I. 76 at 14.) Furthermore, Plaintiff's assertions about the lack of an opinion from Mr. Schmandt regarding "without allowing" are unfounded. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("We have held that extrinsic evidence such as expert testimony is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.' While helpful, extrinsic sources like expert testimony cannot overcome more persuasive intrinsic evidence.")

With respect to "preventing communication," Plaintiff cites to no authority that the Court must accord Mr. Schmandt's statements weight in Bumble's IPR petition for the '811 Patent. (*See* D.I. 82 at 14.) *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("statements made by a **patent owner** during an IPR proceeding . . . can be considered for claim construction") (emphasis added). Even so, in that IPR petition, filed before claim construction in this case commenced, Mr. Schmandt and Bumble applied Plaintiff's understanding of the term, as indicated by Plaintiff's infringement contentions. Where the intrinsic evidence is clear, as here, there is no need for expert opinion. *Kara Tech.*, 582 F.3d at 1348.

### D. "associated"

In arguing that the term "associated" is definite, Plaintiff ignores the standard for indefiniteness. That standard is not whether the term has a "common and well-understood meaning," but whether the claimed scope of the claim is reasonably certain to one of ordinary skill in the art in view of the intrinsic evidence. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129-30 (2014). That is not the case here. As Plaintiff admitted in its opening brief, "[t]he word 'associated' should not be construed or analyzed in isolation but rather in the context of the

surrounding claim language." (D.I. 77 at 26.) Here, then, as Bumble explained, the claimed "association" or relationship between the various claimed elements differs based on the context of the claim language and is unclear. (D.I. 76 at 18-21.)

Plaintiff's attacks on Mr. Schmandt's opinion are misguided. First, Plaintiff claims that Mr. Schmandt's opinion should be given no weight because he "cites to no intrinsic or extrinsic evidence in support of his opinion on indefiniteness." (D.I. 82 at 20.) Plaintiff cites to *Phillips* for the position that "conclusory, unsupported assertions by experts as to the **definition** of a claim term are not useful to a court." (*Id.* (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (emphasis added)).) But, *Phillips* is inapposite as it involves claim construction, not indefiniteness. *See Phillips*, 415 F.3d at 1324-27. Proposing a definition for claim construction through an expert, however, is significantly different from an expert opining on indefiniteness. In the context of indefiniteness, expert declarations are encouraged "to demonstrate the understanding of a person of ordinary skill in the art." *Whirlpool Corp. v. Ozcan*, No. 15-cv-2103-JRG, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016).

Moreover, an indefiniteness challenge is based on the premise that there is no intrinsic or extrinsic evidence that would make the meaning and scope of the indefinite term clear to one of ordinary skill in the art. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018) (affirming finding that term was indefinite during claim construction where "[r]elying on the specification's lack of explanation and specific examples of this term, HP's expert Dr. Schonfeld opined that the patent does not inform a skilled artisan of the meaning of [the term] with reasonable certainty"). As in *Berkheimer*, Mr. Schmandt reviewed the specifications of the asserted patents and could not find anything elucidating the meaning of "associated" in the context of the asserted claims. (D.I. 76-1, ¶¶ 32, 36.) There is simply nothing for him to cite. While Plaintiff cited

sections of the '023 Patent's specification in its opening brief where the term "associated" was used, (D.I. 77 at 26), these portions are irrelevant to understand the meaning of "associated" in the context of at least "a first swiping gesture associated with the graphical representation;" "a positive preference indication associated with the first item of information;" and "a first positive preference indication associated with the graphical representation." (D.I. 83 at 23-24.) Indeed, it is telling that Plaintiff cites to no intrinsic evidence itself in its responsive brief explaining the meaning of these terms. (*See* D.I. 82 at 20-23.)

Second, Plaintiff argues that Mr. Schmandt's position is contrary to those he has taken in Bumble's recently filed IPR petitions. It is well-known that IPR proceedings are limited by statute to prior art challenges and a patentability challenge in an IPR petition cannot be based on indefiniteness or other § 112 grounds. *See* 35 U.S.C. § 311(b); *Cuozzo Speed Techs. v. Lee*, 136 S. Ct. 2131, 2141-42 (2016) ("canceling a patent claim for 'indefiniteness under § 112' in inter partes review is outside [the PTAB's] statutory limits"). Moreover, *Sonix Tech.* is distinguishable from the facts here. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1380 (Fed. Cir. 2017). There, the Federal Circuit found that appellees failed to raise indefiniteness issues for the term in question in their initial and final invalidity contentions, "even though they contended that twenty-eight other terms *were* indefinite." *Id.* Appellees in that case also "initially argued for a specific construction of the term." *Id.* None of this is the case here, nor does Plaintiff allege so. As the Federal Circuit reasoned, "the fact that an expert has applied a contested claim term without difficulty" does not "render a claim immune from an indefiniteness challenge." *Id.* at 1380-81.

Bumble's indefiniteness arguments regarding "associated" do not focus solely on the "breadth" of the term "associated." Rather, the term "associated" is indefinite because the scope and meaning of the term is not reasonably ascertainable; the relationship between the claimed

elements is entirely unclear. To that end, arguments concerning uncertainty about infringement "are in accordance with the very purpose of the definiteness requirement." *GE Lighting Sols., LLC v. Lights of Am., Inc.*, No.12-cv-3131, 2015 WL 1564945, at *2 (N.D. Ohio April 8, 2015) (citing *All Dental Produx, LLC v. Advantage Dental Prod. Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002) ("The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection . . . so interested members of the public, *e.g.*, competitors of the patent owner, can determine whether or not they infringe.")); *see also Nautilus*, 134 S. Ct. at 2129 ("[A] patent must be precise enough to afford clear notice of what is claimed . . . otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.").

E.    **"the text area"**

Plaintiff argues that "the text area" should be construed as "a text area." (D.I. 82 at 24.) This proposed construction fails to remedy any ambiguity as to what constitutes "a text area." Plaintiff first argues that because the Examiner "expressly considered the term" and thus "understood the scope of the term," the claim limitation is definite. (*Id*.) This is not the standard for indefiniteness for good reason. *Every* patent claim ultimately rendered indefinite in litigation has to have passed examination during prosecution. *See Berkheimer v. Hewlett-Packard Co.*, No. 12-cv-9023, 2015 WL 4999954, at *10 (N.D. Ill. Aug. 21, 2015) (finding a claim indefinite despite patentee's arguments that the "examiner already determined that the claim met the § 112, ¶ 2 requirement," because, among other reasons, courts are "not bound by the PTO's claim interpretation"); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-74 (Fed. Cir. 2014) (finding term indefinite in a previously-granted patent claim where the intrinsic record failed to inform a person of ordinary skill about the scope of the invention with reasonable certainty). Instead, the standard before the Court is whether one of ordinary skill in the art can reasonably

determine the scope of the claim. *Nautilus*, 134 S. Ct. at 2129-30. In the context of the intrinsic record here, "a text area" could have at least a few different meanings: an area depicting text on the screen, an area with links to multiple conversations, or a text input area. A person of ordinary skill in the art would not be able to reasonably ascertain the scope of the term. (D.I. 76 at 21-22; D.I. 83 at 25; D.I. 76-1, ¶ 38.)

The '811 Patent's specification never defines, let alone mentions, the term "text area." Plaintiff's first citations to the specification ignore the context of the claim language, which requires that the "graphical notification comprise[s] a user interface control enabling the text area to be presented to the first user." ('811 Patent, cl. 2.) The claims do not state that "upon mutual preference," users are immediately presented with a chat interface. Thus, a person of ordinary skill in the art would not equate the disclosures in the specification discussing "immediately present[ing] an option to users that have been matched to engage in a communication session" and "enabl[ing] Harry and Sally to directly communicate with each other (e.g., through a private chat interface)" with the claimed "text area." (*Id.*, 22:10-15, 22:42-45.) Instead, a person of ordinary skill in the art would look to the disclosures regarding the "graphical notification." That term, however, is also not mentioned in the '811 Patent specification.

Figure 9, discussed by Plaintiff, nonetheless likely depicts the claimed "graphical notification," which does include "Send a Message" button 92. (*Id.*, 22:19-29.) Nevertheless, there is no discussion of what the system displays to the user when the user presses the "Send a Message" button 92. Nor are there any figures depicting that display. Plaintiff points to Figure 12D, which is "an example communication interface between users of the matching system," (D.I. 82 at 25), but as explained by Mr. Schmandt, Figure 12D does not "resolve the ambiguity of the term 'text area' to a person of ordinary skill in the art." (D.I. 76-1, ¶ 38.) Figure 12D does not

include any area where a user can enter text. (*Id.*) Thus, the specification sheds no light on the appropriate scope of the term.

Plaintiff then turns back to the prosecution history, stating that "prior versions of the claims" made the meaning of "text area" clear. (D.I. 82 at 25.) During prosecution of the '811 Patent, the claims originally recited: "**a text area, the text area configured to receive text inputted by the first user to send to the second user**." (D.I. 76, Ex. 8 at MTCH-584-85.) Patentees then deliberately dropped this limiting and clarifying language, changing the language to solely "the text area." This change broadens and confounds the exact meaning of "the text area" in the claims. Plaintiff could have carried the original clarifying language through to the final claims, but chose not to do so. Indeed, Plaintiff concludes its argument by stating that "text area" is not limited to this meaning—according to Plaintiff, "the 'text area' related to texting or chatting is not necessarily only a 'text input area' but any such area related to texting or chatting." (D.I. 82 at 26.) Plaintiff's proposed meaning "fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2123.

## III. CONCLUSION

For the reasons set forth herein and in Bumble's Opening and Responsive Briefs, Bumble respectfully requests that the Court adopt its proposed constructions and find the terms "associated" and "the/a text area" indefinite.

Dated:  May 24, 2019                    */s/ Joseph M. Drayton*

> Deron R. Dacus (TX 00790553)
> **THE DACUS FIRM, PC**
> 821 ESE Loop 323, Suite 430
> Tyler, TX 75701
> Telephone: (903) 705-1117
> Facsimile:  (903) 581-2543
> ddacus@dacusfirm.com
>
> Joseph M. Drayton (*pro hac vice*)
> NY Bar No. 2875318
> **COOLEY LLP**
> 1114 Avenue of the Americas
> New York, NY 10036
> Telephone: (212) 479-6000
> Facsimile: (212) 479-6275
> jdrayton@cooley.com
>
> Michael G. Rhodes (*pro hac vice*)
> CA Bar No. 116127
> Matthew Caplan (*pro hac vice*)
> CA Bar No. 260388
> **COOLEY LLP**
> 101 California Street, 5th Floor
> San Francisco, CA 94111-5800
> Telephone: (415) 693-2000
> Facsimile: (415) 693-2222
> mrhodes@cooley.com
> mcaplan@cooley.com
>
> Rose S. Whelan (*pro hac vice*)
> DC Bar No. 999367
> **COOLEY LLP**
> 1299 Pennsylvania Ave., N.W.
> Suite 700
> Washington, DC 20004
> Telephone: (202) 842-7800
> Facsimile: (202) 842-7899
> rwhelan@cooley.com
>
> *Attorneys for Defendants Bumble Trading, Inc. and*
> *Bumble Holding, Ltd.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record on May 24, 2019.

*Joseph M. Drayton*
Joseph M. Drayton