IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

MATCH GROUP, LLC                *
                                *
                                *
VS.                             * CIVIL ACTION NO. W-18-CV-80
                                *
BUMBLE TRADING, INC.            *    May 28, 2019

<u>BEFORE THE HONORABLE ALAN D ALBRIGHT, JUDGE PRESIDING</u>
<u>TELEPHONIC CONFERENCE</u>

APPEARANCES:

| For the Plaintiff: | John F. Summers, Esq.<br>Caldwell Cassady and Curry PC<br>2101 Cedar Springs Rd., Ste 1000<br>Dallas, Texas 75201 |
|---|---|
| For the Defendant: | Joseph M. Drayton, Esq.<br>Cooley LLP<br>1114 Avenue of the Americas<br>New York, NY 10036<br>- and -<br>Rose S. Whelan, Esq.<br>Cooley LLP<br>1299 Pennsylvania Avenue, NW<br>Suite 700<br>Washington, DC 20004-2400<br>- and -<br>Deron R. Dacus, Esq.<br>The Dacus Firm, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, Texas 75701 |
| Court Reporter: | Kristie M. Davis<br>United States District Court<br>PO Box 20994<br>Waco, Texas 76702-0994 |

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

(May 28, 2019, 2:04 p.m.)

THE COURT: Good afternoon, everyone. How are y'all?

MR. DACUS: Good, Judge. Thank you.

MR. SUMMERS: Doing well, Your Honor.

THE COURT: So if I could hear from each of the parties by whoever's going to speak and if you could introduce yourself on the record, please.

MR. SUMMERS: Sure. This is John Summers on behalf of Match Group, LLC. With your court -- with Your Honor's indulgence, I'll take the first stab at this issue. I hope this hearing's pretty quick because in some sense this issue seems pretty simple to us. The Court's model scheduling order, which the parties entered into, you know, by agreement, set the deadline for defendants to produce, quote, technical documents, including software, where applicable, sufficient to show the operation of the accused products. The question is in a software case like this one, does that requirement that they produce technical documents, including software, mean that a defendant should produce source codes, that a defendant should produce software? We think the answer to that is obviously yes, but Bumble has so far produced, you know, no source code whatsoever, currently believes that that deadline doesn't require it to produce source code, and we think, you know, by not doing that they have not met the obligation to comply with that deadline. And, Your Honor, I can go into the reasons why,

you know, we think that deadline means source code should be produced, but at some level it kind of seems open and shut to us. So I guess we can hear from Bumble first or hear from the Court about what it's contemplated in including that language, but, you know, we think obviously the source code is necessary to provide sufficient notice on how a software product works.

THE COURT: So this is Alan Albright. As a general matter -- this is for everyone. As a general matter, Mr. Summers, I am in complete agreement with you. So having said that, let me hear from Bumble as to why they think that's not right.

MR. DACUS: Yes, Your Honor. Thank you. This is Deron Dacus and I'll be brief, but I do want to provide a little bit of background because I think it's hopefully helpful for the Court.

The plaintiffs, as the Court likely knows, have served their infringement contentions in this case. Likewise Bumble as the defendant has produced technical documents, specifically produced these technical documents called PRDs. We've really heard no complaint from the plaintiff specifically that those technical documents were insufficient to -- for the purpose of putting forward their infringement contentions. We haven't had any disputes along those lines. Bumble's position, the defendant's position has been that the Court stayed discovery in the case for everyone. And as some background, we've asked

the plaintiff for some prior art productions along the way. They've referred us to the fact that the Court stayed discovery and we basically acquiesced to the plaintiff's refusal to produce that stuff because of the stay of discovery.

As the Court may know, there's a Markman hearing on June 7. So less than a couple of weeks away. I think the parties have agreed that discovery will open on June 14th just a week after the Markman, and certainly we, the defendant, anticipate producing source code at that time. You know, we'll likewise expect that the plaintiff will be producing whatever source code is relevant that we need.

THE COURT: Right.

MR. DACUS: That's basically the position, Your Honor.

THE COURT: Got it. Well, let me say this. I -- maybe I heard Mr. Summers say something. Maybe I just intuited something he was saying that, Mr. Dacus, you may have helped me clarify, and I always -- you know, Mr. Dacus, so you know, when they -- when they bring you out to make this argument, I always know that they -- I always worry that they really needed to go deep in the bench to get their best player. So, you know, maybe they need to -- I should be worried about that, but here's what I really care about and this is all probably my fault as I'm trying to figure out how to come up with these rules.

My -- and, Mr. Summers, let me -- let me help inform you

of what my goal is in terms of what discovery you get prior to the Markman. If you think -- if a plaintiff thinks it needs something to help prepare it with respect to infringement contentions, then I expect the parties to work together to get that information, and if they can't, that's fine. We have one of these phone calls and we move on and I'm not unhappy. I get you've got to protect your client's position. But I guess I presumed when you told me that you needed the source code that you were telling me -- because I was aware we're having the Markman a week from Friday and I'm already -- you know, y'all just got your briefs in like within the last couple of days, right? And so you know, I've started reviewing that stuff to be prepared. But, Mr. Summers, the way I see it -- this is for both sides -- is if you needed the source code to do your infringement contentions, then I probably would allow it. If you don't need the source code to do your infringement contentions, then that's something that I would anticipate would not be provided until whatever date you agree to shortly after the Markman.

MR. SUMMERS: Thank you for that clarity, Your Honor. And I would just like to clarify a couple of things on that particular issue. On the infringement contentions issue -- and I will say knowing that the source code will be available on June 14th -- this is a bit of a question to Mr. Dacus. Is that going to be available for inspection or available for us to

1  serve an RFP to then inspect it 30 days later?
2      MR. DACUS:  So I don't want to talk directly to counsel,
3  Your Honor, without the Court's permission to do that, but I'm
4  happy to respond if the Court's okay with me doing so.
5      THE COURT:  You're nice to say that, but yeah.  That's
6  absolutely fine.
7      MR. DACUS:  Okay.  So I think what we anticipated,
8  Mr. Summers, is that Bumble would be making its code available
9  within a couple of weeks of that June 14th kickoff date and I'm
10 confident that you and I and the rest of the lawyers in this
11 case can work out when to make that available, but there's not
12 going to be any sort of unreasonable delay in them doing so.  I
13 certainly expect we can do so within a couple of weeks of that
14 date.
15     THE COURT:  And this is Alan Albright.  Let me just
16 interrupt before you start back up, Mr. Summers.  When we -- at
17 the end of the Markman hearing, if you don't know, the way I
18 plan to handle the Markman is at the end of each -- arguments
19 on each claim term, I will tell you how I'm going to construe
20 the claim term so at the end of the hearing you will know what
21 the claim constructions are.  What I'm going to do then is I'm
22 going to assign -- I'll just pick someone now.  I may forget by
23 then, but I'll just pick Mr. Summers to be the one to do it.
24 I'll assign -- someone on your vast teams of lawyers needs to
25 make sure as I'm telling you what the claim construction is to

write it down.  At the end of the day I'm going to say, Mr. Summers, I want you to prepare a document that has the claim constructions that I've announced from the bench, show it to Mr. Dacus or whoever's on the other side just for purposes of form.  I'm not expecting anyone to waive anything that they agreed to or anything.  I just want to make sure that I have a document that accurately reflects what I announced from the bench the claim constructions would be, and then hopefully within 30 days or less I'll get out an order that has, you know, the basis that I'll provide for the reason I gave the claim terms, but you'll have that day the claim constructions.  What we'll do then --

Have we set a trial for this case?

LAW CLERK:  I can't remember.

MR. SUMMERS:  No, Your Honor.

THE COURT:  So what we'll do at the end of the hearing then is you'll have the claim constructions.  We'll discuss then when we're going to go to trial.  You should expect it will be somewhere in the neighborhood next year of May, June, July, whatever.  You know, you guys come with your calendars.  I'll come with mine.  Be prepared to tell me about how long you think you need for trial and I'll take into consideration, if necessary, if either side says the trial date will be affected by when we can get certain stuff done.  Let me know then.  If Mr. Dacus comes in, says, Judge, we think they'll have the

1   software, you know, by the end of the month.  I'm just picking
2   a date.  I don't care what it is.  I'll take that into
3   consideration and make sure that it works for the trial date.
4   So keep all that in mind as we're discussing what we're
5   discussing here.
6          MR. SUMMERS:  Sure.  Thank you, Your Honor, and thank you
7   very much for the procedure and clarity on the trial date.
8          On this -- on this point about infringement contentions,
9   and I just want to make sure I'm totally clear on the Court's
10  expectations and how that implicates source code.  As I
11  understand the standard order, there's actually two dates for
12  infringement contentions.  There's the preliminary infringement
13  contentions which occur prior to the invalidity contentions
14  deadline.  Then there's the invalidity contentions deadline
15  which includes this language indicating that source code should
16  be produced, and then you have the final infringement
17  contentions deadline and the final invalidity contentions
18  deadline.  And so the only thing that's happened so far is the
19  preliminary infringement contentions and the preliminary
20  invalidity contentions.  So I think in terms of this question
21  about whether the source code is necessary for the infringement
22  contentions, certainly it was not necessary for the preliminary
23  infringement contentions and we disclosed, you know, a number
24  of series and we think we've fully disclosed, you know, all
25  possible theories for why the Bumble app infringes the claims

on an element by element basis, but in those contentions we also talk about, you know, certain things that we don't know in the source code.  So there's a lot of discussion about, well, the client -- you know, the phone itself reads on these claims in this way because you probably do this.  And there's stuff that the server, you know, the back end stuff reads on this claim in this way because of, you know, the way we think it operates, and then there are issues of, you know, the clients and the servers together read on these claims in this particular way because we think those -- you know, the claims can read to encompass both of those.  So we have theories for all of those things, but in terms of discoverability and preparing final infringement contentions and things like that, the source code, you know, which is contemplated in our understanding on that preliminary invalidity contention deadline before the Markman so that you can look at it and know once fact discovery actually opens, which we're working with that so all that can be, you know, more efficient and more tailored and things like that.  We've disclosed the theories, but in terms of the details, in terms of what the infringement, you know, evidence is going to be at trial, that's obviously source code based.  And so in terms of the deadlines and things, we would obviously prefer to go ahead and get a look at that as soon as possible.  And so, you know, in our view it should have been two months ago.  You know, I don't want to

1  pick a fight for no reason and two weeks after -- you know, two
2  weeks after discovery opens, it's probably fine, but I did want
3  to, you know, clarify why we're here, why we thought it was
4  necessary and, you know, what our -- what our view is in terms
5  of how this source code is going to play out as it relates to
6  our infringement contentions.  It will be ultimately, you know,
7  certainly informative of the ultimate infringement theories
8  that we pursue at trial.
9      THE COURT:  Well, Mr. Summers, this is Alan Albright.  And
10 I appreciate all that.  Let me give you my perspective which
11 may be important as well.
12     MR. SUMMERS:  Of course, Your Honor.
13     THE COURT:  I think you've both done exactly what I had
14 hoped you would do at this point in the case.  You've gotten
15 what the -- I know Mr. Dacus very well.  I'm certain you've
16 gotten from defendant what they in good faith thought you were
17 entitled to get at this point.  It sounds like you did your
18 infringement contentions based on that -- preliminary
19 constructions based on that and they haven't complained that
20 they were inadequate, and then based on your infringement
21 contentions, they've given you their basic invalidity
22 contentions and you guys haven't complained about those.  And
23 so what'll happen next is you'll get their source code.  If you
24 need to update your infringement contentions sufficiently to
25 allow -- then you're going to need to do that because then the

1  defendant is going to need to update their invalidity
2  contentions both based on that and also based on what my
3  Markman constructions are.  And then once all that happens, you
4  guys get to go do discovery and hire experts who are going to
5  say whatever you tell them to say pretty much anyway that
6  either shows infringement or says it doesn't infringe and
7  hopefully on your side that will be relatively consistent with
8  what you have in your infringement contentions and it'll
9  probably be inconsistent with what Bumble puts in their expert
10 report.  So in other words, I think everyone is doing great in
11 this case.  It's like Judge Paul Luckern used to say at the ITC
12 every time after he chewed someone out vigorously, he'd slam
13 his hand down and say, all the parties are doing great.  The
14 lawyers are doing great.  I just want the record to say the
15 lawyers are doing great.
16     So it seems to me everything's in -- exactly where I want
17 it to be.  You know, I'm comfortable you guys can work all this
18 stuff out, but I always invite you -- if you have any issues
19 like this, I'd much rather hear about it in May of 2019 than,
20 you know, after your expert depositions are done because I
21 can't help then.  So I'm happy to have this hearing.  Sounds to
22 me like everyone's in good shape, and unless there's something
23 else, I'll just go back into my cave and get to work preparing
24 for the Markman hearing unless -- if there's anything else we
25 need to take up, I'm happy to.

1      MR. SUMMERS:  Nothing else from Match Group, Your Honor.
2      MR. DACUS:  Nothing from Bumble, Your Honor.  Thank you.
3      THE COURT:  Okay.  Well, you guys have a wonderful day and
4  I will see you a week from -- are you guys -- did we get to you
5  guys in time to get you to submit audio versions of the
6  Markman?  Is this the first time you've heard about this in
7  my -- it may be.
8      MR. DACUS:  This is Deron Dacus, Your Honor.  I know about
9  it and I'm waiting for my co-counsel at Cooley to respond.  I
10 don't remember if we submitted an audio or not.
11     THE COURT:  Well, here's what I'm going to -- I'm going to
12 get -- I'm having another meeting of my ad hoc group in a
13 couple of weeks to -- you know, to -- now that I've been doing
14 this awhile and this'll be in there.  I'm going to make this
15 soon mandatory, but here's what is very, very helpful to me.
16 If you guys will take your -- take the Markman constructions.
17 I don't need any of the windup.  I don't need the law on the
18 consideration of extrinsic evidence.  I don't need any of that
19 stuff.  What would be very helpful to me is if you take the
20 arguments you've made strictly on the claim terms that are in
21 dispute and give me an audio version of that in a way that we
22 can download it to Dropbox or some other method, MP3 type
23 method, I drive back and forth between here and Austin.  I'll
24 have at least three more trips before your hearing and I
25 promise you I will -- if you submit it, I will have already

read it, but I promise you I will also listen to it like books on tape and it will help you all and it'll help me. If you decide you don't want to do that, that's fine. If just one side wants to do it, that's fine, but I will tell you it's very, very helpful to me to have an audio version just of the -- you know, claim term X. Plaintiff's construction, proposed construction, is Y. Defendant's proposed construction is Z and then you read to me the arguments that are right there. I'll listen to them. If you don't want to, it's -- you know, you have one less round of me being prepared, but if you submit them, I can tell you that, you know, I'll listen to them back and forth either then or while I'm out walking around Waco in the evening. So but eventually I'm going to make this mandatory.

    MR. DACUS: Your Honor, this is Deron Dacus. I think we submitted audios in the Stasher case and I'm assuming that was adequate for the Court.

    THE COURT: It was exceptionally helpful.

    MR. DACUS: Okay.

    THE COURT: Yeah. I've got to tell you it was really, really helpful.

    MR. DACUS: Okay. We'll be happy to do that.

    THE COURT: And if you send them to Mr. Lewis Tandy, he -- e-mail them. Yes. If you'll e-mail them to Lewis, then he or someone like him will be able to put it on my phone in my iPad

1  on Dropbox or some other format and I will listen to them as
2  I'm walking or driving.
3      MR. DACUS: We will absolutely do that. Thank you, Your
4  Honor. And I'm happy to confer with Mr. Summers on what we did
5  in the Stasher case so that they have the benefit of knowing
6  that also.
7      THE COURT: Oh, absolutely.
8      MR. SUMMERS: On behalf of Match Group, we'll certainly
9  endeavor to do that and I know it was actually on our to do
10 list. So we'll do that as fast as we can so we can make
11 those -- make it in advance of those Austin to Waco trips.
12     THE COURT: Yeah. If you have it to me by Friday, I'll
13 have a trip up here -- I'll be coming back Monday and you'll
14 have -- that'd be great. If you don't, that's fine, but if you
15 have it to us by Friday where I can get it downloaded, then
16 I'll have two trips to listen to it.
17     MR. SUMMERS: Sounds good, Your Honor.
18     THE COURT: Okay. Anything else we need to take up?
19     MR. SUMMERS: Nothing from Match Group.
20     MR. DACUS: Nothing, Your Honor.
21     THE COURT: I'll wrap up with this. Knowing that the
22 trial -- do you guys have any idea -- I won't hold you to this.
23 I'm just thinking out loud. Do you guys have any idea -- how
24 many -- do you have any idea, Match Group folks, how many -- at
25 this point are you far enough along to have an idea of how many

```
 1  claims you would be asserting?
 2       MR. SUMMERS:  Your Honor, I would be totally guessing at
 3  this point.
 4       THE COURT:  Okay.
 5       MR. SUMMERS:  I'm reluctant to put a number out there.
 6       THE COURT:  So what I need you to do is by the time we
 7  have the hearing a week from Friday to give me an idea of how
 8  many hours you're going to need for trial.
 9       MR. SUMMERS:  Absolutely, Your Honor.
10       THE COURT:  So that way we'll be able to set it, but be
11  looking at your calendars for the late May, June, early July
12  time schedule next summer.
13       MR. DACUS:  We will do that, Your Honor.  And, Your Honor,
14  this is Deron Dacus.  I'll apologize in advance.  I will not be
15  there at the Markman.  I'm starting a three week trial in Judge
16  Mazzant's court on Monday, but --
17       THE COURT:  Oh, really?
18       MR. DACUS:  But the Bumble folks are in good hands.
19       THE COURT:  Is it a patent case?
20       MR. DACUS:  It is a trade secret case.
21       THE COURT:  Well, I'm envious because I can't imagine a
22  better judge to be in front of than Judge Mazzant.
23       MR. DACUS:  It will -- I think it's going to be a pretty
24  good fight and it will be good to be in front of Judge Mazzant.
25  No doubt about it.
```

1       THE COURT: What counsel is on the other side?

2       MR. DACUS: Seyfarth Shaw, the national counsel on the

3 other side, and Mr. Clyde Seibman's the lawyer.

4       THE COURT: Boy, they ought to sell --

5       MR. DACUS: We've got our work cut out for us.

6       THE COURT: They ought to sell tickets when you and Clyde

7 Seibman lock horns. That would -- you could probably get a

8 pretty good rate for that.

9       MR. DACUS: Yeah. Regrettably you can read about this one

10 in the Wall Street Journal and the New York Times and

11 everywhere else. It'll -- I guess it'll be fun if you're

12 sadistic enough to call it that.

13       THE COURT: Well, just make sure they spell your name

14 right.

15       MR. DACUS: I hope they don't even try.

16       (Laughter.)

17       THE COURT: Okay. Y'all have a wonderful afternoon and

18 I'll see everyone but Mr. Dacus a week from Friday.

19       MR. DACUS: Thank you, Judge.

20       MR. SUMMERS: Thank you, Your Honor.

21       (Hearing adjourned at 2:27.)

22

23

24

25

```
 1  UNITED STATES DISTRICT COURT  )
 2  WESTERN DISTRICT OF TEXAS     )
 3
 4       I, Kristie M. Davis, Official Court Reporter for the
 5  United States District Court, Western District of Texas, do
 6  certify that the foregoing is a correct transcript from the
 7  record of proceedings in the above-entitled matter.
 8       I certify that the transcript fees and format comply with
 9  those prescribed by the Court and Judicial Conference of the
10  United States.
11       Certified to by me this 3rd day of June 2019.
12
                             /s/ Kristie M. Davis
13                           KRISTIE M. DAVIS
                             Official Court Reporter
14                           800 Franklin Avenue, Suite 316
                             Waco, Texas 76701
15                           (254) 340-6114
                             kmdaviscsr@yahoo.com
16
17
18
19
20
21
22
23
24
25
```