## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **MATCH GROUP, LLC** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **BUMBLE TRADING INC. and BUMBLE** | § | **No. 6:18-cv-00080-ADA** |
| **HOLDING, LTD.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| **BUMBLE TRADING INC. and BUMBLE** | § | **JURY TRIAL DEMANDED** |
| **HOLDING, LTD.,** | § | |
| | § | |
| **Cross-Plaintiffs,** | § | |
| v. | § | |
| | § | |
| | § | |
| **MATCH GROUP, LLC and** | § | |
| **IAC/INTERACTIVECORP,** | § | |
| | § | |
| | § | |
| **Cross-Defendants.** | § | |
| | § | |

## PLAINTIFF/COUNTERDEFENDANT MATCH GROUP, LLC AND COUNTER-DEFENDANT IAC/INTERACTIVECORP'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS UNDER RULES 12(b)(1), 12(b)(2), 12(b)(6), AND 12(f)

# TABLE OF CONTENTS

I.    THE COURT SHOULD DISMISS BUMBLE'S STATE LAW COUNTERCLAIMS. ................................................................................ 1

    A.  The Court Should Confine Its Analysis to the Pleadings in Bumble's Counterclaims, Not Bumble's Re-Framed Theory Barred by Claim Preclusion. .......... 1

    B.  The Court Should Dismiss Bumble's State Law Counterclaims for Lack of Jurisdiction ................................................................................ 3

        1.  The Court Should Dismiss the State Law Counterclaims as to Match and IAC for Lack of Subject Matter Jurisdiction. ........................................... 3

        2.  The Court Should Dismiss the State Law Counterclaims as to IAC for Lack of Personal Jurisdiction. .............................................................. 4

    C.  The Court Should Dismiss Bumble's State Law Counterclaims on the Merits. ............ 6

        1.  The Court May Take Judicial Notice of Exhibits C and D ....................................... 6

        2.  The Court Should Dismiss Each State Law Counterclaim Against Match Group, LLC Because Bumble Fails to Allege Facts Making It Plausible that Match Group, LLC Made Any Representation. ................................................... 7

        3.  Bumble Has Not Pleaded Any Viable Representation-Based Claim Because Bumble Has Not Pleaded Sufficient Facts Giving Rise to Any Inference that a Represented, Existing Fact Was False. .................................................... 7

        4.  Bumble Has Not Pleaded Viable Representation-Based Theories Because Bumble Has Not Pleaded Justifiable Reliance ...................................................... 11

II.    BUMBLE'S OPPOSITION PROVIDES NO SUBSTANTIAL DEFENSE TO LITIGATING IRRELEVANT TANGENTIAL REGISTRATION ISSUES, AND THE COURT SHOULD DISMISS THESE COUNTERCLAIMS. ................................. 12

    A.  Bumble Fails to Plead a "Close Nexus" Between the Pending-Registration Marks and the Registered Mark, Other than SWIPE in Class 45. .......................................... 12

    B.  Bumble Fails to Establish a Basis to Exercise Declaratory Judgment Jurisdiction. .... 13

    C.  There Is No Case-and-Controversy Jurisdiction Concerning the Unasserted, Pending-Registration Marks. ....................................................................................... 14

III.   THE COURT SHOULD STRIKE BUMBLE'S AFFIRMATIVE DEFENSES ............... 15

IV.   CONCLUSION ................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*
   537 F.2d 4 (2d Cir. 1976) ........................................................................................ 13

*AngioScore, Inc. v. TriReme Med., LLC*
   666 F. App'x 884 (Fed. Cir. 2016) ......................................................................... 3, 4

*Ashcroft v. Iqbal*
   556 U.S. 680 (2009) .................................................................................................. 7

*Breakall v. Munnt*
   2008 WL 11417063 (W.D. Tex. Oct. 9. 2008) ......................................................... 4

*Burger King Corp v. Gudzewicz*
   471 U.S. 462 (1985) .................................................................................................. 4

*Carter v. Target Corp.*
   541 F. App'x 413 (5th Cir. 2013) ............................................................................. 6

*CBH Equity, LLC v. Murphy Oil USA, Inc.*
   333 F. Supp. 3d 664 (S.D. Tex. 2018) .................................................................... 11

*Central Freight Lines Inc. v. APA Transp. Co.*
   322 F.3d 376 (5th Cir. 2003) .................................................................................... 4

*Crucci v. Seterus, Inc.*
   2013 WL 6146040 (W.D. Tex. Nov. 21, 2013) ........................................................ 6

*Davis v. Texas Farm Bureau Ins.*
   470 S.W.3d 97 (Tex. App.—Hous. [1st Dist.] 2015, no pet.) ................................. 11

*Delta Brands Inc. v. Danieli Corp.*
   99 F. App'x 1 (5th Cir. 2004) .................................................................................... 5

*E.E.O.C. v. Courtesy Building Servs., Inc.*
   2011 WL 208408 (N.D. Tex. Jan. 21, 2011) .......................................................... 15

*Eagles, Ltd. v. American Eagle Foundation*
   356 F.3d 724 (6th Cir. 2004) .................................................................................. 12

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*
   565 F.3d 200 (5th Cir. 2000) .................................................................................. 10

*Garcia v. Global Development Strategies Inc.*
  44 F. Supp. 3d 666 (W.D. Tex. 2014) ........................................................................ 14

*In re TriViata, Inc.*
  783 F.3d 872 (Fed. Cir. 2015) .................................................................................. 13

*Joe Hand Promotions, Inc. v. Izalco, Inc.*
  2017 WL 3130581 (S.D. Tex. July 24, 2017) ............................................................ 15

*Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*
  1998 WL 766703 (W.D. Wis. June 24, 1998), *aff'd*, 188 F.3d 427 (7th Cir. 1999) ................ 12

*Norfolk S. Corp. v. Chevron, U.S.A., Inc.*
  371 F.3d 1285 (11th Cir. 2004) .................................................................................. 1

*Pactiv Corp. v. Dow Chem. Co.*
  449 F.3d 1227 (Fed. Cir. 2006) ................................................................................. 1

*Prasco, LLC v. Medicis Pharm Corp.*
  537 F.3d 1329 (Fed. Cir. 2008) ................................................................................ 15

*Shandong Yinguang Chemical Industries Joint Stock Company, Limited v. Potter*
  607 F.3d 1029 (5th Cir. 2010) ............................................................................... 8, 9

*Sherwin-Williams Co. v. Holmes Cnty.*
  343 F.3d 383 (5th Cir. 2003) ................................................................................... 13

*Stuart v. Spademan*
  772 F.2d 1185 (5th Cir. 1985) ................................................................................... 5

*Sugar Busters LLC v. Brennan*
  177 F.3d 258 (5th Cir. 1999) ................................................................................... 12

*Swish Marketing, Inc. v. FTC*
  669 F. Supp. 2d 72 (D.D.C. 2009) ............................................................................ 13

*T.O. Stanley Boot Co. v. Bank of El Paso*
  847 S.W.2d 218 (Tex. 1992) ................................................................................... 10

*Tornado BUS Co. v. BUS & Coach Am. Corp.*
  2015 WL 11120584 (N.D. Tex. Dec. 15, 2015) ............................................................ 8

*United States v. Shah*
  44 F.3d 285 (5th Cir. 1995) ..................................................................................... 9

## I. THE COURT SHOULD DISMISS BUMBLE'S STATE LAW COUNTERCLAIMS.

### A. The Court Should Confine Its Analysis to the Pleadings in Bumble's Counterclaims, Not Bumble's Re-Framed Theory Barred by Claim Preclusion.

In its original lawsuit against Match, Bumble alleged that Match had "poisoned" Bumble's investment market by filing what Bumble claimed to be a "bogus" lawsuit. 18-cv-350 Dkt. 1-6 ¶ 3. Bumble also alleged that Match lied about its interest in Bumble for purposes of acquiring allegedly confidential information. *Id.* ¶ 35. After significant procedural briefing, Bumble dismissed those allegations ***on the merits, with prejudice***. 18-cv-350 Dkt. 70. That dismissal is a final judgment and gives rise to claim preclusion over any and all claims arising from the same cause of action. The only claims not part of that preclusive effect are claims that the parties expressly agreed to exclude from the impact of that final judgment. *See Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1231 (Fed. Cir. 2006). And the scope of the reservation is based on the intent of the parties entering the reservation. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004). That means all claims arising from the same Match-lied-about-its-interest or Match-poisoned-Bumble's-investment-market cause of action are barred except the specific claims and allegations reserved—*i.e.*, those set forth in 18-cv-350 Dkt. 59-1.

Bumble confines its actual pleading to those reserved claims. But to avoid dismissal, it recasts its allegations as something they are not. Bumble's brief contends that Match's alleged "sham" was "to convince Bumble to hold off on closing a deal with a third party just long enough" for Match to "prepare an eight-count lawsuit to file against Bumble" and that "Bumble could have closed a deal with another interested party *before Match filed suit*." Dkt. 85 at 1. But these allegations are not part of Bumble's pleading; the pleadings do not mention the lawsuit at all. Instead, the State Law Counterclaims allege merely that Match's alleged representations

made "Bumble's negotiating team . . . frustrated" and that "by the time Bumble's team came to realize that the entire negotiation had been a sham" that "Bumble had missed the opportunity to close a deal with other investors." Dkt. 66 ¶ 48. It also characterized its harm from delay as Match's "way [of] hobbl[ing] Bumble's ability to create an auction-like process," *id.* ¶ 57, not as a way to buy time to file a lawsuit. Bumble also alleged that Match's alleged representations were "part of a scheme to string Bumble along to the point where other parties . . . would lose their interest in pursuing a strategic transaction or acquisition of Bumble," *id.* ¶ 77, without a word that the alleged "point where other parties . . . would lose their interest" was the 18-cv-80 lawsuit. In other words, <u>Bumble's counterclaims allege that delay alone, not the lawsuit</u>, caused "Bumble to miss out on viable offers from the Potential Investors" because any claims related to the filing of the lawsuit had already been dismissed with prejudice. *Id.* ¶ 78.

Even if these allegations could be read to silently encompass the lawsuit as an implied basis for Bumble's allegations, that interpretation is foreclosed by Bumble's repeated representations to the Court that these current allegations have *nothing to do* with Match's filing the lawsuit. Bumble expressly indicated that these claims "do not allege that Match's filing of its lawsuit in March 2018 *constituted tortious or otherwise actionable conduct*." 18-cv-350 Dkt. 59-1 at 11 n.1 (emphasis added). It stated that these identical claims "do not allege that the filing of Match's patent lawsuit . . . creates liability," and went further, representing that Match's lawsuit had "**no nexus**" to the current State Law Counterclaims at all. 18-cv-350 Dkt. 64 at 5 (emphasis in original). It also represented it was willing to "preclude Bumble from pursuing ***claims or damages*** that are based on the filing of the 080 case." 2/21/19 Hr. Tr. at 55:14-16 (emphasis added). The Court should refuse to add these new facts to the pleading in evaluating

Match's motion.  They are not pleaded and are not claims exempted from the 18-cv-350

judgment's *res judicata* impact.

### B. The Court Should Dismiss Bumble's State Law Counterclaims for Lack of Jurisdiction

#### 1. The Court Should Dismiss the State Law Counterclaims as to Match and IAC for Lack of Subject Matter Jurisdiction.

The Court does not have supplemental jurisdiction over these claims.  Bumble's

argument to the contrary is heavy on rhetoric but light on law.  As Bumble previously argued, its

current State Law Counterclaims have "**no nexus** with either Match's patents or Match's

[18-cv-80] lawsuit."  18-cv-350 Dkt. 64 at 5 (emphasis in original).  *See also AngioScore, Inc. v.*

*TriReme Med., LLC*, 666 F. App'x 884, 887 (Fed. Cir. 2016) (no supplemental jurisdiction where

federal question and state law counterclaims share only background facts).

Bumble makes much of Match's prior position that *if* the Court exercised jurisdiction

over Bumble's *previous* (now dismissed) state-law claims, *then* the counterclaims in Bumble's

current counterclaims should be litigated in federal court.  Dkt. 85 at 4-5.  But Match's prior

position was based on the inclusion of Bumble's now-dismissed claims—which posed federal

trade-secrets questions and a tortious interference claim that implicated the merits of Match's 18-

cv-80 lawsuit.  18-cv-350 Dkt. 60 at 3-4.  Bumble's dismissed state-law claims linked Match's

patent allegations and Bumble's current State Law Counterclaims with those federal issues.  But

after the dismissal with prejudice, that connection no longer exists.[1]

---

[1] Bumble also misleadingly cites Match's prior reference to Bumble's proposed claim-splitting in support of its jurisdiction arguments.  Match's argument was that Bumble was claim-splitting between *Bumble's original state law claims* and these current ones.  *See* 18-cv-350 Dkt. 60 at 5-6. Match never contended that Bumble's current allegations were related *to the 18-cv-80 lawsuit*. Match also repeatedly explained to Bumble in the context of addressing Bumble's previous state-law claims that Bumble's current State Law Counterclaims likely posed subject matter jurisdiction problems.

That connection is missing regardless of whether the Court includes Bumble's re-framed allegations in its analysis. To the extent the 18-cv-80 lawsuit is related to Bumble's State Law Counterclaims, the lawsuit is background, not an operative fact—Bumble has dismissed on the merits any claim in which the lawsuit played an operative role. And common background facts are not sufficient to create supplementary jurisdiction. *AngioScore, Inc.*, 666 F. App'x at 887.

Bumble also contends that the Court should exercise subject matter jurisdiction in light of "pragmatic considerations." Dkt. 85 at 5. But "pragmatic considerations" cannot create subject matter jurisdiction. In any event, Bumble itself indicated these counterclaims present "fundamentally different disputes [from Match's 18-cv-80 claims]" with "virtually no overlapping discovery needs." 18-cv-350 Dkt. 64 at 5.

> 2. The Court Should Dismiss the State Law Counterclaims as to IAC for Lack of Personal Jurisdiction.

Bumble acknowledges that its pleadings include no act attributable to IAC that occurred in Texas. Nevertheless, Bumble contends that specific jurisdiction exists because the "ultimate purpose in the scheme was to cause tortious harm in Texas." Dkt. 85 at 7 n.3. But the law in this Circuit is clear: "allegations that [a defendant] intentionally injured [a plaintiff] in Texas . . . are insufficient in the total absence of any other contacts . . . to establish" specific jurisdiction. *Breakall v. Munnt*, 2008 WL 11417063, at *4 (W.D. Tex. Oct. 9. 2008); *see also Central Freight Lines Inc. v. APA Transp. Co.*, 322 F.3d 376, 383 (5th Cir. 2003) (allegations that defendant interfered with resident's contractual rights alone are insufficient for specific jurisdiction). Yet that is all Bumble alleges.

Critically, specific jurisdiction depends on the nature of the claimed injury in evaluating the pleaded contacts with the forum. *See Burger King Corp v. Gudzewicz*, 471 U.S. 462, 472 (1985) (specific jurisdiction exists where defendant "purposefully directs its activities at the

forum state and the litigation results from alleged injuries . . . related to those activities"). Where the injury involves a plaintiff's prospective relationship with third parties, the defendant must *know* something about the allegedly interfered-with relationship—and how it would involve Texas beyond the plaintiff's resident status—to constitute purposeful availment. Dkt. 80 at 10-11. Here, regardless of whether a proposed deal *would have* been centered in Texas, the claimed injury is the inability of a group of companies (only one subsidiary of which is located in Texas) to close an investment deal with *other* unnamed Potential Investors from unnamed locations. Further, the proposed transaction at issue here involved acquiring the U.K. parent *and* grandparent of the Texas entity. Ex. B at 21 (showing corporate status); Ex. C (listing Wallichman, Badoo's CFO, as contact); Ex. D (████████████████████████); Dkt. 66 ¶ 71 (describing discussion with Badoo's CFO).[2]    In other words, the locus of the discussions, even as between Match and Bumble, were not even predominantly Texas-based. And because the contemplated acquisition involved Bumble Trading's U.K. parent and grandparent (among others), the alleged purposefully directed *injury* of "lost investment" would have been toward the highest entity in the chain, *not* the Texas entity (the lowest), Ex. B at 16 (describing Bumble Trading as wholly owned subsidiary)—further undermining Bumble's position that IAC directed anything to Texas.

Bumble also reiterates its allegation that IAC was part of a "scheme" with Match, a Texas resident, but that is simply irrelevant. Bumble must "demonstrate that [the defendant] individually, and not as part of the conspiracy, has minimum contacts with Texas." *Delta*

---

[2] The Court may consider this evidence for specific jurisdiction regardless of whether it takes judicial notice of it. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (holding that Court may rely on evidence in resolving a 12(b)(2) motion).

*Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004). Bumble's opposition ignores this authority. Match's resident status is irrelevant to whether specific jurisdiction exists over IAC. There is no pleaded basis to infer that IAC knowingly interfered with any Texas-centered relationship.

    **C.**    **The Court Should Dismiss Bumble's State Law Counterclaims on the Merits.**

        1.    <u>The Court May Take Judicial Notice of Exhibits C and D</u>

A court may take judicial notice of a document when referenced in a complaint and central to a claim. *See, e.g.*, *Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013). A court may also take judicial notice when a document has a legally operative effect. *See Crucci v. Seterus, Inc.*, 2013 WL 6146040, at *4 (W.D. Tex. Nov. 21, 2013).

Bumble contests judicial notice of Exhibit D with feigned skepticism as to whether the letter is the same representation referred to in its pleading. Yet Bumble's State Law Counterclaims are clear: paragraph 65 references an "offer" (1) on a date; (2) from Mr. Swidler; (3) indicating a range of possible valuation; that (4) asks for additional information regarding performance and user metrics and financial data. Exhibit D on its face was (1) sent on that same date; (2) is from Mr. Swidler; (3) indicates a range of possible valuation; and (4) asks for information regarding performance and user metrics and financial data. This is more than mere "attorney argument to connect the dots." Dkt. 85 at 9. The allegations and the facts connect themselves. Exhibit D is referenced in the complaint and central to Bumble's Counterclaims.

The Court may also consider Exhibit C because it is █████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████. This is not subject to reasonable debate. Bumble alleges that its harm came from Match's alleged interference with Bumble's "auction." Dkt. 66 ¶ 57. Exhibit C discusses ███████████████████████

Ex. C at 1,  . *See also* Ex. B at 21.  Mr. Swidler also expressly refers to ▮

▮ . Ex. D

( ▮ ).[3]

2.  <u>The Court Should Dismiss Each State Law Counterclaim Against Match
Group, LLC Because Bumble Fails to Allege Facts Making It Plausible that
Match Group, LLC Made Any Representation.</u>

The negotiations concerning a contemplated transaction with Bumble were made on

behalf of Match Group, Inc, not Match Group, LLc.  These are different entities.  *See* Ex. A.

Given the judicially noticeable facts that Match Group, LLC and Match Group, Inc. are different,

Bumble's allegations that representations were made on behalf of Match Group, LLC instead of

or in addition to those made on behalf of Match Group, Inc. becomes an inference, not a fact, and

that inference must be supported by sufficient factual matter rendering the inference plausible.

But Bumble pleads no facts supporting the inference that Match Group, LLC made these

representations.  Therefore, Bumble fails to state a claim against Match Group, LLC.

3.  <u>Bumble Has Not Pleaded Any Viable Representation-Based Claim Because
Bumble Has Not Pleaded Sufficient Facts Giving Rise to Any Inference that a
Represented, Existing Fact Was False.</u>

As Match's motion makes clear, the only pleaded basis for Bumble's State Law

Counterclaims is that Match never made another offer to acquire Bumble.

Bumble's opposition—which makes much of how often its pleadings mention that a

representation was made and that it was false—conflates inferences and facts.  Allegations that

representations were made (and by whom) are facts.  But allegations that those representations

*were false when made* is an inference.  *See Ashcroft v. Iqbal*, 556 U.S. 680-81 (2009) (refusing to

---

[3] Bumble downplays both Exhibits C and D as related to "non-parties."  But Bumble pleads that
Exhibit D is a representation made to it, rendering its non-party complaint irrelevant. In any event,
Bumble's own counsel asked to enforce Exhibit C in requiring Match to redact certain information
from its opening brief.  *See* Ex. J.

give presumption of truth to allegations that defendant "know of, condoned, and willfully and maliciously subject" plaintiff to harsh conditions "as a matter of policy, solely on account of his religion, race, and/or national origin," and that the defendant was "the principal architect").

To unlock the gates to discovery, Bumble must plead sufficient *facts* to give rise to plausible *inferences* that the various elements of its claims are met. In other words, the Court need not credit Bumble's allegations that these representations were in fact false, absent sufficient other factual matter giving rise to that plausible inference. *See Tornado BUS Co. v. BUS & Coach Am. Corp.*, 2015 WL 11120584, at *3 (N.D. Tex. Dec. 15, 2015) (dismissing fraud claim for failure to plead facts leading to the necessary implication that alleged misrepresentation was false). Thus, while Bumble claims that it alleged a "bevy of factual allegations" indicating falsity and fraud, Dkt. 85 at 14, this is simply wrong. Bumble's pleading merely *concludes* that certain representations were false. It alleges only *one* fact on which its conclusion is based: that Match never made another offer.

This is insufficient to plausibly allege the falsity of the representations. For example, in *Shandong Yinguang Chemical Industries Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010), the court, beyond dismissing a claim of fraud based on a then-existing intention not to perform a promise, also dismissed a fraud claim based on the defendants' alleged representation that it was in a "sound financial condition" prior to entering into the agreement in which it promised to make future payments. *Id.* Although the plaintiff pleaded that (1) the defendant was unprofitable the year it made the statement, (2) the following year failed to obtain a line of credit, and (3) the defendant ultimately failed to perform its promise to pay, the Fifth Circuit held that those allegations were insufficient to plead a plausible falsehood. *Id.* at 1033-34. The Fifth Circuit recognized that "[m]any companies have unprofitable years but remain fiscally sound"

and nothing could be inferred by a failure to obtain a line of credit. *Id.* Since failure to perform alone is not evidence of an intent not to perform at the time the promise was made, it is logically also not evidence of the falsity of prior representations bearing on the likelihood of future performance. *Id.* (holding that plaintiff failed to plead falsity of "sound financial condition" representation, despite subsequent non-performance of failure to pay).

Here, Bumble admits that Match previously indicated various reasons why no higher offer may come. *See* Dkt. 85 at 4-5. In this context, the mere failure to make a higher offer is insufficient to give rise to any inference that Match never intended to make a higher offer *or* that Match's statements concerning its interest were false when made. Just as a company can be in "sound financial condition" even if it was unprofitable, failed to obtain a line of credit, and subsequently failed to perform an obligation, here Match could have intended to make a higher offer, but then elected not to for legitimate reasons—including the additional information it received. There are no facts crossing the line from "consistent with fraud" to a plausible inference of fraud.[4]

Bumble's allegations concerning Match's "motive" are also insufficient to cross this hurdle. Bumble alleges that its inference of falsity is supported by its allegations that Match/IAC

---

[4] While a short timeframe between a promise and failure to perform can, in limited circumstances, give rise to an inference of fraudulent intent, Dkt. 85 at 13, any such inference here would be inappropriate in light of the other conceded or judicially noticeable facts: (i) the relevant parties ██████████████████████████████████████████████ Ex. C; (ii) Match ███████████ ████████████████████████████████████████, Ex. D at 2; and (iii) Match's representations occurred simultaneously with indications of various contingencies, such as approval by the Board of Directors, Dkt. 80 at 3-5. Given that Match ███████████████████████████████████████ ████████████████████████████████████████, there are no facts by which to infer that "there [was] no change in circumstances" in between the alleged promises and the non-performance. *United States v. Shah*, 44 F.3d 285, 293 n.14 (5th Cir. 1995). Instead, the pleaded allegations are as consistent with "business as usual" as with the alleged fraud. *Shandong Yinguang*, 607 F.3d at 1035 (5th Cir. 2010).

knew that Bumble was entertaining other offers and that "Match/IAC had financial and marketplace motives to disrupt these offers." Dkt. 85 at 14. These generalized allegations provide no circumstantial evidence, even slight, of fraudulent intent. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 and 225 (Tex. 1992) (no evidence of fraudulent intent not to perform, despite facts at trial indicating motive to do so); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2000) (holding that "certain motives alleged, especially those universal to corporations and their officers, do not suffice to establish an inference of fraud" and listing "allegations of delay in order to benefit therefrom" as an example). For example, Match's alleged interest upon learning that Bumble was entertaining other offers is equally consistent with genuine interest as it is with any nefarious motive. In sum, Bumble only pleaded non-performance and generic, conclusory motives to support its conclusion of falsity, but this is legally insufficient to demonstrate fraudulent intent. Thus, the Court should dismiss Bumble's State Law Counterclaims.

This is so even if the Court considers Bumble's recast version of its allegations that Match's decision to file the present lawsuit bears on whether the pleaded representations were false when made. Bumble's opposition presents a false dichotomy: Match could either be interested in acquiring the Bumble-related entities or contemplating an action to recover for Bumble's IP violations, but not both. But there is no reason a company in the ordinary course could not both evaluate its legal rights against a competitor while simultaneously contemplating an acquisition at the right price. Indeed, the judicially noticeable evidence indicates that Bumble

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ Again,

Bumble's burden is to plead facts more than merely consistent with falsity but giving rise to the *inference* of falsity and fraud. There is no reason why Match could not genuinely contemplate a higher offer while also evaluating legal options, where Match has every right to do so.

4.    <u>Bumble Has Not Pleaded Viable Representation-Based Theories Because Bumble Has Not Pleaded Justifiable Reliance.</u>

Bumble knew that Match reserved the right not to enter into a deal, and the parties had not even arrived on a mutually acceptable price. Any reliance on Bumble's belief that Match would enter a deal would be unjustified as a matter of law—a fact that Bumble's opposition essentially concedes. Dkt. 85 at 17. In light of that weakness, Bumble recharacterizes its claim as pleading that it would have closed a billion-dollar deal in the first three months of 2018 (prior to Match's lawsuit) if it knew that Match was *never* interested (after 2017) in acquiring Bumble. This recharacterization fails to remedy the pleading's deficiencies concerning reliance.

Bumble now agrees that the filing of Match's lawsuit was entirely lawful; Match had the right to do that at any time. *See, e.g.*, 18-cv-350 Dkt. 70. Further, Mr. Swidler's "offer" letter also ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████ Ex. D at 2. Because Match expressly ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████ a risk that it accepted. *Davis v. Texas Farm Bureau Ins.*, 470 S.W.3d 97, 109 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (no justifiable reliance on settlement offer since the defendant had right to withdraw it); *CBH Equity, LLC v. Murphy Oil USA, Inc.*, 333 F. Supp. 3d 664, 670 (S.D. Tex. 2018) (reversing fraud verdict based on alleged reliance that third-

party would execute an easement in a timely fashion because plaintiff "took his chances" that execution of the easement would be delayed). Bumble's reliance was not reasonably justified.

II. **BUMBLE'S OPPOSITION PROVIDES NO SUBSTANTIAL DEFENSE TO LITIGATING IRRELEVANT TANGENTIAL REGISTRATION ISSUES, AND THE COURT SHOULD DISMISS THESE COUNTERCLAIMS.**

   A. **Bumble Fails to Plead a "Close Nexus" Between the Pending-Registration Marks and the Registered Mark, Other than SWIPE in Class 45.**

Bumble acknowledges that the Court may address registration issues only to the extent those registration issues contain a sufficient nexus—*i.e.*, a close nexus—to the litigated registered mark. Bumble's *only* argument for including the non-SWIPE Pending-Registration Marks is that the other marks "incorporate the purported SWIPE mark in its entirety" and that they are "extensions of the purported SWIPE mark." This is not a sufficient basis to establish a close nexus because the "incorporat[ion]" of a mark into another mark creates a different mark with a distinct trademark analysis. *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 268 (5th Cir. 1999) (composite marks analyzed as a whole). This distinct analysis defeats any allegation of nexus. *See Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*, 1998 WL 766703, at *12 (W.D. Wis. June 24, 1998), *aff'd*, 188 F.3d 427 (7th Cir. 1999) (no jurisdiction under § 1119 to answer registration questions related to "ST. LOUIS RAMS" where the registered "RAMS" mark was at issue); *see also Eagles, Ltd. v. American Eagle Foundation*, 356 F.3d 724, 730-31 (6th Cir. 2004) (case involving registered "EAGLES" mark, finding no § 1119 jurisdiction over application concerning "AMERICAN EAGLES RECORDS" because "the marks at issue are not the same"). While Bumble cites numerous cases addressing registration issues, it cites no case exercising § 1119 jurisdiction to address registration issues based *only* on an overlap of a word.

Bumble also contends that distinct goods and services do not defeat the requisite nexus because, according to Bumble, "SWIPE" is a reference to the "common touchscreen gesture

utilized when operating Match's Tinder app." Therefore, according to Bumble, if SWIPE in connection with online dating is generic, it would be generic for T-Shirts. This is clearly not the law, as Bumble's own authority makes clear. *See* Dkt. 85 (citing *In re TriViata, Inc.*, 783 F.3d 872, 874 (Fed. Cir. 2015) for the proposition that mark is descriptive if it describes "ingredient, quality, characteristic, function, feature, or use *of the specified good and services*" (emphasis added)). Assuming *arguendo* that SWIPE could be considered to refer to a touchscreen gesture, a touchscreen gesture does not describe an ingredient, quality, characteristic, function, feature, or use of a T-Shirt. *See, e.g.*, *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976) (noting that "ivory" was generic for elephant tusks but arbitrary for soap). Simply put, these marks, particularly in connection with different goods and services, are entirely different marks from SWIPE. The requisite nexus simply does not exist here.

### B. Bumble Fails to Establish a Basis to Exercise Declaratory Judgment Jurisdiction.

The Court should also decline jurisdiction under the DJA. A well-settled basis for declining jurisdiction is to avoid piecemeal litigation. Bumble's opposition concedes that, if its counterclaims fail, much of the registration process would remain. This concession is a basis to deny jurisdiction. *Swish Marketing, Inc. v. FTC*, 669 F. Supp. 2d 72, 77-78 (D.D.C. 2009) (refusing to assume DJ plaintiff would prevail, noting prospect of piecemeal litigation weighed against the exercise of jurisdiction); *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 392 (5th Cir. 2003) (concluding that district court should avoid duplicative or piecemeal litigation where possible). The Court should not litigate only one aspect of these application decisions.

Jurisdiction here is particularly inappropriate in light of Bumble's explanations for seeking its requested relief. Bumble contends that these SWIPE-related marks are "extensions" of the SWIPE mark and the Court need only answer a question "once" to resolve the related

marks. This is legally incorrect, as the marks are distinct. But in any event, the issues are resolved by litigating the asserted marks will have an appropriate issue preclusive effect for identical issues posed by registration proceedings. Bumble's belief that traditional preclusion doctrines are insufficient highlights its goal to litigate distinct issues in a piecemeal fashion and usurp the PTO's role in doing so in the first instance. The Court should decline jurisdiction.

### C. There Is No Case and Controversy Jurisdiction Concerning the Unasserted, Pending-Registration Marks.

Bumble does not dispute that it cannot seek a declaratory judgment denying registration of marks that are not asserted in the litigation. And it does not dispute that Match's complaint does not expressly allege infringement of the Unasserted, Pending-Registration Marks.

Bumble instead contends that the "plain reading" of Match's complaint indicates that Match sought recovery for these unasserted marks. Yet that complaint sets forth its allegations in great detail, and it repeatedly describes only SWIPE, SWIPE RIGHT, and SWIPE LEFT, for "software for social introducing and dating services" and "internet-based dating and matchmaking and similar services." Dkt. 65 ¶¶ 172, 179. A "plain reading" of Match's complaint would not give reason to believe any other wordmarks were at issue. Indeed, Bumble's affirmative defenses mention only that "Bumble did not infringe Plaintiff's alleged trademark rights in . . . terms 'SWIPE,' 'SWIPE RIGHT', and 'SWIPE LEFT.'" Dkt. 66 at Aff. Def. ¶ 266. Match has never alleged infringement of these other marks.[5] There was no controversy concerning them when Bumble's counterclaims were filed. Under Bumble's logic,

---

[5] *Garcia v. Global Development Strategies Inc.*, 44 F. Supp. 3d 666, 670 (W.D. Tex. 2014) case is not on point. There, the plaintiff alleged that defendants unfairly competed "using names that cause confusion," asked for revenue generated by "any names" and contained no language indicating which names were objectionable. *Id.* at 670-71. Here, in contrast, Match expressly described the marks Bumble is alleged to infringe.

however, Match's request related to "rights under the Lanham Act" and "common law unfair competition" would mean that Bumble reasonably apprehended that it was alleged to infringe *every* Match-owned trademark, applied-for or not, regardless of its connection to the case—a facially ridiculous notion. And because there was no jurisdiction at filing, Bumble's request for a stipulation that its use does not infringe these marks is inappropriate. *See, e.g.*, *Prasco, LLC v. Medicis Pharm Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) (failure to sign a covenant-not-to-sue is not alone sufficient to create case-and-controversy jurisdiction). The Court should dismiss the Unasserted Pending-Registration marks for lack of jurisdiction.

## III.    THE COURT SHOULD STRIKE BUMBLE'S AFFIRMATIVE DEFENSES

While Match maintains that the Court should strike Bumble's "negative" defenses and legally flawed ones, the Court should at least require additional factual matter in defenses 3, 7, 11, 12, and 21. Bumble relies on its "63-page answer" to provide sufficient background, but that answer says nothing about prosecution history estoppel (3), undefined equitable defenses (7), non-distinctive trade dress (11), functional trade dress (12), or prosecution laches (21). In Bumble's Seventh Affirmative defense, which purports to allege all possible "equitable defenses," Bumble also merely alleges conclusions, not facts, and Match is not on fair notice of the factual basis for these myriad defenses. *See Joe Hand Promotions, Inc. v. Izalco, Inc.*, 2017 WL 3130581, at *3 (S.D. Tex. July 24, 2017) (dismissing "waiver" defense because it is a "broad defense and requires 'factual particularity' to set out the nature of the waiver"); *E.E.O.C. v. Courtesy Bldg. Servs., Inc.*, 2011 WL 208408, at *4 (N.D. Tex. Jan. 21, 2011) (striking similar defenses where answer failed to "allege[] any facts that could form the basis" of them).

## IV.    CONCLUSION

For the reasons described above and in Match's Motion to Dismiss, the Court should grant Match's motion in full.

DATED:  May 31, 2019

Respectfully submitted,

**CALDWELL CASSADY & CURRY**

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email:  bcaldwell@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201

Telephone: (214) 888-4848
Facsimile: (214) 888-4849

John P. Palmer
State Bar. 15430600
Email: palmer@namanhowell.com
Naman, Howell, Smith & Lee, PLLC
400 Austin Avenue, 8th Floor
P.O. Box 1470
Waco, TX 76701
Telephone: (254) 755-4100
Facsimile: (254) 754-6331

**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT
MATCH GROUP, LLC AND
COUNTER-DEFENDANT
INTERACTIVE CORP.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record via electronic mail on this 31st day of May, 2019.

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell