# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# WACO DIVISION

| | | |
|---|---|---|
| MATCH GROUP, LLC,<br>*Plaintiff*,<br><br>v.<br><br>BUMBLE TRADING INC. and<br>BUMBLE HOLDING, LTD.,<br>*Defendants*.<br><br><br>BUMBLE TRADING INC. and<br>BUMBLE HOLDING, LTD.,<br>*Cross-Plaintiffs*,<br><br>v.<br><br>MATCH GROUP, LLC and<br>IAC/INTERACTIVE CORP.,<br>*Cross-Defendants*. | § § § § § § § § § § § § § § § § § § § | CIVIL NO. 6:18-CV-00080-ADA |

## ORDER DENYING PLAINTIFF/COUNTER-DEFENDANT MATCH GROUP, LLC AND COUNTER-DEFENDANT IAC/INTERACTIVE CORP.'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Before the Court is Plaintiff/Counter-defendant Match Group, LLC and Counter-defendant IAC/Interactive Corp.'s Motion to Dismiss Defendants' Counterclaims Under Rules 12(b)(1), 12(b)(2), 12(b)(6), and 12(f). Dkt. Number 80. Defendants/Cross-plaintiffs Bumble Trading Inc. and Bumble Holding, Ltd. (collectively, "Bumble") filed a Response on May 20, 2019. Dkt. Number 85. Match Group, LLC and IAC/Interactive Corp. filed a Reply on May 31, 2019. Dkt. Number 90. Having considered the Parties' briefing and the relevant authorities, the Court is of the opinion that the Motion should be **DENIED**.

1

## I. Background

Bumble has alleged that Match and IAC engaged in a fraudulent scheme to harm Bumble. The gist of their argument is that when Match and IAC learned that Bumble was engaged in talks with third-party buyers regarding a possible acquisition of Bumble, Match and IAC took illicit actions to interfere with Bumble completing a deal. Specifically, Bumble alleges that Match and IAC devised a scheme in which they would enter negotiations of their own with Bumble without any intent of ever consummating them. Instead, Match and IAC would engage in negotiations just long enough to prevent a different third-party from acquiring Bumble.

Additionally, Bumble alleges that Match and IAC were aware that other companies were actively trying to acquire Bumble, and if they could persuade Bumble to do a deal with them instead, then decline to execute that deal, it would leave Bumble without a suitor. Further, as part of this scheme, Bumble alleges that Match and IAC prepared and filed an eight-count lawsuit to file against Bumble, alleging that Bumble had violated a range of Match's intellectual property rights and seeking extensive damages and injunctive relief. Bumble alleges that Match and IAC believed that it would be sufficient to merely file a suit making these allegations to cause other suitors to demure. Bumble alleges that Match executed this scheme in early 2018, keeping Bumble's interest during negotiations through late January, February, and early March of 2018 and ultimately filing the present lawsuit on March 16, 2018.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. Review is limited to the contents of the complaint and matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a

claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555–56. However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action. *Id.* at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558. However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

### III. Bumble's State Law Counterclaims

Match and IAC urge the Court to dismiss Bumble's state law counterclaims. To understand their Motion, one must briefly understand what has occurred procedurally in the past. In its original lawsuit against Match, Bumble alleged that Match had "poisoned" Bumble's investment market by filing what Bumble claimed to be a "bogus" lawsuit. *Bumble Trading Inc. v. Match Group, LLC*, No. 6:18-CV-350-ADA, Dkt. Number 1–6 ¶ 3. Bumble also alleged that Match lied about its interest in Bumble for purposes of acquiring allegedly confidential information. *Id.* ¶ 35. After significant procedural briefing, Bumble dismissed those allegations on the merits, with prejudice. *Id.* at Dkt. Number 70. The Court agrees with Match and IAC that this dismissal is a final judgment; thus, it gives rise to claim preclusion over any and all claims arising from the same cause of action.

However, an issue arises from the fact that the parties expressly agreed to exclude certain issues from the impact of that final judgment. Match and IAC ask the Court to dismiss any claims that are being made by Bumble that exceed the issues they agreed would remain assertible. Specifically, Match and IAC argue that all claims arising from the Match lied-about-its-interest or Match poisoned-Bumble's-investment-market causes of action are barred except the specific claims and allegations reserved—*i.e.*, those set forth at Docket Number 59–1 in *Bumble Trading Inc.*, 6:18-CV-350-ADA.

Match and IAC do not dispute that Bumble has confined its pleadings to the reserved claims. Counter Defs.' Reply at 1. Instead, Match and IAC's concern is over the breadth of the arguments or "facts" made by Bumble that this Court should consider with respect to their Motion to Dismiss. Because of the foregoing, the Court will not consider arguments or facts in

evaluating the Motion to Dismiss that would be precluded by res judicata in the 18-CV-350 cause of action.

### a) The Court has subject matter jurisdiction over Bumble's state law counterclaims.

The Court turns first to Match and IAC's argument that Bumble's state law counterclaims should be dismissed for lack of jurisdiction. Specifically, Match and IAC contend that this Court does not have supplemental jurisdiction over these claims. Counter Defs.' Mot. at 5. According to Match and IAC, Bumble's state law counterclaims do not share a "common nucleus of operative fact" with the federal claims alleged in either Match's complaint or in Bumble's counterclaims. *Id.* at 6.

In response, Bumble reminds the Court that it sought to file its Tort Counterclaims in Texas state court. However, Match refused to consent, and the Court ordered that Bumble seek leave from the Court to file its claims in Dallas County. *Bumble Trading Inc.*, 6:18-CV-350-ADA, Dec. 10, 2018 Hearing Tr. at 13:21–14:16. Bumble did so and attached to its Motion for Leave to File a "Proposed Petition" containing verbatim identical claims to those presently at issue. *Id.* at Dkt. Number 59–1. Match opposed Bumble's Motion for Leave to File and argued that the Court had subject matter jurisdiction to hear Match's state-law claims. *Id.* at Dkt. Number 60 at 2–6. In fact, Match argued that "Bumble's pursuit of [its Texas-law claims] in a state court action would amount to the most wasteful brand of claim-splitting," and that "[c]ontrary to Bumble's argument, the Court [] has federal jurisdiction over these newly alleged [Texas-law] claims." *Id.* at 2, 5. In short, Match argued that the exact state law claims now at issue in this Motion not only should be argued before this Court but had to be.[1] However, despite

---

[1] The Court did not rule on Bumble's Motion for Leave because Match and Bumble reached an agreement—as Match requested—that Bumble would file their claims included in their Proposed Petition as counterclaims in this action. *Bumble Trading Inc.*, 6:18-CV-350-ADA, Dkt. Number 68.

5

Match's past arguments, it now seeks to dismiss the same claims on the ground that the Court lacks subject matter jurisdiction. Counter Defs.' Mot. at 5–8. The Court notes that this is a complete reversal from Match's previous position, and that Bumble now argues the same position as Match previously did by asserting that there is supplemental jurisdiction.

The Court finds that this certainly puts equity on the side of Bumble; however, the Court must still determine whether it has subject matter jurisdiction. There is no dispute that Bumble alleges that the scheme to defraud Bumble resulted in the present lawsuit. Further, Bumble alleges that Match's patent allegations are part and parcel of the same alleged scheme to damage it. In light of these facts, the Court finds that this is sufficient to show that Bumble's state-law claims share a "common nucleus of operative fact" with Match's patent infringement claims; thus, the Court has supplemental jurisdiction over Bumble's Texas-law claims. *See* Wright & Miller, 13 D Fed. Prac. & Proc. Juris. § 2567.1 (3d ed.) ("In practice, § 1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection.")

### b) The Court has personal jurisdiction over Defendant IAC.

The Parties do not dispute whether a specific act attributable to IAC occurred in Texas. Bumble alleges that IAC engaged in a fraudulent scheme with Match to interfere with the sale of Bumble Trading, which is headquartered in Austin, Texas. Countercl. ¶ 46. As part of this scheme, Bumble alleges that IAC's officers made false statements to Bumble's representatives at JPMorgan regarding a proposed acquisition. *Id.* ¶¶ 63, 67. Bumble further alleges that IAC did so with the specific intent of fraudulently disrupting the sale of Bumble to a third party. *Id.* ¶ 56. Based on these allegations, Bumble argues that specific jurisdiction exists because IAC is alleged

to have committed tortious acts outside the state that were intended to cause serious harm to Bumble in Texas. Counter Pls.' Resp. at 6.

In response, IAC argues that Bumble has not alleged that it knew that its representations to JPMorgan would interfere with any Texas-based relationship. Counter Defs.' Mot. at 10–11. In support of this lack of knowledge, IAC argues that regardless of whether a proposed deal would have been centered in Texas, the claimed injury is the inability of a group of companies—only one subsidiary of which is located in Texas—to close an investment deal with other unnamed potential investors from unnamed locations. Further, IAC notes that the proposed transaction at issue here involved acquiring the U.K. parent and grandparent of the Texas entity. Accordingly, "the locus of the discussions . . . were not even predominantly Texas-based." Counter Defs.' Reply at 5. Moreover, any directed injury would have been toward the U.K. parent and grandparent, not the Texas entity. *Id.*

The minimum-contacts test for personal jurisdiction in tort differs from that in contract. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018). "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Further, the proper focus "is the relationship among the defendant, the forum, and the litigation." *Id.* at 1126.

"[I]t is clear that specific personal jurisdiction may be based on intentionally tortious conduct that is purposefully directed toward the forum state." *Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). Moreover,

7

"[w]hen a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state," that conduct amounts to "sufficient minimum contacts with the state" to allow personal jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009); *accord Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). Likewise, "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction . . . if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). The Fifth Circuit has found specific personal jurisdiction to hear an intentional-tort claim where an out-of-state defendant made fraudulent misrepresentations over the phone to a plaintiff residing in the forum. *Trois*, 882 F.3d at 491; *see also Lewis v. Fresne*, 252 F.3d 352, 354 (5th Cir. 2001) (finding personal jurisdiction over nonresident defendants who made fraudulent statements by phone to a forum plaintiff and later prepared and sent documents containing fraudulent statements into the forum); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332, 334 (5th Cir. 1982) (holding one defamatory phone call initiated by defendant sufficient to establish personal jurisdiction).

Here, the relevant allegations made by Bumble are (1) the scheme to use one Texas-based entity to defraud another with IAC's involvement or at IAC's direction; and (2) the specific statements IAC made to representatives of a Texas entity with the intent that they would be relied on in Texas. Based on these allegations, the Court finds that Bumble has established a prima facie case for personal jurisdiction over IAC relating to its claims of fraud and fraudulent misrepresentation. While expressing no view on the ultimate merits of Bumble's case, or even that the claims would withstand a motion for summary judgment, at this stage of the proceedings

the Court must assume that Bumble's non-conclusory allegations are true. *Cent. Freight Lines*, 322 F.3d at 383.

Under this framework, the Court finds that Bumble has alleged sufficient facts that IAC engaged in allegedly tortious conduct purposefully directed toward the forum state. In short, Bumble's allegations are sufficient for the Court to exercise personal jurisdiction at the pleadings stage because Bumble has alleged that IAC committed tortious acts outside the state that were intended to cause serious harm to Bumble in Texas. *See Guidry*, 188 F.3d at 628 ("[A]n act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 37 Comment e ("When the act was done with the intention of causing the particular effects in the state, the state is likely to have judicial jurisdiction though the defendant had no other contact with the state."). Bumble has alleged the requisite serious harm by alleging that IAC's intentional and tortious conduct caused Bumble to lose out on an acquisition at a valuation potentially exceeding a billion dollars. Countercl. ¶ 77; *Seisa Med., Inc. v. Asia Capital Advisor, Ltd.*, No. EP-18-CV-79-KC, 2018 WL 5020226, at *10 (W.D. Tex. Sept. 20, 2018) (finding out-of-state tortious conduct that was alleged to have interfered with contractual relations and caused $1,000,000 in damages to be enough to establish serious harm and therefore minimum contacts).

The Court also finds that Bumble has established minimum contacts between IAC and the forum state. Therefore, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Cent. Freight Lines*, 322 F.3d at 384. Yet

9

"once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *McFadin*, 587 F.3d at 764 (quotation omitted). Accordingly, to prevail the defendant must make a "compelling case" against personal jurisdiction. *Cent. Freight Lines*, 322 F.3d at 385 (citing *Burger King*, 471 U.S. at 477). This final analysis centers on five factors: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Id.*

First, the Court finds, based on the record of litigation in this Court, that an assertion of personal jurisdiction over IAC would not offend traditional notions of fair play and substantial justice because it would not be burdensome to require IAC to litigate in Texas. Second, the Court finds that Texas does have a reasonably high interest in adjudicating the dispute, given that it involves two entities who are headquartered in Texas. *Wien Air Alaska*, 195 F.3d at 215 ("Texas clearly has an interest because the dispute involves a corporation whose principal place of business is in Texas, and the corporation allegedly was defrauded."). Moreover, "[i]f a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of . . . the forum state." *Id.* Third, Bumble's interest in securing relief in this case, where it has established IAC's minimum contacts with Texas, also clearly favors personal jurisdiction, especially given that it filed this case in Texas and its principal place of business is in Texas. *Id.* Finally, IAC has failed to demonstrate how the Court exercising personal jurisdiction over it would not further the judicial system's interest in

the most efficient resolution of controversies. Accordingly, the Court concludes that its exercise of personal jurisdiction over IAC in this case is fair and reasonable.

### c) The Court will not dismiss Bumble's state law counterclaims on the merits.

At the outset, despite Match and IAC's arguments to the contrary, the Court will not take judicial notice of Exhibits C and D. The Court finds that considering these exhibits would be inappropriate at the motion to dismiss stage.

Next, the Court addresses whether Match Group, LLC belongs in this lawsuit. It appears to be undisputed that Match Group, LLC and Match Group, Inc. are different and separate entities. However, Match contends that Bumble fails to allege facts making it plausible that Match Group, LLC made any representation. Counter Defs.' Reply at 7. Notwithstanding Match's arguments to the contrary, the Court finds that Bumble has alleged, in non-conclusory terms, specific false statements made by Match Group, LLC that were a part of an alleged fraudulent campaign to deceive Bumble. *See, e.g.*, Countercl. ¶¶ 55-78. Accordingly, the Court finds that Match Group, LLC should not be dismissed at this stage in the litigation.

Additionally, Match contends that Bumble has not pleaded any viable representation-based claim because Bumble has failed to plead sufficient facts giving rise to any inference that a represented, existing fact was false. Counter Defs.' Reply at 7. Specifically, Match and IAC seek to have Bumble's state law counterclaims dismissed under *Twombly* before the "gates of discovery" are opened. After reviewing the Counterclaims made at ¶¶ 182–88, the Court finds that Bumble has pled sufficient facts giving rise to an inference that a represented existing fact was false; thus, Bumble has alleged sufficient facts to survive a motion to dismiss.

### d) Bumble has plead sufficient facts to support common law fraud.

Bumble alleges that Match and IAC lied about the status of the interest they had throughout their negotiations. *See, e.g.*, Countercl. ¶¶ 63, 66, 71, 72. This includes allegedly making promises about future conduct and also about their then-present level of interest in acquiring Bumble. *See United States v. Shah*, 44 F.3d 285, 293 (5th Cir. 1995) (falsely stating intent "is a false statement of an existing fact, because it falsely represents the state of [the declarant's] mind, and the state of his mind is a fact.") (internal quotations and citations omitted). Bumble also alleges that Match and IAC falsely represented specific actions that they were taking during the negotiations. For example, Bumble alleges that Match made false statements about not only how it would use Bumble's sensitive business information in the future, but also how it was already using such information to revise its acquisition valuation model. Countercl. ¶ 74. If Bumble is able to prove these allegations and establish that those facts were material, false, and intended to be relied on, then Bumble has, at a minimum, alleged a claim for common law fraud. *See, Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) (listing the elements of fraud). Accordingly, the Court finds that Bumble has alleged sufficient facts for a claim of common law fraud to survive a motion to dismiss.

### e) Bumble has plead sufficient facts to support fraudulent intent.

Match and IAC also argue that Bumble has failed to allege intent with regard to Match and IAC's allegedly false statements. Courts have interpreted this standard generously in favor of the pleading party, accepting a wide range of allegations as sufficient. For example, fraudulent intent "may be inferred from the party's subsequent acts after the representation is made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (citations omitted). Moreover, factual misrepresentations made at the time of the unfulfilled promise can establish

fraudulent intent. *See Weston Grp., Inc. v. Sw. Home Health Care, LP*, No. 3:12-CV-1964-G, 2014 WL 940329, at *5 (N.D. Tex. Mar. 11, 2014). Finally, even the close proximity of the nonperformance to the promise can establish fraudulent intent, as a promise made and shortly after broken suggests such intent. *See Shah*, 44 F.3d at 293 n.14 ("[W]here only a short time elapses between the making of the promise and the refusal to perform it, and there is no change in the circumstances, an intent not to perform when the promise was made may, in appropriate circumstances, be properly inferred.").

Here, the Court finds that Bumble has plead sufficient facts supporting their allegation of fraudulent intent. Bumble alleges that Match and IAC became aware that Bumble was entertaining acquisition offers from third parties. Countercl. ¶ 56. Bumble further alleges that Match and IAC had specific motives to disrupt these offers. *Id.* Moreover, Bumble has alleged a scheme where Match and IAC sought to mislead Bumble to prevent it from consummating a deal and then failed to perform within weeks of their alleged false promises. *Id.* ¶¶ 57–60. Finally, Bumble has alleged that while Match and IAC had convinced Bumble that they were getting ready to make an offer, they were at the same time preparing an eight-count complaint that Match would subsequently file on March 16, 2018. Because of the foregoing allegations, the Court finds that Bumble has plead sufficient facts supporting fraudulent intent to survive a motion to dismiss.

### IV. Bumble's Trademark Claims

Match seeks to limit this Court's consideration of the trademark issues to only those issues concerning trademark filings for the standalone "SWIPE" mark, and dismiss any relief sought in connection with variations of the mark. Specifically, Match argues that the Court (1) lacks authority under the Lanham Act to enjoin Match from obtaining registrations in connection

with pending "SWIPE"-mark applications other than Serial No. 86/680,914; (2) should decline Declaratory Judgment jurisdiction because the relief sought will not necessarily settle the issue of registrability; and (3) in any case, at least as to the applications for SWIPE UP, SWIPE LIFE, and SWIPE SESSIONS, the Court lacks jurisdiction because there is no case or controversy, or, alternatively, should decline jurisdiction under the "primary jurisdiction" doctrine. The Court will address each issue in turn.

First, courts routinely exercise authority over pending trademark applications. *See, e.g., Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 744 (W.D. Tex. 2014). Further, it is well established that district courts "have broad authority to review trademark decisions by the U.S. Patent and Trademark Office (PTO), both before and after the registration of a mark . . . [and] may authorize the PTO to register or to deny registration to a pending mark." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 12–13 (D.C. Cir. 2008). Finally, courts may even properly claim authority over unasserted applications where a related registration is invoked. *Amy's Ice Creams, Inc.*, 60 F. Supp. 3d at 744–45 (finding authority to rule on registrability of pending applications and noting that the defendant's "applications [were] essentially an attempt to expand their registered marks to new products.").

Here, the Court finds that it has authority to enjoin Match from obtaining registrations in connection with pending "SWIPE"-mark applications other than just Serial No. 86/680,914. Each of the SWIPE Marks incorporates the purported SWIPE mark in its entirety and cover goods and services that directly or indirectly concern those offerings covered by the SWIPE Registration. For example, Application Nos. 86/608,899 and 86/680,927 for SWIPE RIGHT, and Nos. 86/608,903 and 86/680,923 for SWIPE LEFT, cover mobile dating applications and online dating services. Accordingly, the Court finds that these applications share a sufficient nexus to

14

the SWIPE Registration to fall under the Court's authority. The Court also finds that it has authority over those filings covering goods and services other than mobile dating applications and online dating services.

Next, under the Declaratory Judgment Act, "a district court has a measure of discretion in deciding whether to entertain the action." *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994). The Fifth Circuit requires district courts to consider certain factors when determining whether to dismiss a declaratory judgment. *Id.* Here, Match and IAC have failed to address those factors. Instead, Match and IAC argue that the Court should decline jurisdiction to avoid piecemeal litigation. Counter Defs.' Reply at 13. The Court finds Match and IAC's argument unpersuasive; therefore, the Court will not decline to exercise jurisdiction under the Declaratory Judgment Act.

Finally, the Court finds that a case or controversy is present. Where declaratory relief is sought "[t]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Garcia v. Glob. Dev. Strategies, Inc.*, 44 F. Supp. 3d 666, 670 (W.D. Tex. 2014). Such controversy may be present in a trademark infringement dispute, even when specific filings are not expressly asserted in the complaint. *Forever 21, Inc. v. Gucci Am., Inc.*, CV 17-04706 SJO (Ex), 2018 WL 5860684, at *3 (C.D. Ca. Feb. 9, 2018) (finding jurisdiction over unasserted registrations because the declaratory defendant put them at issue when it alleged infringement). Here, the Court finds that Match's Complaint implicated the Unasserted, Pending-Registration Marks as Match's "rights under the Lanham Act" or "arising from common law unfair competition," whether "directly or indirectly." Third Am. Compl. at 64 ¶ 2. Under these circumstances, the

Court finds that there is a substantial controversy present in this cause of action. Finally, the Court will not dismiss Bumble's claims for declaratory relief under the doctrine of "primary jurisdiction." *See Vantage Trailers, Inc. v. Beall Corp.*, No. H-08-0361, 2008 U.S. Dist. LEXIS 86895, at *13 (S.D. Tex. Oct. 27, 2008) ("[W]here the validity of a mark is attacked as a companion to an infringement claim, federal courts should hear both claims if the issues underlying the two claims overlap to the extent that a dual analysis is more efficient.") (internal quotations omitted); *see also Officeware Corp. v. Dropbox, Inc.*, No. 3:11-cv-1448-L, 2012 U.S. Dist. LEXIS 112812, at *5 (N.D. Tex. Aug. 10, 2012) ("Several circuits have held that the rule of primary jurisdiction does not justify a federal court's deferral to a proceeding before the TTAB").

## V. Bumble's Affirmative Defense

The Court declines to strike Bumble's affirmative defenses. *See BCOWW Holdings, LLC v. Collins*, No. SA17-CA-00379-FB-ESC, 2017 WL 4082686, at *2 (W.D. Tex. Sept. 15, 2017) ("Motions to strike affirmative defenses are viewed with disfavor and are infrequently granted both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactics.") (internal quotations omitted). Match and IAC also request that the Court require additional factual matter in defenses 3, 7, 11, 12, and 21. The Court declines this invitation. Match and IAC are free to send discovery to Bumble seeking these facts.

## VI. Conclusion

Because of the reasons listed above, the Court finds that Plaintiff/Counter-defendant Match Group, LLC and Counter-defendant IAC/Interactive Corp.'s Motion to Dismiss Defendants' Counterclaims Under Rules 12(b)(1), 12(b)(2), 12(b)(6), and 12(f) should be and hereby is **DENIED**. Dkt. Number 80.

**SIGNED** this 26th day of June 2019.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE