# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **MATCH GROUP, LLC** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BUMBLE TRADING INC. and BUMBLE** | § | |
| **HOLDING, LTD.,** | § | **No. 6:18-cv-00080-ADA** |
| | § | |
| **Defendants.** | § | |
| | § | |
| **BUMBLE TRADING INC. and BUMBLE** | § | <u>**JURY TRIAL DEMANDED**</u> |
| **HOLDING, LTD.,** | § | |
| | § | |
| **Cross-Plaintiffs,** | § | |
| **v.** | § | |
| | § | |
| | § | |
| **MATCH GROUP, LLC and** | § | |
| **IAC/INTERACTIVECORP,** | § | |
| | § | |
| | § | |
| **Cross-Defendants.** | § | |
| | § | |

## MATCH GROUP, LLC AND IAC/INTERACTIVECORP'S ANSWER TO BUMBLE TRADING INC. AND BUMBLE HOLDING, LTD.'S <u>COUNTERCLAIMS AND CROSSCLAIMS</u>

Plaintiff/"Cross-Defendant" Match Group, LLC ("Match") and "Cross-Defendant" IAC/InterActiveCorp ("IAC") (collectively, "Counter Defendants") hereby file this Answer to the Counterclaims and Crossclaims contained in Bumble Trading Inc. ("Bumble Trading") and Bumble Holding, Ltd.'s ("Bumble Holding") Answer and Counterclaims to Plaintiff Match Group, LLC's Third Amended Complaint and Crossclaims Against IAC/InterActiveCorp (Dkt. 66) ("Counterclaims") and in support thereof would respectfully show the Court the following:

## BUMBLE'S COUNTERCLAIMS AND CROSS-CLAIMS

## PARTIES

1.      Counter Defendants admit that public records show that Bumble Trading is a corporation organized under the laws of Delaware having its principal place of business located at 1105 W. 41st St., Austin, Texas 78756.

2.      Counter Defendants admit that public records show that Bumble Holding is a corporation organized under the laws of the United Kingdom having its principal place of business in London, United Kingdom.

3.      Counter Defendants admit that Match is a limited liability corporation organized under the laws of Delaware, with its principal place of business located at 8750 N. Central Expressway, Suite 1400, Dallas, Texas.

4.      Counter Defendants admit that IAC is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York, and that IAC is a parent company of Match Group, Inc., but otherwise deny the remaining allegations set forth in Paragraph 4 of the Counterclaims.

## JURISDICTION AND VENUE

5.      Counter Defendants admit that certain of the actions in the Counterclaims 1-6 purport to arise under the Lanham Act, 15 U.S.C. § 1051 et seq., and Counterclaims 7-10 purport to arise under the Patent Act, 35 U.S.C. §1 et seq., but otherwise deny the remaining allegations set forth in Paragraph 5 of the Counterclaims.

6.      For the purposes of this action, Counter Defendants admit that this Court has personal jurisdiction over Match, but otherwise deny the remaining allegations set forth in Paragraph 6 of the Counterclaims.

7.     Counter Defendants deny the allegations set forth in Paragraph 7 of Bumble Trading and Bumble Holding's Counterclaims.

8.     For the purposes of this action, Counter Defendants admit that venue is proper in this Court as to Match, but otherwise deny the remaining allegations set forth in Paragraph 8 of the Counterclaims.

## FACTUAL BACKGROUND REGARDING BUMBLE'S COUNTERCLAIMS

### Bumble & Swipe Functionality

7. [sic][1] Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in the second Paragraph 7 [sic] of the Counterclaims, and therefore deny them.

8. Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in the second Paragraph 8 [sic] of the Counterclaims, and therefore deny them.

9.     Counter Defendants admit that the current version of the Bumble application operates by giving users the ability to drag a card to the left to indicate a "no" and drag a card to the right to indicate a "yes" and that, when there is a match, Bumble then notifies both users. Counter Defendants admit that in heterosexual scenarios, only the women can begin a conversation with a potential partner and that absent certain paid features, if a conversation that has not started within 24 hours of a match, that match will expire.  Counter Defendants otherwise deny the allegations set forth in Paragraph 9 of the Counterclaims.

---

[1] Bumble Trading and Bumble Holding's counterclaims repeated paragraph 7 and 8.  For purposes of this pleading, Counter Defendants repeat those two numbers and maintain the numbering set forth in the remainder of Bumble Trading and Bumble Holding's Counterclaims.

10.     Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Counterclaims, and therefore deny them.

**Counterclaim-Defendant Match**

11.     Counter Defendants admit that Match Group, Inc. is a leader online dating company.  Counter Defendants otherwise deny the allegations set forth in Paragraph 11 of the Counterclaims.

12.     Denied.

13.     Counter Defendants admit that Tinder popularized an online social introduction format whereby a user drags photos of other users in particular directions to select those with whom the user wants to connect, but otherwise deny the remaining allegations set forth in Paragraph 13 of the Counterclaims.

14.     Counter Defendants admit that Match Group, Inc. engaged in discussions to acquire equity interests in Worldwide Vision Holdings and it affiliates including Bumble in 2017, but otherwise deny the remaining allegations set forth in Paragraph 14 of the Counterclaims.

15.     Counter Defendants admit that Match filed the Complaint against Bumble alleging, among other things, infringement of Match's SWIPE trademark and certain variations thereof. Counter Defendants admit that it uses the terms "SWIPE," "SWIPE RIGHT," "SWIPE LEFT," as trademarks in connection with dating products and services, including in connection with its Tinder app. Otherwise, Counter Defendants deny the remaining allegations set forth in Paragraph 15 of the Counterclaims.

## The Registration of Purported "SWIPE" Trademark

16.     Counter Defendants admit that the initial version of the Tinder app required users to tap on digital buttons to indicate a like or dislike of another user.  Except as specifically admitted, Counter Defendants deny the allegations set forth in Paragraph 16 of the Counterclaims.

17.     Counter Defendants admit that on June 5, 2013, Chirpme, Inc. ("Chirpme"), Match's predecessor-in-interest related to Match's SWIPE registration, filed Application Serial No. 85/950,991 for the trademark SWIPE in connection with "computer application software for mobile devices, namely for social introduction and dating services" in International Class 9.

18.     Denied.

19.     Counter Defendants admit that Chirpme's application used dragging gestures to indicate preference on photographs of users.  Counter Defendants otherwise deny the allegations set forth in Paragraph 19 of the Counterclaims.

20.     Counter Defendants admit that GameChanger Labs Inc. (formerly known as ChirpMe Inc.) entered into an agreement whereby it assigned its rights in and to the "SWIPE" mark, including the SWIPE Application, to Speeddate.com, LLC.  Counter Defendants otherwise deny the allegations set forth in Paragraph 20 of the Counterclaims.

21.     Admitted.

22.     Counter Defendants admit that on or about February 24, 2015, Speeddate.com LLC entered into an agreement whereby it assigned its rights in "SWIPE," including the Registration, to Tinder, Inc.  Admitted.

23.     Counter Defendants admit that on July 13, 2017, Tinder, Inc. completed a merger with Match Group, Inc., which subsequently assigned its rights in the SWIPE mark, including

the Registration, to Match.com, L.L.C. (which subsequently changed its name to Match Group, LLC). Counter Defendants otherwise deny the allegations set forth in Paragraph 23 of the Counterclaims.

### Match's Pending Applications for "SWIPE"-Formative Marks

24. Admitted.

25. Counter Defendants admit that on August 12, 2015, the USPTO issued an initial Office Action that purported to refuse registration to Application Serial Nos. 86/608,899 and 86/608,903 and that the Trademark Examiner identified marks in prior-filed pending applications which were cited as potential bars to registration. Counter Defendants admit that prosecution of Application Serial Nos. 86/608,899 and 86/608,903 was suspended on February 15, 2016 based on Match's request that its applications be suspended pending the USPTO's review of the other prior-filed pending applications. Otherwise, Counter Defendants deny the remaining allegations set forth in Paragraph 25 of the Counterclaims, including any suggestion that the USPTO's initial refusal to register Application Serial Nos. 86/608,899 and 86/608,903 was correctly or finally decided on the merits.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Counter Defendants admit that on October 15, 2015, the USPTO issued an initial Office Action that purported to refuse registration to Application Serial No. 86/751,974, and that the Trademark Examiner identified marks in prior-filed pending applications which were cited as potential bars to registration. Counter Defendants admit it responded to this refusal on April 15,

2016, alleging that the purported mark SWIPE UP is inherently distinctive. Counter Defendants admit that the prosecution of Application Serial No. 86/751,974 was suspended on May 4, 2016 based on Match's request that its application be suspended pending the USPTO's review of the other prior-filed pending applications. Otherwise, Counter Defendants deny the remaining allegations set forth in Paragraph 30 of the Counterclaims, including any suggestion that the USPTO's initial refusal to register Application Serial No. 86/751,974 was correctly or finally decided on the merits.

31.     Admitted.

32.     Admitted.

33.     Admitted.

### The Common Use of "SWIPE" by Third Parties

34.     Counter Defendants deny the allegations set forth in Paragraph 34 of the Counterclaims.

35.     Counter Defendants refer the Court to Exhibit 5 to the Counterclaims for the contents thereof, but Counter Defendants deny Bumble's characterization of the contents. Counter Defendants otherwise lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Counterclaims, and therefore deny them.

36.     Counter Defendants refer the Court to Exhibits 6, 7, and 8 to the Counterclaims for the contents thereof, but Counter Defendants deny Bumble's characterization of the contents. Counter Defendants otherwise lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Counterclaims, and therefore deny them.

37.     Counter Defendants refer the Court to Exhibits 9 and 10 to the Counterclaims for the contents thereof, but Counter Defendants deny Bumble's characterization of the contents.

Counter Defendants otherwise Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Counterclaims, and therefore deny them.

38. Counter Defendants refer the Court to Exhibit 11 to the Counterclaims for the contents thereof, but Counter Defendants deny Bumble's characterization of the contents. Counter Defendants otherwise lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Counterclaims, and therefore deny them.

39. Counter Defendants refer the Court to Exhibit 12 to the Counterclaims for the contents thereof, but Counter Defendants deny Bumble's characterization of the contents. Counter Defendants otherwise lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Counterclaims, and therefore deny them.

40. Counter Defendants refer the Court to Exhibit 13 to the Counterclaims for the contents thereof, but Counter Defendants deny Bumble's characterization of the contents. Counter Defendants otherwise ack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Counterclaims, and therefore deny them.

41. Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Counterclaims, and therefore deny them.

42. Counter Defendants refer the Court to Exhibit 14 of the for the contents thereof, but Counter Defendants deny Bumble's characterization of the contents. Counter Defendants otherwise lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 42 of the Counterclaims, and therefore deny them.

43. Counter Defendants admit that they maintain that the Registration is valid and that Match owns exclusive rights to the marks "SWIPE," "SWIPE RIGHT," "SWIPE LEFT," and

variations thereof, in connection with mobile dating software and related services, but Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 43 of the Counterclaims.

**Match's Negotiations with Bumble**

44.     Counter Defendants admit that in or around May 2017 Match Group, Inc. began negotiations with Andrey Andreev regarding Match Group, Inc.'s potential acquisition of all equity interests in the various Bumble and Badoo entities in or around May 2017.  Counter Defendants admit that on or around May 11, 2017, Mr. Swidler, Match Group, Inc.'s CFO, exchanged a possible price range via letter, which was shared with Mr. Andreev.  Counter Defendants admit that in June 2017, Mr. Swidler informally discussed a different, higher range over e-mail while expressly indicating that if Mr. Andreev sent over additional diligence information, Mr. Swidler would "review this offer with [Match Group, Inc.'s] Board."  Counter Defendants further admit that Mr. Andreev did not accept this range and later countered with an even higher number above the top end of Mr. Swidler's informal range.  Counter Defendants further admit that discussions concerning an acquisition of Badoo/Bumble entities remained ongoing throughout the Summer and Fall of 2017.  Counter Defendants further admit that Mr. Swidler wrote to Mr. Andreev on December 21, 2017, to inform Mr. Andreev that, at that time, Mr. Swidler did not believe that Match Group, Inc. was prepared to acquire all equity interests in the various Bumble and Badoo entities for any price that Match Group, Inc. believed that Mr. Andreev would accept.  Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 44 of the Counterclaims.

45.     Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Counterclaims, and therefore deny them.

46.     Denied.

47.     Counter Defendants admit that Mr. Swidler requested due diligence information, that Mr. Swidler and Ms. Ginsberg discussed acquisition plans with JP Morgan's Chris Grose, Badoo's CFO Idan Wallichman, Badoo's CEO and founder of Worldwide Vision Andrey Andreev, and Whitney Wolfe Herd, and that Ms. Ginsberg had a dinner with Ms. Wolfe Herd on Feb. 22, 2018. Counter Defendants deny the remaining allegations set forth in Paragraph 47 of the Counterclaims.

48.     Counter Defendants deny Bumble's allegations that the negotiation was a sham. Counter Defendants deny that any negotiating team was "Bumble's negotiating team." Regarding Bumble's conduct or beliefs, Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Counterclaims, and therefore denies them.

49.     Counter Defendants specifically deny that Match and IAC intentionally prevented Bumble from moving forward with another transaction or engaged in any "campaign of deceit." Counter Defendants lack sufficient information to form a belief as to the truth of the remaining allegations set forth in Paragraph 49 of the Counterclaims regarding Bumble's beliefs, and therefore deny them. Counter Defendants deny the remaining allegations in Paragraph 49.

**Match's Initial Offer**

50.     Counter Defendants admit that, in the summer of 2017, Match Group, Inc. engaged in negotiations with Andrey Andreev for Match Group, Inc.'s potential acquisition of all equity interests Bumble and Badoo entities. Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 50 of the Counterclaims.

51. Counter Defendants admit that in June 2017, Mr. Swidler indicated to Mr. Andreev that Match Group, Inc. would be interested in discussing an offer of $450 million to acquire the Bumble platform (alone) based on Mr. Andreev's own valuation for the Bumble platform, as stated in an email communication from Mr. Andreev to Mr. Swidler. Counter Defendants deny that this was the "first overture." Counter Defendants admit that Forbes magazine published an article containing the quote sent forth in this paragraph. To the extent this allegation refers to Match Group, Inc.'s stock price, the fluctuation in that price is public record and speaks for itself. Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 51 of the Counterclaims but refer the Court to the TechCrunch article for the contents thereof.

52. Counter Defendants admit that Mr. Wallichman arranged for Mr. Swidler and Ms. Ginsberg to visit and tour the Austin offices of Bumble on November 21, 2017 and Match Group, Inc. accepted the invitation. Counter Defendants admit that executives from Match Group, Inc. met and communicated with Idan Wallichman, Andrey Andreev, and Whitney Wolfe Herd regarding a potential acquisition, although Mr. Andreev did not attend the November 21, 2017 Austin meeting. Regarding Bumble's belief, Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 52 of the Counterclaims, and therefore deny them.

53. Counter Defendants admit that after receiving some due diligence information concerning the Bumble and Badoo applications, Mr. Swidler indicated that Match Group, Inc. could likely increase its offer from a prior offer range sent in a non-binding Letter of Intent on May 11, 2017. Counter Defendants otherwise deny the allegations set forth in Paragraph 53 of Bumble Trading and Bumble Holding's Counterclaims.

54. Counter Defendants admit that on December 21, 2017, Match Group, Inc.'s CFO, Gary Swidler, emailed Idan Wallachman, the CFO of Badoo, to state that Match Group, Inc. did not believe it was prepared to make an offer for Bumble and Badoo that Mr. Andreev would be prepared to accept but that "if things should evolve on [Mr. Andreev's] side or [Match Group, Inc.'s]" Mr. Swidler "would hope to stay in touch." Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 54 of the Counterclaims.

**Match and IAC's Scheme to Prevent the Acquisition of Bumble by a Third Party**

55. Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 55 of the Counterclaims, and therefore deny them.

56. Counter Defendants deny the allegations set forth in Paragraph 56 of the Counterclaims.

57. Counter Defendants admit that it was encouraged by Worldwide Vision representatives to consider continuing earlier acquisition discussions concerning the equity interests of Bumble and Badoo related entities. To the extent these allegations concern Bumble and Bumble's beliefs and knowledge, Counter Defendants lack sufficient information to form a belief as the truth of those allegations and therefore deny the same. Counter Defendants otherwise deny the allegations set forth in Paragraph 57 of the Counterclaims.

58. Counter Defendants deny the allegations set forth in Paragraph 58 of the Counterclaims.

59. Counter Defendants admit that Match Group, Inc. officers asked about deals being considered by Worldwide Vision/Andrey Andreev in an attempt to ensure that Match Group, Inc. had the opportunity to remain in the process for an opportunity to acquire Badoo and Bumble at an appropriate price point. Counter Defendants further admit that Mr. Swidler stated,

in his role as CFO of Match Group, Inc., his own strong support for a deal on multiple occasions and asked officers of Worldwide Vision/Badoo to keep him apprised of ongoings in the negotiations with other bidders.  Mr. Swidler also repeatedly mentioned, however, that he alone could not make the decision about any acquisition.  Worldwide Vision, Mr. Andreev, Mr. Wallichman, JPMorgan, Badoo, and Bumble were unequivocally aware that any offer would require Match Group, Inc. Board approval and support from Match Group, Inc.'s parent company, IAC.  Counter Defendants deny the remaining allegations set forth in Paragraph 5 of the Counterclaims.

60.     Counter Defendants deny the allegations set forth in Paragraph 60 of the Counterclaims.

61.     Counter Defendants deny Bumble's allegation, as set forth in Paragraph 61 of the Counterclaims, that Match made false and misleading statements or that Counter Defendants had any intention to prevent other deals.  Otherwise, Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 61 of the Counterclaims, and therefore deny them.

62.     Counter Defendants admit that during the week of January 15, 2018, Mr. Swidler sent a request to Chris Grose at JPMorgan Chase ("JPMorgan") for specific Bumble and Badoo business information in connection with Match Group, Inc.'s interest in possibly acquiring the equity interests of Bumble/Badoo entities.  Counter Defendants expressly deny that Mr. Grose was acting as a representative of "Bumble."  Counter Defendants deny the remaining allegations set forth in Paragraph 62 of the Counterclaims.

63.     Counter Defendants admit that Mr. Levin had discussions with JPMorgan on behalf of IAC concerning a potential acquisition of the equity interests of Bumble/Badoo entities.

Counter Defendants expressly deny that Mr. Grose was acting as a representative of "Bumble." Counter Defendants otherwise lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 63 and therefore deny the same.

64.     Counter Defendants admit that on or about January 30, 2018, Mr. Swidler indicated to JPMorgan that Match Group, Inc. would try to make an offer that it believed Mr. Andreev, Mr. Wallichman, and Worldwide Vision find more attractive than prior ones. Counter Defendants otherwise deny the allegations set forth in Paragraph 64 of the Counterclaims.

65.     Counter Defendants admit that on February 9, 2018, Mr. Swidler indicated in a non-binding letter of intent a range for the possible valuation of the Bumble/Badoo acquisition and requested more information regarding performance and user metrics and financial data. Counter Defendants further admit that Bumble/Badoo provided some additional information. Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 65 of the Counterclaims.

66.     Counter Defendants presently lacks sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 66 and therefore deny the same.

67.     Counter Defendants admit that Mr. Levin had discussions with JPMorgan on behalf of IAC concerning a potential Bumble/Badoo acquisition and that one such discussion occurred on February 15, 2018. Counter Defendants otherwise presently lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 67 and therefore deny the same.

68.     Counter Defendants admit that on February 19, 2018, Mr. Swidler sent a request for certain business information to Idan Wallichman, Christopher Grose, and Ethan Sweig (also of JP Morgan) and asked "what from this list" Badoo/Bumble was willing to provide. Counter

Defendants otherwise deny the remaining allegations set forth in Paragraph 68 of the Counterclaims.

69.     Counter Defendants admit that on or around February 20, 2018, Mr. Swidler reiterated his request for due diligence information such as that information requested in his February 19, 2018 e-mail.  Counter Defendants admit that Mr. Swidler explained that an acquisition bid would be discussed at Match Group, Inc.'s upcoming board meeting and that he would attempt to provide a more specific proposal as soon as practically possible after that. Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 69 of the Counterclaims.

70.     Counter Defendants admit that, on February 21, 2018, Mr. Grose provided representatives of Match Group, Inc., including Mr. Swidler, access to additional information concerning the Bumble and Badoo applications and affiliated businesses.  Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 70 of the Counterclaims.

71.     Counter Defendants admit that on February 21, 2018, Mr. Swidler emailed with Chris Grose at JPMorgan asking if Mr. Grose would be attending a Miami conference that Mr. Swidler was also planning to attend.  Counter Defendant further admit that Mr. Swidler suggested finding a location in which Grose, Idan Wallichman, and Mr. Swidler could meet in person.  Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 71 of the Counterclaims.

72.     Counter Defendants admit that Match Group, Inc's CEO, Mandy Ginsberg, had dinner with Whitney Wolfe Herd on February 22, 2018.  Counter Defendants admit that Ms. Ginsberg told Ms. Wolfe Herd that if a deal were to happen, Ms. Ginsberg would be excited to work with Ms. Wolfe Herd.  Counter Defendants expressly deny that Ms. Ginsberg told Ms.

Wolfe Herd that Match Group, Inc. was "on the cusp of making a competitive offer to acquire Bumble." Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 72 of the Counterclaims.

73. Counter Defendants admit that on February 23, 2018, Mr. Swidler sent a document containing a number of questions to Mr. Grose for purposes of a discussion with Worldwide Vision representatives such as Mr. Andreev or Mr. Wallichman, a document which will speak for itself. Counter Defendants admit that additional Bumble/Badoo information was provided. Counter Defendants otherwise deny the remaining allegations set forth in Paragraph 73 of the Counterclaims.

74. Counter Defendants admit that on February 26, 2018 at 12:52 PM EST, Mr. Swidler texted Mr. Wallichman indicating that "[he thought he could] make some adjustments to [his] model and get close to done," and that he "[w]ould like to do as much as [he could] before [Match Group, Inc.'s] Wed board meeting." Counter Defendants further admit that in this text, Mr. Swidler asked for an update of the "Bumble operating metrics that you have sent me previously" to ensure that Mr. Swidler could "capture YTD trends." Mr. Swidler also asked for certain marketing spend information and projections if possible since "that's a big variable in [his] model that [he] may not have quite right," while acknowledging that "some of that may be sensitive so whatever you can do." Counter Defendants otherwise deny that remaining allegations set forth in Paragraph 74 of the Counterclaims.

75. Counter Defendants admit that on February 28, 2018 at 7:40 AM EST, Mr. Swidler wrote an email to Idan Wallichman thanking Mr. Wallichman for providing some updated usage information and informing Mr. Wallichman that "we will discuss today and get

you an update shortly thereafter." Counter Defendants otherwise deny the remaining allegations in Paragraph 75 of the Counterclaims.

76.     Counter Defendants deny the allegations in Paragraph 76 of the Counterclaims.

### Match and IAC's Deception Revealed

77.     Counter Defendants deny the allegations set forth in Paragraph 77 of Bumble Trading and Bumble Holding's Counterclaims.

78.     Counter Defendants deny the allegations set forth in Paragraph 78 of Bumble Trading and Bumble Holding's Counterclaims.

### FIRST CAUSE OF ACTION
### Asserted Against Match
### (Cancellation of Registration No. 4,465,926)

79.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

80.     Match admits that it and its predecessors-in-interest have used the SWIPE mark in connection with mobile dating apps that include the ability to use a touchscreen gesture involving dragging a finger across the touchscreen. Match otherwise denies the allegations set forth in Paragraph 80 of Bumble Trading and Bumble Holding's Counterclaims.

81.     Match admits that it has referred to the positive and negative preference indications by virtue of the finger-dragging gestures in the Tinder application using its SWIPE mark and variations thereof, and that its predecessors-in-interest did the same with the SWIPE branded application. Match otherwise denies the allegations set forth in Paragraph 81 of Bumble Trading and Bumble Holding's Counterclaims.

82.     Match refers the Court to the image referenced in the Counterclaims for the contents thereof. Otherwise, Match lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 82 of the Counterclaims, and therefore denies them.

83.     Match refers the Court to the iTunes Screenshot referenced in the Counterclaims for the contents thereof.

84.     Match admits that it uses the marks "SWIPE," "SWIPE RIGHT," and "SWIPE LEFT" in its marketing collateral, and Match refers the Court to the iTunes Screenshot referenced in the Counterclaims for the contents thereof. Match otherwise denies the allegations set forth in Paragraph 84 of Bumble Trading and Bumble Holding's Counterclaims.

85.     Match denies the allegations set forth in Paragraph 85 of Bumble Trading and Bumble Holding's Counterclaims.

86.     Match admits that it uses the "TM" symbol in conjunction with the terms "SWIPE RIGHT," and "SWIPE LEFT," and Match refers the Court to the iTunes Screenshot referenced in the Counterclaims for the contents thereof. Match otherwise denies the allegations set forth in Paragraph 86 of Bumble Trading and Bumble Holding's Counterclaims.

87.     Match denies the allegations set forth in Paragraph 87 of Bumble Trading and Bumble Holding's Counterclaims.

88.     Match refers the Court to Exhibits 5-13 referenced in the Counterclaims, which speaks for themselves.  Otherwise, Match lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 88 of the Counterclaims, and therefore denies them.

89.     Match refers the Court to Exhibits 3-14 referenced in the Counterclaims, which speaks for themselves.  Match lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 89 of the Counterclaims, and therefore denies them.

90.     Paragraph 90 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

91.     Paragraph 91 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

92.     Paragraph 92 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

93.     Match denies the allegations set forth in Paragraph 93 of Bumble Trading and Bumble Holding's Counterclaims.

94.     Match denies the allegations set forth in Paragraph 94 of Bumble Trading and Bumble Holding's Counterclaims.

95.     Admitted.

96.     Match denies the allegations set forth in Paragraph 96 of Bumble Trading and Bumble Holding's Counterclaims.

97.     Match denies the allegations set forth in Paragraph 97 of Bumble Trading and Bumble Holding's Counterclaims.

98.     Paragraph 98 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

**SECOND CAUSE OF ACTION**
**Asserted Against Match**
**(Denial of Registration for Application Serial Nos. 86/608,899, 86/608,903, 86/680,914, 86/680,923, 86/680,927, and 86/751,974**

99.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

100.    Match only admits that the goods and services covered by Application Serial Nos. 86/608,899, 86/608,903, 86/680,914, 86/680,923, 86/680,927, and 86/751,974 concern mobile

dating apps. Match otherwise denies the allegations set forth in Paragraph 1000 of Bumble Trading and Bumble Holding's Counterclaims.

101. Match denies the allegations set forth in Paragraph 101 of Bumble Trading and Bumble Holding's Counterclaims.

102. Paragraph 102 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

103. Match denies the allegations set forth in Paragraph 103 of Bumble Trading and Bumble Holding's Counterclaims.

104. Paragraph 104 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

**THIRD CAUSE OF ACTION**
**Asserted Against Match**
**(Denial of Registration for Application Serial No. 86/680,938**

105. Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

106. Admitted.

107. Paragraph 107 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

108. Paragraph 108 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

109. Match denies the allegations set forth in Paragraph 109 of Bumble Trading and Bumble Holding's Counterclaims.

110. Match denies the allegations set forth in Paragraph 110 of Bumble Trading and Bumble Holding's Counterclaims.

## FOURTH CAUSE OF ACTION
## Asserted Against Match
## (Denial of Registration for Application Serial No. 87/742,144)

111.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

112.     Match only admits that Application Serial No. 87/742,144 covers entertainment services.  Match otherwise denies the allegations in Paragraph 112.

113.     Paragraph 113 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

114.     Match denies the allegations set forth in Paragraph 114 of Bumble Trading and Bumble Holding's Counterclaims.

115.     Paragraph 115 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

## FIFTH CAUSE OF ACTION
## Asserted Against Match
## (Denial of Registration for Application Serial No. 88/134,879)

116.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

117.     Match only admits that Application Serial No. 88/134,879 covers web services. Match otherwise denies the allegations in Paragraph 117.

118.     Match denies the allegations set forth in Paragraph 118 of Bumble Trading and Bumble Holding's Counterclaims.

119.     Match denies the allegations set forth in Paragraph 119 of Bumble Trading and Bumble Holding's Counterclaims.

120.     Match denies the allegations set forth in Paragraph 120 of Bumble Trading and Bumble Holding's Counterclaims.

121.     Paragraph 121 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

122.     Match denies the allegations set forth in Paragraph 122 of Bumble Trading and Bumble Holding's Counterclaims.

123.     Paragraph 123 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

**SIXTH CAUSE OF ACTION**
**Asserted Against Match**
**(Denial of Registration for Application Serial Nos. 88/160,784 and 88/160,907)**

124.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

125.     Match only admits that Application Serial Nos. 88/160,784 and 88/160,907 covers dating and entertainment services.  Match admits that the applications are intended to cover, among other things, the online video content provided through Match's SWIPE SESSIONS section of the Tinder website, which includes discussions and interviews about the Tinder app.  Match otherwise denies the allegations in Paragraph 125.

126.     Match denies the allegations set forth in Paragraph 126 of Bumble Trading and Bumble Holding's Counterclaims.

127.     Match denies the allegations set forth in Paragraph 127 of Bumble Trading and Bumble Holding's Counterclaims.

128.     Match denies the allegations set forth in Paragraph 128 of Bumble Trading and Bumble Holding's Counterclaims.

129.     Paragraph 129 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

130.     Match denies the allegations set forth in Paragraph 130 of Bumble Trading and Bumble Holding's Counterclaims.

131.     Paragraph 131 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

**SEVENTH CAUSE OF ACTION**
**Asserted Against Match**
**(Non-Infringement of the '811 Patent)**

132.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

133.     Admitted.

134.     Match admits that it has accused Bumble of infringement of the '811 Patent. Otherwise, paragraph 134 of the Counterclaims states a legal conclusion to which no response is required.

135.     Match denies the allegations set forth in Paragraph 135 of Bumble Trading and Bumble Holding's Counterclaims.

136.     Paragraph 136 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

137.     Paragraph 137 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

138.     Paragraph 138 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

139.     Paragraph 139 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

**EIGHTH CAUSE OF ACTION**
**Asserted Against Match**
**(Non-Infringement of the '023 Patent)**

140.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

141.     Admitted.

142.     Match admits that it has accused Bumble of infringement of the '023 Patent. Otherwise, paragraph 142 of the Counterclaims states a legal conclusion to which no response is required.

143.     Match denies the allegations set forth in Paragraph 143 of Bumble Trading and Bumble Holding's Counterclaims.

144.     Paragraph 144 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

145.     Paragraph 145 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

**NINTH CAUSE OF ACTION**
**Asserted Against Match**
**(Non-Infringement of the '854 Patent)**

146.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

147.     Admitted.

148.     Match admits that it has accused Bumble of infringement of the '854 Patent and that there is a controversy between the parties regarding this infringement. Otherwise, paragraph 148 of the Counterclaims states a legal conclusion to which no response is required.

149.     Match denies the allegations set forth in Paragraph 149 of Bumble Trading and Bumble Holding's Counterclaims.

150.     Paragraph 150 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

151.     Paragraph 151 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

## TENTH CAUSE OF ACTION
### Asserted Against Match
### (Invalidity of the '811, '023, and '854 Patents)

152.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

153.     Match admits that it contends that the asserted claims of the '811, '023, and '854 Patents are valid and enforceable and that there is a controversy between the parties regarding their validity. Otherwise, paragraph 153 of the Counterclaims states a legal conclusion to which no response is required.

154.     Paragraph 154 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

155.     Paragraph 155 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

156.     Match denies the allegations set forth in Paragraph 156 of Bumble Trading and Bumble Holding's Counterclaims.

157. Match denies the allegations set forth in Paragraph 157 of Bumble Trading and Bumble Holding's Counterclaims.

158. Match denies the allegations set forth in Paragraph 158 of Bumble Trading and Bumble Holding's Counterclaims.

159. Match denies the allegations set forth in Paragraph 159 of Bumble Trading and Bumble Holding's Counterclaims.

160. Match denies the allegations set forth in Paragraph 160 of Bumble Trading and Bumble Holding's Counterclaims.

161. Paragraph 161 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Match denies these allegations.

<strong><u>ELEVENTH CAUSE OF ACTION</u></strong><br><strong><u>Asserted Against Match and IAC</u></strong><br><strong><u>(Fraud)</u></strong>

162. Counter Defendants incorporate by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

163. Counter Defendants deny the allegations set forth in Paragraph 163 of Bumble Trading and Bumble Holding's Counterclaims.

164. Counter Defendants deny the allegations set forth in Paragraph 164 of Bumble Trading and Bumble Holding's Counterclaims.

165. Paragraph 165 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

166. Counter Defendants deny the allegation set forth in Paragraph 166 of Bumble Trading and Bumble Holding's Counterclaims that Match made false material representations.

Otherwise, paragraph 166 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

167. Paragraph 167 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

168. Paragraph 168 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

## TWELFTH CAUSE OF ACTION
### Asserted Against Match and IAC
### (Negligent Misrepresentation)

169. Counter Defendants incorporate by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

170. Counter Defendants deny the allegations set forth in Paragraph 170 of Bumble Trading and Bumble Holding's Counterclaims.

171. Counter Defendants deny the allegations set forth in Paragraph 171 of Bumble Trading and Bumble Holding's Counterclaims.

172. Counter Defendants deny the allegations set forth in Paragraph 172 of Bumble Trading and Bumble Holding's Counterclaims.

173. Counter Defendants deny the allegations set forth in Paragraph 173 of Bumble Trading and Bumble Holding's Counterclaims.

174. Paragraph 174 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

175.     Paragraph 175 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

176.     Paragraph 176 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

**THIRTEENTH CAUSE OF ACTION**
**Asserted Against Match and IAC**
**(Unfair Competition)**

177.     Counter Defendants incorporate by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

178.     Counter Defendants deny the allegations set forth in Paragraph 178 of Bumble Trading and Bumble Holding's Counterclaims.

179.     Paragraph 179 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

180.     Paragraph 180 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

181.     Paragraph 181 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

**FOURTEENTH CAUSE OF ACTION**
**Asserted Against Match and IAC**
**(Promissory Estoppel)**

182.     Counter Defendants incorporate by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

183.     Counter Defendants admit only to the representations specifically admitted elsewhere in this pleading.  Counter Defendants otherwise deny the allegations set forth in Paragraph 183 of Bumble Trading and Bumble Holding's Counterclaims.

184.     Counter Defendants deny the allegations set forth in Paragraph 184 of Bumble Trading and Bumble Holding's Counterclaims.

185.     Counter Defendants deny the allegations set forth in Paragraph 185 of Bumble Trading and Bumble Holding's Counterclaims.

186.     Counter Defendants deny the allegations set forth in Paragraph 186 of Bumble Trading and Bumble Holding's Counterclaims.

187.     Paragraph 187 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

188.     Paragraph 188 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

## FIFTEENTH CAUSE OF ACTION
### Asserted Against Match and IAC
### (Interference with Prospective Business Relations)

189.     Match incorporates by reference its responses to the previous paragraphs of the Counterclaims as if fully set forth herein.

190.     Counter Defendants lack sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 190 of the Counterclaims, and therefore denies them.

191. Counter Defendants deny the allegations set forth in Paragraph 191 of Bumble Trading and Bumble Holding's Counterclaims.

192. Paragraph 192 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

193. Paragraph 193 of the Counterclaims states a legal conclusion to which no response is required. To the extent a response is required, Counter Defendants deny these allegations.

## RESERVATION OF AFFIRMATIVE DEFENSES

Match and IAC hereby reserve the right to assert affirmative defenses as discovery proceeds in this case.

## BUMBLE'S PRAYER FOR RELIEF

Match and IAC deny all allegations contained in the section entitled "Bumble's Prayer for Relief," and further deny that any relief should be granted to Bumble Trading or Bumble Holding whatsoever, either as requested in its Counterclaims and Cross-claims or otherwise.

## JURY DEMAND

Match and IAC demand a jury trial for all issues so triable.

## DENIAL OF ANY REMAINING ALLEGATIONS

Except as specifically admitted herein, Match and IAC deny any remaining allegations in Bumble Trading or Bumble Holding's Counterclaims and Cross-claims that are directed at Match and IAC.

DATED:  July 10, 2019                                   Respectfully submitted,

                                                        CALDWELL CASSADY & CURRY

By: */s/ Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

John P. Palmer
State Bar. 15430600
Email: palmer@namanhowell.com
Naman, Howell, Smith & Lee, PLLC
400 Austin Avenue, 8th Floor
P.O. Box 1470
Waco, TX 76701
Telephone: (254) 755-4100
Facsimile: (254) 754-6331

**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT
MATCH GROUP, LLC AND
COUNTER-DEFENDANT
INTERACTIVECORP**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was filed electronically with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record on July 10, 2019.

*Bradley W. Caldwell*
Bradley W. Caldwell