IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| MATCH GROUP, LLC,<br><br>      *Plaintiff*,<br><br> vs.<br><br>BUMBLE TRADING, INC., BUMBLE HOLDING, LTD., BADOO TRADING LIMITED, MAGIC LAB CO., WORLDWIDE VISION LIMITED, BADOO LIMITED, BADOO SOFTWARE LIMITED, and BADOO TECHNOLOGIES LIMITED,<br><br>      *Defendants*.<br><br>BUMBLE TRADING INC. and BUMBLE HOLDING, LTD.,<br><br>      *Cross-Plaintiffs*,<br><br> vs.<br><br>MATCH GROUP, LLC and IAC/INTERACTIVE CORP.,<br><br>      *Cross-Defendants*. | Case No.: 6:18-cv-00080-ADA<br><br>**<u>JURY TRIAL</u>** |

**<u>DEFENDANTS BUMBLE TRADING INC. AND BUMBLE HOLDING, LTD.'S
OPPOSITION TO PLAINTIFF MATCH GROUP, LLC'S
MOTION FOR SUBSTITUTE SERVICE</u>**

## I. INTRODUCTION

Fifteen months after filing this lawsuit, on the last day to add parties, plaintiff Match Group, LLC ("Match") added six foreign entities as defendants ("the Additional Defendants"). Match now seeks leave to bypass the standard procedures for serving foreign entities—set out in the Hague Convention—and requests the Court allow it to serve these new parties through Cooley LLP instead. But, as Match acknowledges, Cooley LLP is not authorized to accept service on their behalf.

Match does not contest that it *could* serve each of the Additional Defendants through conventional means—and in fact admits that it is already doing so. Instead, Match argues that it should be allowed to skip this process altogether. However, as Match's own cited authority shows, where service of process is available through conventional means, the alternative service Match now requests is improper. On this basis alone, the Motion should be denied.

Moreover, Match fails to identify any actual prejudice that conventional service would cause. Match does not quantify any cost other than those typical of any foreign service of process. Match does contend that conventional service will cause prejudicial delay. But the Motion admits that such service may take as little as a month for most of the Additional Defendants—potentially less time than resolution of the present motion will require. Further, Match itself waited *fifteen months* to name the Additional Defendants, despite knowing of their relationship to the previously named defendants long before it filed suit. The Motion offers no explanation for why Match waited so long. Given this inexplicable delay in bringing claims against these entities, any argument of prejudicial delay rings hollow.

Match is choosing to attempt to hale foreign entities into a United States court. Match should comply with established requirements to effect service of process before those entities are

required to appear before this Court. Match does not get to short-circuit service of process requirements just because it has named, at the last minute, related entities as parties. Accordingly, the Court should deny Match's Motion for Substitute Service ("Motion" or "Mot.").

## II. LEGAL STANDARD

Service of process on a foreign corporation is governed by Federal Rule of Civil Procedure 4(h)(2), which provides for service "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rule 4(f) provides that service can be made of a foreign defendant "at a place not within any judicial district of the United States" (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . "; (2) if there is no internally agreed means, "by a method that is reasonably calculated to give notice . . . "; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

"In addition to the requirement that alternate service be permissible under any applicable international agreements and the Federal Rules," service under Rule 4(f)(3) "must also comport with constitutional notions of due process." *James Avery Craftsman, Inc. v. Sam Mood Trading Enters., Ltd.*, No. 16-cv-0463, 2018 WL 4688778, at *4 (W.D. Tex. July 5, 2018) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016-17 (9th Cir. 2002)).

## III. ARGUMENT

Match seeks leave of the Court to serve Cooley LLP, in place of the Additional Defendants themselves. (Mot. at 9.) The Court should deny this request because alternative service is only proper where conventional service is unavailable or unduly burdensome. Match has shown neither circumstance here.

### A. Alternative Service Under Rule 4(f)(3) is Improper Unless Such Service Is Necessary.

The Motion misstates the standard for alternative service under Rule 4(f)(3). (Mot. at 5.) Match's own cases make clear that courts should allow alternative service *only* where a plaintiff has made a substantial effort, but been unable, to serve a foreign defendant through conventional means, requiring court-intervention and an alternative approach. Match cherry picks quotes from many of these cases, but this standard remains—barring Match's requested relief.

For example, the court in *In re Chinese-Manufactured Drywall Products Liability Litigation*, recognized a plaintiff's burden to establish "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." No. 09-cv-2047, 2015 WL 13387769, at *5 (E.D. La. Nov. 9, 2015) (internal quotation and citations omitted). That court explained: "Imposing such a threshold requirement has been viewed as necessary in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts. Thus, in cases involving service on a person residing in a country that is a signatory to the Hague Convention, courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under section 4(f)(3)." *Id.* (internal quotation and citations omitted).[1]

Similarly, Match cites *Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, No. 06-cv-2683, 2007 WL 2964817, at *4 (S.D. Tex. Oct. 9, 2007). That court applied the same standard as *In re Chinese-Manufactured Drywall Products* and **denied** a motion for alternative service. *Id.* The court explained that because plaintiffs had "not presented any evidence" of attempts to serve the

---

[1] Yet, Match cites this very case to argue that there is no such threshold requirement. (*See* Mot. at 5 n.2.)

-3-

defendants and "Plaintiffs ha[d] not stated that they [were] unable to locate the individual defendants," there was no basis for allowing alternative service. *Id.* at *7.

The Fifth Circuit has also endorsed this threshold for alternative service under Rule 4(f)(3). In *Hazim v. Schiel & Denver Book Publishers*, the Fifth Circuit affirmed the district court's conclusion that plaintiff's "single mailing did not constitute due diligence in attempting to serve under Rule 4(f), *so alternative service was not justified under Rule 4(f)(3)*." 647 F. App'x 455, 461 (5th Cir. 2016) (emphasis added).[2] That is, the Fifth Circuit found that alternative service under Rule 4(f)(3) was properly denied where plaintiff had failed to meaningfully attempt conventional service, beyond a token effort.

### B. Match Fails to Show that Alternative Service Under Rule 4(f)(3) is Necessary.

The Motion fails to show (1) that Match is unable to serve the Additional Defendants through conventional means or (2) that doing so would cause Match undue prejudice.

#### 1. Match Does Not Contest that it Can Serve the Additional Defendants Through Conventional Means.

The Federal Rules of Civil Procedure set out a process for serving foreign defendants. *See* Fed. R. Civ. Proc. 4(f)(1). Here, these rules require Match to serve the Additional Defendants through "any internationally agreed means of service . . . such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *Id.*; *see also Mitchell v. Theriault*, 516 F. Supp. 2d 450, 452 (M.D. Pa. 2007) ("Service of process abroad is controlled by the Hague Convention, to the extent that the convention applies.") (citation omitted).

The Motion does not argue that Match has attempted, but failed, to serve the Additional Defendants through these conventional means. The Motion does not contend, for example, that

---

[2] *See also Compass Bank v. Kleve*, No. 12-cv-0046, 2012 WL 12895414, at *3 (S.D. Tex. Dec. 10, 2012) (finding that plaintiff must demonstrate "the need for alternative means of service") (internal quotation and citation omitted).

the Additional Defendants reside at unknown locations,[3] have evaded service, or are being shielded from service by their forum-states—the circumstances in the bulk of the cases the Motion relies on.  *See* Section III.B.3, *infra*.  Nor does the Motion contest that Match could serve each of the Additional Defendants pursuant to the procedures set out in the Hague Convention—as each of the Additional Defendants resides in a signatory-state.[4]  In fact, the Motion admits that Match is already in the process of serving "at least" three of the Additional Defendants through the very Hague Convention procedures that Match seeks leave to avoid.[5]  (Mot. at 8 n.4.)

Given these circumstances, Match has failed to show any need for alternative service.  This alone should defeat the Motion.  *See* Section III.A, *supra*.

### 2. Match Has Not Shown Undue Prejudice.

While Match concedes that it could serve the Additional Defendants using standard procedures, it argues that it will face two forms of prejudice should the Court require it to do so.  Neither is availing.

*First*, Match argues that it will incur costs serving the Additional Defendants, including because of a requirement it translate the service papers before serving Badoo Technologies Ltd. (Mot. at 7.)  But Match makes no attempt to quantify these costs in any way or explain why the

---

[3] The Motion does argue that Match has been unable to locate the offices of Magic Lab Co.  (Mot. at 8.)  But alternative service will not cure this problem.  There is no such entity as Magic Lab Co.  Allowing service on Cooley LLP will not change this fact.

[4] *See* Status Table 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, The Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (listing status of countries party to Hague Convention's service procedures); *see also* Fourth Amended Complaint (ECF No. 100), ¶¶ 4-9 (alleging corporate residence of Additional Defendants).

[5] In these circumstances, the Additional Defendants are under no obligation to waive the requirements of Rule 4(f).  *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 536 (5th Cir. 1990) (finding defendant "was well within its right to insist on service pursuant to the Hague Convention").  (*See* Mot., Ex. A (ECF No. 106-2), at 2 (Cooley LLP informing Match's counsel that the Additional Defendants had not waived their rights).)

costs would abrogate the need to comply with the Hague Convention. Moreover, these costs are nothing more than the usual costs of serving a foreign defendant under the Hague Convention. If such costs alone could justify alternative service, then alternative service would always be favored without more. That is not the standard applied by district courts. *See* Section III.A, *supra*. Moreover, this alleged prejudice appears pretextual, given that Match is now spending significant resources litigating the present Motion—supposedly to save these (unquantified) service and translation costs.

***Second***, Match argues that service under the standard procedures will cause delays that will prejudice Match in light of upcoming Court deadlines. (Mot. at 7.) But Match's arguments are incoherent. To start, the Motion itself indicates that service on unspecified Additional Defendants will take as little as a month. (*Id.*) Match served its Fourth Amended Complaint, naming the Additional Defendants almost a month ago—on August 2, 2019. Had Match spent its efforts serving these entities under Rule 4(f)(1), instead of litigating the present Motion, it would have accomplished that service before this Motion is even heard—***according to its own estimates***.

The only Defendant Match contends would take longer to serve is Badoo Software Ltd. The Motion argues that, as Badoo Software Ltd. is registered in Malta, it would take "at least 6 months" to effect service. (Mot. at 7.) But Match cites no authority, or even declaration, for this assertion and offers no explanation for where this estimate came from. Match cannot show a need for alternative service on such unsupported bases. *See, e.g.*, *Kowalski v. Anova Food, LLC*, No. 11-cv-0795, 2012 WL 3308886, at *2-3 (D. Haw. Aug. 10, 2012) ("Plaintiffs have not presented any facts to suggest that they are unable to locate [foreign defendant] in Malta or that they have attempted service in accordance with the Hague Service Convention.").

Moreover, Match itself chose to wait over fifteen months to name the Additional Defendants. The Motion makes no effort to justify this delay. Match has long known the identities of these entities—which are a matter of public record. And, more specifically, Match has understood the nature of the corporate relationships these entities have with one another and with Bumble—for example, Match alleges it engaged in lengthy acquisition negotiations with Worldwide Vision as early as 2017.[6] (ECF No. 100, ¶ 289.) Match cites no authority for the untenable position that the fact Match waited to name foreign defendants until court deadlines were fast approaching can serve as justification for avoiding the standard procedures for service on foreign entities.

### C. That Cooley LLP Represents the Additional Defendants Does Not Vary this Analysis.

Process can only be served on a corporate defendant by an "agent authorized by appointment or by law to receive service of process" for a corporate defendant. Fed. R. Civ. P. 4(h)(1)(B). Cooley LLP *is not authorized* to accept service for the Additional Defendants. (*See* Mot., Ex. A (ECF No. 106-2), at 2.) Match cites no case that supports its blanket proclamation that "serving a foreign entity's retained US counsel comports with Constitutional due process." (Mot. at 6.) The cases Match does cite to contend that Cooley LLP, as counsel for the Additional Defendants, should be required to accept such service are distinguishable.

In *WorldVentures Holdings, LLC v. Mavie*, No. 18-cv-0393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018), the district court found alternative service under Rule 4(f)(3) of domestic counsel appropriate where the defendants at issue had either agreed to service of process procedures in a

---

[6] The news media has also reported on Bumble's relationship with the Badoo entities for years. *See, e.g.*, Steve O'Hear, *Tinder Rival Bumble is majority-owned by European dating behemoth Badoo*, TECHCRUNCH (Mar. 25, 2016, 8:12 AM PDT), https://techcrunch.com/2016/03/25/bumble-meet-badoo/.

confidentiality agreement governing the parties claims or the defendants were already "actively participating in [the] action." *Id*. at *13-14 (concerning action in which defendants challenging alternative service had filed substantive motions). No agreement between the parties here provides for methods of service outside of Rule 4(f) and the Additional Defendants have not participated in the action to date.

*Canal Indemnity Co. v. Castillo*, No. 09-cv-0043, 2011 WL 13234740 (W.D. Tex. Mar. 30, 2011), is likewise distinguishable. In fact, *Canal* demonstrates why Match's Motion is premature. In the first instance, the court held that, "Plaintiff **should** attempt to serve the defendants pursuant to the Hague Convention instead of proceeding under Rule(4)(f)[3]." *Id*. at *2 (emphasis added). Only after the plaintiff had attempted service through the Mexican Central Authority for over six months, without success, did the court determine that serving domestic counsel comported with due process and foreign law considerations. *Id*.

Match's reliance on *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010), is also misplaced. *Nuance* does not stand for Match's proposition that, without more, "serving a foreign entity's retained US counsel comports with Constitutional due process." (Mot. at 6.) *Nuance* vacated a district court decision that had dismissed for improper service a foreign defendant located in Russia. 626 F.3d at 1238-41. The Federal Circuit found substitute service would be appropriate, but only because the record in the case had sufficiently established that service via the Hague Convention or through the Central Authority of the Russian Federation "would not have been possible."[7] *Id.* at 1237-38. The plaintiff in *Nuance* had also

---

[7] Similarly, in *Fundamental Innovation Systems International, LLC v. ZTE Corp.*, No. 17-cv-1827, 2018 WL 3330022, at *1 (N.D. Tex. Mar. 16, 2018), the court ultimately allowed for alternative service, but only *after* the plaintiff, per Hague Convention procedures, had engaged a foreign process server to forward the required documents, and translations thereof, to the Central Authority of China and the plaintiff had not received confirmation of service months later.

served the defendant via personal delivery in Russia. *Id.* at 1238. The circumstances here are different: internationally agreed upon methods of service are available (*see* Section III.B.1, *supra*), and Match has not already attempted service of process on the entities either personally or via mail.

### D. Match Cannot Show that Bumble and the Additional Defendants Are "Alter Egos."

The Motion does not argue that the Additional Defendants are Bumble's alter egos—nor does the Motion show any facts that would be sufficient to establish as much. Nonetheless, Match makes the unsubstantiated claim that "[t]he non-Bumble Defendants are undeniably controlling this case" (Mot. at 6-7),[8] and the Motion relies repeatedly on a case that allowed for service on the U.S. counsel of a subsidiary only because the subsidiary ***was an alter ego*** of the parent. *See Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. 13-cv-0369, 2014 WL 11342502, at *3-4 (W.D. Tex. July 2, 2014). Match cites *Affinity Labs* no less than six times to buttress virtually all of the arguments it raises in its Motion. (*See* Mot. at 4, 5, 7, 8.) But because the Bumble entities are not alter egos of the Additional Defendants, the case is inapposite.

## IV. CONCLUSION

For the foregoing reasons, Match's Motion should be denied. Match can, and should, serve each of the Additional Defendants in the appropriate manner prescribed by Rule 4(f)(1).

---

[8] Aside from pointing to self-serving allegations in the Fourth Amended Complaint and Answer to Bumble's Counterclaims (*see* Mot. at 2 (citing ECF Nos. 100 and 99)), Match provides no cognizable evidence to support its claim that the Bumble entities are "controlled" by the Additional Defendants. In a footnote, Match quotes hearsay from a magazine article. (*See* Mot. at 2 n.1.) Such allegations are clearly not sufficient to find that the Bumble entities are alter egos of the Additional Defendants. *See Fundamental Innovation Sys.*, 2018 WL 3330022, at *3-4 (even where companies, *inter alia*, shared substantially similar names, jointly maintained websites, retained common legal counsel, employed the same individuals as officers, and parent company owned 100% of subsidiary's outstanding stock, there was not sufficient factual showing of alter ego relationship); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) ("[O]ur cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes.") (collecting cases).

Dated: August 21, 2019                          Respectfully submitted,

By: *Joseph M. Drayton*

Joseph M. Drayton (*pro hac vice*)
NY Bar No. 2875318
**COOLEY LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
jdrayton@cooley.com

Michael G. Rhodes (*pro hac vice*)
CA Bar No. 116127
Matthew Caplan (*pro hac vice*)
CA Bar No. 260388
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone (415) 693-2000
Facsimile: (415) 693-2222
mrhodes@cooley.com
mcaplan@cooley.com

Rose S. Whelan (*pro hac vice*)
DC Bar No. 999367
**COOLEY LLP**
1299 Pennsylvania Ave., N.W.
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
rwhelan@cooley.com

Deron R. Dacus (TX 00790553)
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Defendants Bumble Trading, Inc. and Bumble Holding, Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record on August 21, 2019.

*/s/ Joseph M. Drayton*

209923240