IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **MATCH GROUP, LLC,**<br><br>      *Plaintiff*,<br><br>  vs.<br><br>**BUMBLE TRADING, INC., BUMBLE HOLDING, LTD., BADOO TRADING LIMITED, MAGIC LAB CO., WORLDWIDE VISION LIMITED, BADOO LIMITED, BADOO SOFTWARE LIMITED, and BADOO TECHNOLOGIES LIMITED,**<br><br>      *Defendants*.<br><br>**BUMBLE TRADING, INC. and BUMBLE HOLDING LTD.,**<br><br>      *Cross-Plaintiffs*,<br><br>  vs.<br><br>**MATCH GROUP, LLC and IAC/INTERACTIVE CORP.,**<br><br>      *Cross-Defendants.* | Case No.: 6:18-cv-00080-ADA-JCM<br><br>**<u>JURY TRIAL</u>** |

**<u>WORLDWIDE VISION LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF MATCH GROUP, LLC'S FOURTH AMENDED COMPLAINT UNDER RULE 12(b)(1), OR IN THE ALTERNATIVE, MOTION TO STRIKE UNDER RULE 12(f)</u>**

**Table of Contents**

Page

I.  INTRODUCTION ..................................................................................................... 1
II. ARGUMENT............................................................................................................. 1
    A.  The Court Cannot Exercise Personal Jurisdiction over Worldwide Vision for Match's Patent Claims. ............................................................... 1
        1.  Worldwide Vision's status as the holding company of other defendants is not enough for the Court to exercise jurisdiction................. 1
        2.  Match's argument regarding Magic Lab is unavailing. ............................. 3
    B.  If the Court Finds that It Cannot Exercise Personal Jurisdiction Over Worldwide Vision for Match's Patent Claims, It Should Also Dismiss Match's Tenth Cause of Action for Declaratory Relief. .......................................... 4
    C.  Match Does Not Establish that the Court Can Exercise Personal Jurisdiction Over Worldwide Vision for its Tenth Cause of Action for Declaratory Relief. .................................................................................................. 5
        1.  The relied-upon conduct is not attributable to Worldwide Vision. ........... 5
        2.  No relied-upon conduct gives rise to minimum contacts.......................... 7
            a.  The *Calder* Effects Test has no application here. .......................... 7
            b.  Match's alleged "uncertainty" does not save the claims against Worldwide Vision............................................................... 8
        3.  Match failed to address the unreasonableness of asserting jurisdiction. ............................................................................................. 10
    D.  The Insley Declaration is Properly Before the Court............................................ 10
III. CONCLUSION........................................................................................................ 10

# Table of Authorities

Page

**Cases**

*Alpine View Co., Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ..................................................................................9

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
  552 F.3d 1324 (Fed. Cir. 2008)............................................................................2, 8

*Calder v. Jones*,
  465 U.S. 783 (1984)..........................................................................................5, 7, 8

*Energetiq Tech.., Inc., v. ASML Neth. B.V*,
  113 F. Supp. 3d 461 (D. Mass. 2015) ....................................................................3

*Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC*,
  861 F. Supp. 2d 730 (E.D. Va. 2012) ....................................................................3

*Freescale Semiconductor, Inc. v. Amtran Tech. Co., Ltd.*,
  No. 12-cv-0644, 2013 WL 12121034 (W.D. Tex. June 12, 2013) ............................2

*Head v. Las Vegas Sands, LLC*,
  760 F. App'x 281 (5th Cir. 2019) ..........................................................................5

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
  213 F.3d 841 (5th Cir. 2000) ...............................................................................10

*Oakley, Inc. v. Jofa AB*,
  287 F. Supp. 2d 1111 (C.D. Cal. 2003) .................................................................3

*Seiferth v. Helicopteros Atuneros, Inc.*,
  472 F.3d 266 (5th Cir. 2006) .................................................................................1

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................................................8

**Statutes**

28 U.S.C. § 1367................................................................................................1, 4, 5

## I.  INTRODUCTION

As Match Group, LLC ("Match") argued less than six months ago (Dkt. 80 at 9), the conduct of a subsidiary cannot create personal jurisdiction over a parent.  Nor can a plaintiff plead around this principle by grouping and conflating the conduct of different entities.  Worldwide Vision's Motion to Dismiss Match's Fourth Amended Complaint ("Motion" or "Mot.") cited binding Fifth Circuit case law on both points.  Yet, Match's Opposition to the Motion ("Opposition" or "Opp'n") ignores this authority and spends 20 pages arguing that this Court has personal jurisdiction over Worldwide Vision on account of the conduct of *other* defendants and non-parties.  The Opposition only highlights the absence of any alleged conduct *on the part of Worldwide Vision* that could support personal jurisdiction in Texas.  As a result, Match fails to establish that the Court can exercise personal jurisdiction over Worldwide Vision.

## II.  ARGUMENT

Match does not argue that the Court can exercise general jurisdiction over Worldwide Vision (*see generally* Opp'n), so the Court must assess whether Match has established that Worldwide Vision is subject to this Court's specific jurisdiction "for each claim."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).  Additionally, if the Court declines to exercise jurisdiction over the claims for which it has original jurisdiction—in this case Match's patent claims—it should also dismiss claims for which it might have supplemental jurisdiction—here, Match's declaratory relief claim.  *See* 28 U.S.C. § 1367(c)(3).

### A. The Court Cannot Exercise Personal Jurisdiction over Worldwide Vision for Match's Patent Claims.

#### 1. Worldwide Vision's status as the holding company of other defendants is not enough for the Court to exercise jurisdiction.

Worldwide Vision's only connection to the accused features of the Bumble app is that it is the parent or grandparent company of the other named defendants.  (Mot. at 3-4, 9-16.)  Personal

jurisdiction cannot be asserted over a corporate parent merely for the allegedly infringing conduct of its subsidiaries—meaning that Match must show specific conduct by Worldwide Vision beyond its role as parent or show that Worldwide Vision is the alter-ego of its allegedly infringing subsidiaries. (Mot. at 11.) Match ignores this established standard, and instead falls back on vague arguments of "control" supported by nothing more than attorney argument.

Match claims that Worldwide Vision owns subsidiaries that in turn own the Bumble entities; exerts "influence" over this group of subsidiaries; is the "ultimate parent company" that "ensures" the corporate structure works; decided to "place" its subsidiaries in Texas; and "benefits" from their conduct. (Opp'n at 10-11.) But none of these allegations relate to any supposedly infringing conduct—all they amount to is that Worldwide Vision is the corporate parent of Bumble. Notably, Match fails to cite *any* authority when discussing these supposedly "significant patent-related contacts in Texas." (*Id.* at 10-12.) For example, Match provides no support for its contention that "Worldwide Vision directly benefits from Bumble's success" in Texas or that such a benefit amounts to sufficient contacts for personal jurisdiction. (*Id.* at 11.)

These allegations, even if they could be credited, simply do not create personal jurisdiction over Worldwide Vision. (Mot. at 11.) *See also Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1337-39 (Fed. Cir. 2008) (refusing to impute vaguely alleged contacts of subsidiary to parent); *Freescale Semiconductor, Inc. v. Amtran Tech. Co., Ltd.*, No. 12-cv-0644, 2013 WL 12121034, at *4 (W.D. Tex. June 12, 2013) (where record did not "conclusively demonstrate an alter-ego relationship" there was no jurisdiction over foreign patent company).

In an attempt to get around this authority, Match cites to out-of-circuit cases that it characterizes as holding that personal jurisdiction is proper over a parent that "masterminds" an infringement scheme or "encourages" infringement. (Opp'n at 13, 15, 18.) But these cases hold

no such thing.  Match cites *Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC* to argue a "masterminding" parent is subject to personal jurisdiction.  861 F. Supp. 2d 730, 733 (E.D. Va. 2012).  That case, however, did not consider personal jurisdiction over a corporate parent *at all* and is inapposite.  Regardless, nowhere in the Fourth Amended Complaint ("4AC") does Match allege facts showing that Worldwide Vision "masterminded" any supposed scheme to infringe.

As for Match's "encouragement" cases, these too fall short.  In *Energetiq Tech., Inc., v. ASML Neth. B.V.*, the court found specific jurisdiction over a parent company that undertook "research and development efforts and/or [made] sub-components for use in the final product" and plaintiff provided evidence of the parent's "extensive collaboration" with its subsidiaries in connection with the alleged infringement.  113 F. Supp. 3d 461, 466-68 (D. Mass. 2015) (internal quotation omitted).  In *Oakley, Inc. v. Jofa AB*, the parent company helped develop, manufacture, and sell the allegedly infringing products—and admitted as much on its website.  287 F. Supp. 2d 1111, 1115 (C.D. Cal. 2003).  These cases do not stand for the proposition that personal jurisdiction is proper for a parent that "encourages" infringing conduct, whatever that might mean.  In fact, these cases show precisely why personal jurisdiction is improper here:  Worldwide Vision is not alleged to have, and did not, participate in the research, manufacture, or sale of the accused product. (Insley Decl. ¶¶ 17-19.)

### 2. Match's argument regarding Magic Lab is unavailing.

Match next argues that Worldwide Vision is one and the same as "Magic Lab" and then asserts various conduct on the part of Magic Lab, nowhere to be found in the 4AC.  (*See* Opp'n at 5, 10-14.)  Match appears to have gotten this idea from a Wall Street Journal article, attached to the Opposition as Exhibit F.[1]  Exhibit F, however, refers to Magic Lab as a "London-based holding

---

[1] Match offers no authority or rule of evidence for the Court to consider these documents in ruling on this Motion.  These exhibits should be disregarded.

company." (*Id.*, Ex. F at 1.) As Match itself alleges, Worldwide Vision is registered and has its offices in Bermuda, not London. (4AC ¶ 6.) Moreover, these arguments are *directly contradicted* by the 4AC, which alleges that Magic Lab is an entity separate and apart from Worldwide Vision. (*Id*. ¶ 5.) Match cannot use its Opposition to re-write its complaint and cannot rely on attorney assertions (e.g. "Magic Lab *is* Worldwide Vision") not properly alleged. (*See* Opp'n at 11.)

The other exhibits Match relies on are more of the same. Match falsely claims that Exhibit O, a printout from the Magic Lab website, "states that Andreev himself developed Bumble at 'his' Worldwide Vision headquarters." (Opp'n at 10.) However, Exhibit O *never mentions* Worldwide Vision. Similarly, Exhibit I—which Match represents as Worldwide Vision "expressly advertis[ing] that the application it 'owns and operates' is headquartered in Austin, Texas"—also never mentions Worldwide Vision. (*Id*. at 11.) The same is true for Exhibits P, Q, and U.[2] None make any assertion about Worldwide Vision, let alone include conduct that could give rise to personal jurisdiction. As a result, the Court cannot exercise personal jurisdiction over Worldwide Vision for Match's patent infringement claims.

> **B.** **If the Court Finds that It Cannot Exercise Personal Jurisdiction Over Worldwide Vision for Match's Patent Claims, It Should Also Dismiss Match's Tenth Cause of Action for Declaratory Relief.**

United States Code 28 Section 1367(c)(3) vests this Court with the power to dismiss Match's Tenth Cause for declaratory relief if the Court cannot exercise jurisdiction over Worldwide Vision for Match's patent infringement claims because the Court only has original jurisdiction over the patent claims. In response to this authority, Match argues only that there is overlap between the Tenth Cause of Action and claims already pending. (*Id.* at 18.) This position,

---

[2] Worldwide Vision and Mr. Andreev are not the same and therefore Mr. Andreev's personal Instagram posts (*see Id.*, Exs. R-T) do not constitute conduct on the part of Worldwide Vision, giving rise to personal jurisdiction. Nor would these Instagram posts constitute purposeful availment of a Texas forum, even if they could be attributed to Worldwide Vision.

however, is contrary to authority interpreting United States Code 28 Section 1367(c)(3) because, in this scenario, there would be no claim asserted against Worldwide Vision for which the Court has original jurisdiction. (Mot. at 18-19.) As a result, if the Court does not exercise jurisdiction over Worldwide Vision for Match's patent infringement claims, it should also dismiss Match's declaratory relief claim, thus resolving all claims against Worldwide Vision.

  **C. Match Does Not Establish that the Court Can Exercise Personal Jurisdiction Over Worldwide Vision for its Tenth Cause of Action for Declaratory Relief.**

Match's argument that Worldwide Vision's alleged conduct during negotiations with Match is sufficient to establish personal jurisdiction fails for two reasons. First, the alleged conduct Match relies on is not that of Worldwide Vision. Second, the conduct is not of the type that could support a finding of minimum contacts or purposeful availment.

  **1. The relied-upon conduct is not attributable to Worldwide Vision.**

Match argues that Worldwide Vision engaged in conduct directed toward Texas during acquisition negotiations with Match. (Opp'n at 3-6.) A close read, however, shows Match is conflating the alleged conduct of other defendants and non-parties with that of Worldwide Vision. This cannot support an exercise of jurisdiction. *See Head v. Las Vegas Sands, LLC*, 760 F. App'x 281, 284 (5th Cir. 2019) (holding plaintiff must "submit evidence supporting personal jurisdiction over each defendant without grouping them together"); *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

To start, Match refers to "dozens of emails and phone calls between Worldwide Vision and Match Group, Inc." citing to a range of twelve paragraphs in the 4AC. (Opp'n at 3 (citing 4AC ¶¶ 289-300).) But the cited paragraphs do not identify a single email or phone call "between Worldwide Vision and Match Group, Inc." These paragraphs instead reference communications between Match and Andrey Andreev and Idan Wallichman. Match, however, alleges no facts

showing that Messrs. Andreev or Wallichman were acting on behalf of Worldwide Vision. In fact, the 4AC alleges that Idan Wallichman was acting as the "CFO of '**Badoo**'" (4AC ¶ 293 (emphasis added)) and that Match entered negotiations directly with Andrey Andreev, not with him as a representative of any corporate entity (*id.* ¶ 289). The various exhibits to the Opposition prove the point. Exhibits H, J, and K, emails between Match and Messrs. Andreev and Wallichman, show that they used @corp.badoo.com email addresses and Mr. Wallichman's signature block refers to Badoo Trading Limited, not Worldwide Vision.

Next, Match argues that "Worldwide Vision traveled to Texas" to meet with Match's Gary Swidler and Mandy Ginsberg. (Opp'n at 3.) Match resorts to this awkward phrasing—which fails to identify *who* traveled to Texas—to again obscure the actual underlying allegations and the facts proffered by Worldwide Vision. Match cites to Paragraph 17, which alleges that Mr. Wallichman—identified as the "CFO of 'Badoo'"—traveled to Texas. (4AC ¶ 17.) And the Insley Declaration is clear: Worldwide Vision never authorized any person to travel to Texas to represent Worldwide Vision in discussions with Match.³ (Insley Decl. ¶ 21.) Match does nothing to meaningfully contest this fact, asserted in a sworn declaration by a director of Worldwide Vision. Even putting these issues aside, Mr. Wallichman's trip took place in 2017, during an earlier set of negotiations not the subject of any claim, and therefore is irrelevant. (Mot. at 15-16.)

Finally, Match claims that "Worldwide Vision reach[ed] out to Match-affiliated persons in January 2018 to re-engage in negotiations." (Opp'n at 3-4.) As an initial matter, Match does not argue that these supposed outreach efforts touched Texas in anyway. Moreover, the 4AC yet again

---

³ Match later argues that whether the Worldwide Vision board authorized the trip is irrelevant under a theory of *apparent* authority. (Opp'n at 16.) But Match alleges nothing, and offers no admissible evidence, to support this theory, which is undermined by the actual allegations in Match's 4AC: that Mr. Wallichman traveled to Texas as the CFO of "Badoo." (4AC ¶ 17.)

belies the Opposition. Match cites to Paragraph 299 of the 4AC, which refers to "discussions" with Match—but never mentions Worldwide Vision. (4AC ¶ 299.) Match also cites to Paragraph 294, which alleges that "Match Group, Inc. was encouraged by Worldwide Vision representatives to consider continuing earlier acquisition discussions[.]" (*Id.* ¶ 294.) But Match fails to allege any details or offer any evidence for the Court to consider, including who these "representatives" were and why Match contends they were representing Worldwide Vision, as compared to other entities or themselves. Nor does Match explain how this alleged "encouragement" was directed toward Texas. (*See* Opp'n at 12, 15.) This is not enough to support jurisdiction.

### 2. No relied-upon conduct gives rise to minimum contacts.

Even putting aside the fact that Match conflates the conduct of Worldwide Vision and other parties and non-parties, the conduct Match relies on is not of a type that can create personal jurisdiction. (*See* Mot. at 12-13.)

#### a. The *Calder* Effects Test has no application here.

Out-of-forum conduct can only create personal jurisdiction where the defendant intentionally directed tortious conduct at the forum, knowing it would cause injury there. *See Calder*, 465 U.S. at 790. Citing cases that employ the *Calder* effects test, Match argues that because Worldwide Vision's conduct during the Match negotiations was directed toward a Texas entity, personal jurisdiction over Worldwide Vision is proper. (Opp'n at 6-7.) But such an effects test has no application here.

In *Calder*, the Supreme Court explained: "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder*, 465 U.S. at 790. However, Worldwide Vision is not alleged to have engaged in any tortious activity, let alone such activity directed at, and causing injury in, Texas. (Mot. at 14-15.) *See also Walden v. Fiore*, 571 U.S. 277, 289 (2014) (rejecting personal

7

jurisdiction where conduct allegedly directed at forum state was not the "challenged conduct" of the tort claims). Match cites no authority explaining how Worldwide Vision's alleged ***nonactionable*** conduct during negotiations with Match, which caused no injury in Texas, could give rise to personal jurisdiction over claims that do not even challenge this conduct. Such a standard would flip *Calder* on its head. *See Calder*, 465 U.S. at 790 ("In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper ***on that basis***.") (emphasis added).[4]

### b. Match's alleged "uncertainty" does not save the claims against Worldwide Vision.

Recognizing that Worldwide Vision's connection to ***Match's*** tortious conduct cannot create personal jurisdiction over the former, Match next argues that "[i]n a declaratory judgment action, the alleged injury is typically the uncertainty created by the declaratory judgment defendant's refusal to resolve a claim for which it has threatened suit but declined to file." (Opp'n at 7.)[5] Even if this were the proper standard, Worldwide Vision has never "threatened suit" against Match, let alone in Texas, and the 4AC does not allege otherwise. Match attempts to overcome this fact with the naked assertion that Worldwide Vision "controls" Bumble and the present litigation, and therefore has threatened the present lawsuit. (Opp'n at 7.) This argument fails for three reasons.

First, Match cites no authority for the idea that if a ***subsidiary*** threatens litigation in a forum, its ***parent*** waives a personal jurisdiction defense. Second, there is no "threatened" but not

---

[4] Citing to a footnote in a pre-*Calder* case, Match suggests a "but-for" test, under which any conduct that is a "but-for" cause of the claims can give rise to personal jurisdiction. (Opp'n at 8.) This, however, is not the law. *See, e.g., Calder*, 465 U.S. at 790; *Walden*, 571 U.S. at 289.

[5] The only authority Match cites for this concept is a decision by the Federal Circuit expressly limited to the patent context that finds against exercising personal jurisdiction. *See Avocent Huntsville*, 552 F.3d at 1333.

"file[d]" claim here, as the Bumble entities are actively litigating their claims. Third, and most importantly, Match fails to substantiate the key premise that Worldwide Vision "controls" the litigation. Notably, Match does not cite to the 4AC for this assertion. This is likely because the 4AC alleges that Mr. Andreev controls this litigation "on behalf of Bumble" and then alleges that "Badoo Trading Ltd, Badoo Ltd., Badoo Software, Ltd., and Badoo Technologies Ltd[] control[] this litigation on behalf of Bumble." (4AC, ¶¶ 286-87). That is to say, the 4AC alleges that everyone Match has roped in *but* Worldwide Vision somehow controls the litigation for Bumble. These allegations shed no light on who controls what, but clearly do not implicate Worldwide Vision.

Moreover, the Fifth Circuit has set out the circumstances in which a corporate parent's control of a subsidiary is such that the actions of the subsidiary can be attributed to the parent for purposes of personal jurisdiction. *See Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000). The Fifth Circuit explained that such a finding is only proper where the subsidiary and parent are *alter-egos*—a finding that requires more than even "100% stock ownership and commonality of officers and directors." *Id*. (internal quotation and citation omitted). Match does not argue that any defendant is an alter-ego of Worldwide Vision and the 4AC does not allege any facts that would allow for such an argument. Match's "control" argument fails.[6]

---

[6] As for Match's argument that because Worldwide Vision refused to be bound by a judgment in a matter it was not a party to, it has caused the injury of uncertainty in Texas (Opp'n at 7), this cannot serve as a basis for personal jurisdiction. Otherwise, anytime a plaintiff requested that a foreign defendant agree to be bound by a judgment against its subsidiary, the plaintiff could manufacture personal jurisdiction if the foreign defendant refused. This is of course not the standard and Match cites no case law in support of such a dramatic expansion of personal jurisdiction in the context of corporate parents.

### 3. Match failed to address the unreasonableness of asserting jurisdiction.

The Motion explained why, even if the Court finds minimum contacts, personal jurisdiction would not be fair or reasonable. (Mot. at 16-17.) Match's rebuttal glosses over Worldwide Vision's argument and makes flawed points, short on authority. First, Match asserts that Worldwide Vision's primary witnesses are based in London, but this only shows, rather that disproves, the burden Worldwide Vision would face litigating in Texas. (Opp'n 17-18.) Next, Match argues that it and the forum have an interest in litigating these claims in Texas, because Match is a resident of Texas. (Opp'n at 18.) But Match cites no case law that the mere residency of the plaintiff is decisive or even relevant. Finally, Match argues that the claims should be adjudicated in one action (*id*.), but this does not explain why it is fair or reasonable to hale Worldwide Vision into a distant forum when it would otherwise not be a party to the litigation.

### D. The Insley Declaration is Properly Before the Court.

Match argues that Mr. Insley does not provide foundation for how he knows about Worldwide Vision's assets and operations. (Opp'n at 14.) However, Mr. Insley declares that he is a ***director*** of Worldwide Vision and this is the basis for his knowledge. (Insley Decl. ¶ 3.) Next, Match makes the peculiar argument that the Court cannot look to declarations, as they are "extrinsic evidence" (*see* Opp'n at 14-16), but the Court can rely on evidence submitted by a defendant contesting personal jurisdiction. *See e.g.*, *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000) (affirming dismissal for lack of personal jurisdiction and relying on company declarations).

## III. CONCLUSION

The Court should grant Worldwide Vision's Motion to Dismiss.

Dated: October 3, 2019    Respectfully submitted,

By: */s/ Joseph M. Drayton*

Joseph M. Drayton (*pro hac vice*)
NY Bar No. 2875318
**COOLEY LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
jdrayton@cooley.com

Michael G. Rhodes (*pro hac vice*)
CA Bar No. 116127
Matthew Caplan (*pro hac vice*)
CA Bar No. 260388
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone (415) 693-2000
Facsimile: (415) 693-2222
mrhodes@cooley.com
mcaplan@cooley.com

Rose S. Whelan (*Pro Hac Vice*)
DC Bar No. 999367
**COOLEY LLP**
1299 Pennsylvania Ave., N.W.
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
rwhelan@cooley.com

Deron R. Dacus (TX 00790553)
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Defendant Worldwide Vision Limited*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record on October 3, 2019.

/s/     *Joseph M. Drayton*
Joseph M. Drayton