# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **MATCH GROUP, LLC,** | |
| *Plaintiff,* | |
| vs. | |
| **BUMBLE TRADING, INC., BUMBLE HOLDING, LTD., BADOO TRADING LIMITED, MAGIC LAB CO., WORLDWIDE VISION LIMITED, BADOO LIMITED, BADOO SOFTWARE LIMITED, and BADOO TECHNOLOGIES LIMITED,** | Case No.: 6:18-cv-00080-ADA-JCM <br><br> **JURY TRIAL** |
| *Defendants.* | |
| **BUMBLE TRADING, INC. and BUMBLE HOLDING, LTD.,** | |
| *Cross-Plaintiffs,* | |
| vs. | |
| **MATCH GROUP, LLC and IAC/INTERACTIVE CORP.,** | |
| *Cross-Defendants.* | |

## DEFENDANTS BADOO TRADING LIMITED, BADOO LIMITED, BADOO SOFTWARE LIMITED, AND BADOO TECHNOLOGIES LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF MATCH GROUP, LLC'S FOURTH AMENDED COMPLAINT UNDER RULE 12(b)(2)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

    A.    The Opposition Fails to Demonstrate a Basis for the Court to Exercise Personal Jurisdiction Over the Badoo Defendants for Match's Patent Claims. ........................................................................................................ 2

        1.    The Opposition Does Not Support Personal Jurisdiction Over Badoo Trading in Connection with the Patent Claims. ............................ 2

            a.    Match Misrepresents the Documents It Attaches to Its Opposition and Contradicts Its Own Complaint. ........................... 2

            b.    Match Fails to Make a Prima Facie Showing of Personal Jurisdiction. ................................................................................... 5

        2.    The Opposition Also Fails to Show Personal Jurisdiction Over the Other Badoo Defendants in Connection with the Patent Claims. .............. 7

    B.    The Opposition Fails to Show a Basis for Personal Jurisdiction Over Match's Tenth Cause of Action. ............................................................... 9

        1.    Defendants' Refusal to Be Bound by a Judgment Against Bumble Is Not an Injury Giving Rise to Jurisdiction in Texas. ............................ 9

        2.    The Opposition Again Relies on Improper Group Pleading. ................... 10

        3.    The Acquisition Negotiations Are Not Evidence of a Continuing Business Relationship with Match in Texas. .......................................... 11

        4.    Match's Tortious Conduct Took Place After Mr. Wallichman's Single Trip to Texas. ............................................................................ 12

    C.    Match's Opposition Fails to Show It Would Be Reasonable to Exercise Jurisdiction Over Any of the Badoo Defendants. ................................................ 12

    D.    Match's Opposition Does Not Rebut That Section 1367(C)(3) Permits the Court to Dismiss the Tenth Cause of Action as to the Badoo Defendants. ......... 14

III.   CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Absolute Software, Inc. v. World Computer Security Corp.*,
No. A-09-CA-142-LY, 2009 WL 10678335 (W.D. Tex. Dec. 2, 2009) ...................................6

*Am. Bank Holdings, Inc. v. Grange Mut. Cas. Co.*,
No. 09-2228, 2010 WL 2302356 (D. Md. June 7, 2010).........................................................12

*Astornet Technologies Inc. v. BAE Systems, Inc.*,
802 F.3d 1271 (Fed. Cir. 2015).............................................................................................7

*Black v. JP Morgan Chase & Co.*,
No. 10-848, 2011 WL 4102802 (W.D. Pa. Aug. 10, 2011).................................................4, 6

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
322 F.3d 376 (5th Cir. 2003) ...............................................................................................11

*Energetiq Technology, Inc. v. ASML Netherlands B.V.*,
113 F. Supp. 3d 461 (D. Mass. 2015) ....................................................................................6

*FOX Factory, Inc. v. SRAM, LLC*,
No. 3:16-CV-00506-WHO, 2017 WL 4551486 (N.D. Cal. Oct. 11, 2017) ............................5

*Gessmann v. Stephens*,
51 S.W.3d 329 (Tex. App. 2001)...........................................................................................5

*Hageman v. Corporacion EG, S.A. de C.V.*,
No. SA:14-CV-976-DAE, 2015 WL 1510009 (W.D. Tex. Mar. 31, 2015) ............................8

*Head v. Las Vegas Sands, LLC*,
760 F. App'x 281 (5th Cir. 2019) .........................................................................................10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 813 (E.D. Tex. 2014).....................................................................................13

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)..........................................................................................4, 6

*Polar Electro Oy v. Suunto Oy*,
829 F.3d 1343 (Fed. Cir. 2016)..............................................................................................5

*Polythane Systems, Inc. v. Marina Ventures International, Ltd.*,
993 F.2d 1201 (5th Cir. 1993) ..............................................................................................13

*PrimeSource Building Prods., Inc., v. Phillips Screw Co.*,
No. 3-07-CV-0303-M, 2008 WL 779906 (N.D. Tex. Mar. 25, 2008)..................................4, 6

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ..............................................................................2

*Silicon Labs. Inc. v. Maxlinear, Inc.*,
    No. A-12-CA-692-SS, 2013 WL 12133974 (W.D. Tex. Jan. 17, 2013) ..............8, 9

*T.M. Hylwa, M.D., Inc. v. Palka*,
    823 F.2d 310 (9th Cir. 1987) ..............................................................................11

*Torgeson v. Nordisk Aviation Products, Inc.*,
    997 F.2d 881 (5th Cir. 1993) ..............................................................................10

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ..............................................................................5

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
    848 F.3d 1346 (Fed. Cir. 2017)...........................................................................10

**Statutes**

28 U.S.C. 1367(c)(3).............................................................................................2, 14, 15

# I. INTRODUCTION

Match's Opposition to the Badoo Defendants' Motion to Dismiss ("Opposition" or "Opp.") does not bother to argue that the Fourth Amended Complaint made a *prima facie* showing of personal jurisdiction. Instead, Match attaches **sixteen** exhibits to its Opposition and argues almost exclusively from these documents, none of which are referenced in the Fourth Amended Complaint and most of which are not properly before the Court. In this way, the Opposition is less a defense of the complaint challenged by the Motion,[1] than it is an improper attempt to amend the operative pleading mid-briefing.

Regardless, these exhibits fail to carry Match's burden of showing personal jurisdiction. With regard to Match's Patent Claims, Match mischaracterizes the documents attached to the Opposition, many of which are hearsay, and engages in speculation about how each Badoo Defendant developed the Bumble app. Even if the Court were to accept these mischaracterizations and indulge these leaps of logic—it should do neither—Match **still** has not carried its burden, as even then it has not identified specific conduct on the part of the Badoo Defendants that was directed toward Texas.

As for Match's Tenth Cause of Action for a declaration that it is generally not liable for its actions during acquisition negotiations, Match fails to identify conduct on the part of any Badoo Defendant that was directed at Texas and caused injury there. Moreover, the Court should choose not to exercise supplemental jurisdiction over this claim.

Beyond the lack of minimum contacts, it would not be fair or reasonable to hale the Badoo Defendants into a court in Texas, and subject them to the high costs of such litigation, when Match is already litigating its claims against the parties at the heart of each claim.

---

[1] Defined terms have the same meaning as in the Badoo Defendants' Motion to Dismiss. "Exhibit" or "Ex." refer to the exhibits to Match's Opposition.

## II.    ARGUMENT

Match does not argue that the Court can exercise general jurisdiction over the Badoo Defendants, so the Court must assess whether Match has established that each Badoo Defendant is subject to the Court's specific jurisdiction "for each claim."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006); *see generally* Opp.  Additionally, if the Court declines to exercise jurisdiction over the claims for which it has original jurisdiction—Match's patent claims—it should also dismiss claims for which it might have supplemental jurisdiction—Match's declaratory relief claim.  28 U.S.C. 1367(c)(3).

### A.    The Opposition Fails to Demonstrate a Basis for the Court to Exercise Personal Jurisdiction Over the Badoo Defendants for Match's Patent Claims.

#### 1.    The Opposition Does Not Support Personal Jurisdiction Over Badoo Trading in Connection with the Patent Claims.

Match's arguments regarding personal jurisdiction over Badoo Trading for the Patent Claims all stem from attachments to the Opposition—a tacit admission that the Fourth Amended Complaint failed to allege a *prima facie* showing of personal jurisdiction.  (*See* Opp. at 4-9.)  But these many attachments cannot cure the Fourth Amended Complaint's defects.   These documents just do not stand for what Match represents they do and, regardless, Match fails to articulate a viable theory of personal jurisdiction over Badoo Trading.

##### a.    Match Misrepresents the Documents It Attaches to Its Opposition and Contradicts Its Own Complaint.

Match argues in its Opposition that Badoo Trading owns, designs, operates, and maybe even distributes the Bumble app in the United States.  (*Id.* at 3-6.)  This is a remarkable departure from the Fourth Amended Complaint, which alleges none of the above.[2]   Unmoored from the

---

[2] In fact, the Fourth Amended Complaint alleges that **Bumble** markets the Bumble app in the United States (Fourth Am. Compl. ¶ 133), publishes the app to the Google Play Store and Apple App Store (*id.* ¶ 92), and designs the app (*e.g.*, *id.* ¶¶ 93, 117).

complaint at issue, Match arrives at these conclusions by mischaracterizing three documents:  an interrogatory response provided by Bumble (Ex. B), a Badoo Trading Corporate filing (Ex. C), and a January 2015 agreement between Bumble Holding[3] and Badoo Trading (Ex. A ("the 2015 Agreement")).

**First**, Match claims that Badoo Trading "contract[s] with literally every Bumble user[.]" (Opp. at 4.)  This is not true.  Bumble users agree to the Bumble Terms of Service, not any agreement with Badoo Trading (*see* https://bumble.com/terms), and the Bumble Terms of Service do not mention Badoo Trading (or any Badoo Defendant) (*id*. at § 12).

**Second**, Match argues that Badoo Trading "creat[ed]" the Bumble app, but cites no source for this claim.  (Opp. at 4.)  The 2015 Agreement suggests differently.  It states that while Badoo Trading would license backend features and code for the same,[4] Bumble also would supply content and the Bumble marks ("Partner content").  (Ex. A at § 2.1.)  Moreover, Match's Fourth Amended Complaint contradicts the Opposition.  Match alleges that ***Bumble*** "recently redesigned" the app "interface," (Fourth Am. Compl. ¶ 93 n.6), "***Bumble*** designed its app" in an allegedly infringing manner (*id.* ¶ 117 (emphasis added)), "***Bumble*** Holding, Ltd. is the listed distributing company for the Bumble app" (*id.* ¶ 92 (emphasis added)), and "***Bumble*** directly infringes the '023 Patent . . . by ***making*** and using a system that practices the claims of Tinder's patent" (*id.* ¶ 131 (emphasis added)).

**Finally**, Match repeatedly asserts that Badoo Trading "controls the operation" of the Bumble app in the United States.  (Opp. at 4, 5.)  But this is disingenuous.   Match makes this assertion based on a Badoo Trading corporate filing that states Badoo Trading "***and its***

---

[3] Then called Moxco.
[4] Under the 2015 Agreement, Badoo Trading retains ownership over this intellectual property, a fact Match makes much of, but fails to tie to any legal analysis.  (Opp. at 4.)

*subsidiaries*" collectively "operate" a list of dating apps, including Bumble. (*Id.* at 5 (citing Ex. C at 3 (emphasis added).)) The same filing later lists both Bumble Holding and Bumble Trading *as subsidiaries* of Badoo Trading. (*See id.* at 17.) This quote does nothing to advance Match's argument that Badoo Trading, as compared to Bumble, "operates" the Bumble app in the United States. Match cites no other source for the assertion that Badoo Trading, and not Bumble, "operates" the Bumble app.[5]

What Bumble's interrogatory response and the 2015 Agreement actually show is that Badoo Trading contracted with the British entity Bumble Holding to provide coding and backend features for parts of the Bumble app. (*See* Exs. A, B.) This is not a basis for personal jurisdiction. *See PrimeSource Building Prods., Inc., v. Phillips Screw Co.*, No. 3-07-CV-0303-M, 2008 WL 779906, at *4 (N.D. Tex. Mar. 25, 2008) (finding stream of commerce theory of personal jurisdiction requires a "product" and licensing design and technology to party that sold product insufficient); *Black v. JP Morgan Chase & Co.*, No. 10-848, 2011 WL 4102802, at *49 (W.D. Pa. Aug. 10, 2011), *report and recommendation adopted*, 2011 WL 4089379 (W.D. Pa. Sept. 14, 2011) ("merely entering into a licensing agreement with a company that delivers products into the stream of commerce is insufficient to support the exercise of personal jurisdiction"); *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010).[6]

---

[5] Match suggests that Badoo Trading may even distribute the Bumble app in the United States, based on language in the 2015 Agreement. (Opp. at 5.) But the 2015 Agreement actually calls for Bumble Holding to cut Badoo Trading off from access to any United States distribution channels after launch of the product. (Ex. A at § 3.1.2.) This is also undermined by the actual allegations in the Fourth Amended Complaint, which state that Bumble Holding, Ltd. distributes the app in the United States. (Fourth Am. Compl. ¶ 92.)

[6] Match makes other claims that misrepresent the facts and/or are irrelevant to the personal jurisdiction analysis: Match notes that Badoo Trading receives "revenue" from the Bumble app (Opp. at 4), but fails to mention all of that revenue flows back to Bumble per the 2015 Agreement. (*See* Ex. A. at § 5.1.) Match asserts that Badoo Trading owns Bumble app user data (Opp. at 4), but does nothing to explain how that is relevant to the personal jurisdiction analysis at hand. And

**b.** **Match Fails to Make a Prima Facie Showing of Personal Jurisdiction.**

The Motion explained the exacting standard for finding specific jurisdiction over an international defendant. (Mot. at 8-9.) Match fails to meet that standard, as neither the Fourth Amended Complaint, nor the documents attached to the Opposition, identify instances in which Badoo Trading "purposefully directed its activities" at Texas. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). At most, the Opposition suggests that Badoo Trading is in a contractual relationship with a British entity (Bumble Holding) and has provided code and services to that entity to support the Bumble app. But these are not contacts with Texas.

Match cites no cases that find personal jurisdiction in such circumstances. The cases the Opposition does cite are all inapposite and either (1) concern a manufacturer that intentionally sold *its own goods* to buyers in the forum or (2) are cited in support of Match's "inducement" theory, despite having no relevant holding on the issue.

Match cites *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016), to support an exercise of jurisdiction, but there the foreign defendant designed and manufactured the products in question, packaged them, and shipped them to American retailers. *Id.* at 1351 ("Suunto deliberately and purposefully shipped the accused products to Delaware retailers."). The same is true in *FOX Factory, Inc. v. SRAM, LLC*, No. 3:16-CV-00506-WHO, 2017 WL 4551486 (N.D. Cal. Oct. 11, 2017). There too, the foreign defendant sold its own goods to American buyers, using affiliates as distributors. *Id.* at *6. Match does not allege that Badoo Trading is selling its

---

Match claims it "appears that Badoo Trading is indemnifying the Bumble Defendants[]" (*id.* at 6), but an indemnification arrangement "does not represent the sort of purposeful direction of activities toward the forum State" that gives rise to jurisdiction. *Gessmann v. Stephens*, 51 S.W.3d 329, 337 n.5 (Tex. App. 2001).

own products in the United States, so these cases have no bearing on the present inquiry. *See PrimeSource Building Prods., Inc.*, 2008 WL 779906, at *4; *Black*, 2011 WL 4102802 at *49; *see also Nuance Commc'ns*, 626 F.3d at 1235.

Match also argues that Badoo Trading "induce[s]" infringement. (Opp. at 10-11.) As an initial matter, while no model of clarity, this argument appears to be principally premised on the assertion that Badoo Trading "operates" the Bumble app.[7] (*Id*.) For the reasons discussed in Section II.A.1(a), *supra*, that assertion fails.

Regardless, Match is unable to muster ***a single case*** finding personal jurisdiction over a foreign defendant that "induced" alleged infringement within the forum. Match first cites *Energetiq Technology, Inc. v. ASML Netherlands B.V.*, but there the court found personal jurisdiction was proper because the foreign defendant "entered into an ongoing development relationship with [co-defendant], the relationship foreseeably caused [co-defendant] to undertake significant activities in Massachusetts, [foreign defendant's] employees came to Massachusetts and [foreign defendant] sent communications into Massachusetts in the course of the relationship." 113 F. Supp. 3d 461, 466 (D. Mass. 2015). Match does not allege, or argue, that Badoo Trading sent employees or communications into Texas to allegedly induce infringement, and the only asserted agreement Badoo Trading has is with Bumble Holding—an entity based in the United Kingdom, with no offices in Texas. Match also cites *Absolute Software, Inc. v. World Computer Security Corp.*, but there the court found that the foreign defendants had sold products directly into the forum and maintained relationships with customers in the forum, including the ongoing provision of services. No. A-09-CA-142-LY, 2009 WL 10678335, at *5 (W.D. Tex. Dec. 2, 2009).

---

[7] The Opposition also asserts that Badoo Trading has an "indirect financial interest" in the success of Bumble, but cites no case law that would support this as a basis for personal jurisdiction regardless. (Opp. at 11.)

Finally, Match cites *Astornet Technologies Inc. v. BAE Systems, Inc.*, 802 F.3d 1271, 1273 (Fed. Cir. 2015), but that case did not consider personal jurisdiction at all.

None of these cases are on-point. Nor does Match otherwise rebut the case law Badoo Trading cited in the Motion, which held that a foreign parent cannot be haled into a forum on account of what is ultimately its subsidiary's conduct. (Mot. at 15-16.) For these reasons, Match fails to make a *prima facie* showing of personal jurisdiction over Badoo Trading in connection with the Patent Claims.

> **2. The Opposition Also Fails to Show Personal Jurisdiction Over the Other Badoo Defendants in Connection with the Patent Claims.**

Match's arguments regarding the other Badoo Defendants amount to mere speculation about how these Defendants are involved with the Bumble app. This speculation cannot carry Match's burden. Moreover, even if Match's conjecture were credited, it still would not amount to facts that could support personal jurisdiction for any of these Defendants.

With regard to Bumble Technologies, Match argues that Bumble's website, but not app, is hosted on servers nominally owned by an entity called Greysom. (Opp. at 6 (citing Ex. F).[8]) Match then argues that because Badoo Technologies also leases server space from the same entity, Badoo Technologies must be selling this server space to Badoo Trading,[9] who in turn must be using it to host the Bumble app, thereby rendering Badoo Technologies a direct infringer. (*Id.* at 6, 13.)

This argument is premised on mere guesswork and is not supported by any allegations in the Fourth Amended Complaint—Match is guessing that Badoo Technologies is leasing Badoo Trading server space to host the accused product. But "this Court cannot assert personal

---

[8] Exhibit F is inadmissible hearsay, and is not properly authenticated or subject to judicial notice.
[9] Match also asserts that Badoo Trading paid Badoo Technologies for "technology services" and, without any support in the cited document or elsewhere, assumes that these services were the provision of servers. (Opp. at 6.)

jurisdiction based on speculation or conjecture." *Silicon Labs. Inc. v. Maxlinear, Inc.*, No. A-12-CA-692-SS, 2013 WL 12133974, at *4 (W.D. Tex. Jan. 17, 2013); *see also Hageman v. Corporacion EG, S.A. de C.V.*, No. SA:14-CV-976-DAE, 2015 WL 1510009, at *8 (W.D. Tex. Mar. 31, 2015) (similar).  Even if the Court were to credit these factual leaps, they still would not offer a basis for personal jurisdiction, as Match cites no authority for the proposition that if a foreign defendant subleases server space, the conduct of the sub-lessor is attributable to the foreign defendant for purposes of a personal jurisdiction analysis.

Match engages in similarly unsubstantiated speculation with regard to Badoo Limited and Badoo Software.  Match asserts that Badoo Limited provides unspecified "mobile development services" to Badoo Software.  (Opp. at 7.)  Match takes this language from a Badoo Limited Annual Report that never mentions Bumble.  (Ex. G at 3.)  Match then states that Badoo Software "develops intellectual property," quoting a media article as the only source for the assertion.  (Opp. at 7, quoting Ex. H.[10])  However, Match then admits that the article does not actually mention Badoo Software.  (*Id.* at 7 n.4.)

Without much more, the Opposition speculates that Badoo Software and Badoo Limited were "likely" "licensors" in the 2015 Agreement between Bumble Holding and Badoo Trading, despite the fact the 2015 Agreement never mentions either entity.  (Opp. at 7-8.)  Remarkably, Match concludes from these vague assertions that Badoo Limited and Badoo Software Limited are "intimately involved in Badoo Trading's creation and ownership of the infringing Bumble application."  (*Id.* at 7.)  These assertions fail both because they are too general and unspecific (*see*

---

[10] The article is entitled *Exclusive Investigation: Sex, Drugs, Misogyny And Sleaze At The HQ Of Bumble's Owner*, but Match refers to it only as "public evidence."  This article is inadmissible hearsay.

Mot. at 13), and because they are mere conjecture regarding Badoo Limited and Badoo Software's involvement, if any, with the Bumble app. *See Silicon Labs.*, 2013 WL 12133974, at *4.

Moreover, even if Match had effectively alleged that Badoo Limited and Badoo Software developed some aspect of the Bumble app's code base (Match did not), that still would not be a basis for personal jurisdiction. Match's theory is that these entities license code to Badoo Trading that in turn develops aspects of an app for Bumble Holding, a British entity, in the United States. (Opp. at 13-14.) Match cites no caselaw that suggests this attenuated chain could give rise to personal jurisdiction in Texas, when no Badoo Defendant took any action aimed at the state or sold its own goods into the stream of commerce.

**B.     The Opposition Fails to Show a Basis for Personal Jurisdiction Over Match's Tenth Cause of Action.**

Match fails to show how the Badoo Defendants' "Acquisition-Related Contacts" give rise to specific jurisdiction over Match's Tenth Cause of Action. (*See id.* at 14-23.)

**1.     Defendants' Refusal to Be Bound by a Judgment Against Bumble Is Not an Injury Giving Rise to Jurisdiction in Texas.**

The Opposition does not—and cannot—cure the fundamental problem with Match's Tenth Cause of Action. The Fourth Amended Complaint does not allege any injury caused in Texas that could form the basis of jurisdiction. The possibility that "members of the Worldwide Vision Group" will allege claims against Match in the future cannot give rise to specific jurisdiction in Texas. (*See* Mot. at 18-19.) Match responds that the Badoo Defendants' "refusal to be bound by an adverse judgment against Bumble . . . is an injury that causes both reputational harm as well as the potential for additional litigation costs." (Opp. at 19; *see also* Opp. at 18 (defining "Match's injury" as the "uncertainty created by the Badoo Defendants' refusal to be bound by an adverse judgment against Bumble").) Not only are these vague and hypothetical "injuries" nowhere to be found in Match's Complaint, this argument leads to the absurd conclusion that any time a company

refuses to be bound by a judgment against a subsidiary or affiliate company, there is an injury in the forum state sufficient for jurisdiction. This cannot be the case, especially here, where Match's cause of action is effectively asking the Court to apply collateral estoppel or claim preclusion on issues that are already properly before it. (*See* Mot. at 19.)

The Opposition's limited authority attempting to justify this argument only belies Match's position. (*See* Opp. at 17-18.) In *Avocent Huntsville Corp. v. Aten International Co.*, the Federal Circuit held that the complaint's allegations were ***insufficient*** to establish specific jurisdiction over a foreign defendant, even where the defendant had sent multiple patent enforcement letters to plaintiffs and licensed its products for sale in the forum state. 552 F.3d 1324, 1334-36 (Fed. Cir. 2008). The foreign defendant in *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG* had sent multiple patent-infringement notice letters to plaintiffs, indicating an imminent threat to sue over the patents at issue. 848 F.3d 1346, 1350, 1358 (Fed. Cir. 2017) (holding specific jurisdiction inured over plaintiff's declaratory relief claim).[11] The Badoo Defendants have never sent such letters and, in fact, are not alleged to have made any threat of litigation ***at all***.

## 2. The Opposition Again Relies on Improper Group Pleading.

The Opposition once again relies on Match's improper group pleading tactic. The law is clear that allegations of jurisdictional contacts cannot be generally ascribed to multiple defendants. *See Head v. Las Vegas Sands, LLC*, 760 F. App'x 281, 284 (5th Cir. 2019) (plaintiffs are required to "submit evidence supporting personal jurisdiction over *each* defendant *without grouping them together*") (emphasis added). Match violates this basic principle when describing the

---

[11] Match cites multiple Federal Circuit cases, but it is Fifth Circuit law that controls personal jurisdiction over Match's declaratory relief claim. *Torgeson v. Nordisk Aviation Products, Inc.*, 997 F.2d 881 (5th Cir. 1993), also lends no support for Match on this point. That unpublished case involved a products liability action and was decided on a "stream of commerce" theory—irrelevant to Match's tortured argument on the declaratory judgment claim. *See id.*

"background" of the Match/Bumble acquisition negotiations. Match consistently repeats that individuals were communicating as "agents of the Badoo Defendants," without specifying which Badoo Defendant. (Opp. at 14-15.) The Opposition also claims—without citation to the Fourth Amended Complaint or any other source—that Mr. Idan Wallichman "*is* an officer of the Badoo Defendants" and "a *director* of them," and then proceeds to argue that it is "reasonable to infer" that any actions by Mr. Wallichman (or Mr. Andrey Andreev or Ms. Mariko O'Shea) were "on behalf of" all the Badoo Defendants, "as well as Worldwide Vision." (*Id.* at 15 n.9, 16 (emphasis in original).) Match provides no basis to support this conclusion. Additionally, Match claims— with no supporting evidence or citation to the Fourth Amended Complaint—that it was the "Worldwide Vision Group's strategic choice, alongside the Badoo Defendants, to litigate the acquisition-related claims (in Texas) in Bumble's name alone[.]" (*Id.* at 16.) These unsupported allegations should not be credited and many do not even bear on the jurisdictional issues at hand.

### 3. The Acquisition Negotiations Are Not Evidence of a Continuing Business Relationship with Match in Texas.

Even if the Court could attribute Match's allegations to particular Badoo Defendants, they cannot be the source of jurisdiction because the acquisition negotiations were initiated by Match. (*See* Mot. at 20-21 (citing Supreme Court and Fifth Circuit authority).) Additionally, contrary to Match's argument (*see* Opp. at 18-22), the negotiations are not evidence of any Badoo Defendant's desire to benefit from a long-term relationship with Match or the state of Texas. In short, the prospect of being acquired by a Texas company—as part of an international search for acquisition bids—does not show purposeful availment of the state's jurisdiction. Match's own case law is in accord. *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003) (defendants "specifically and deliberately 'reached out' to a Texas corporation . . . with the deliberate aim of entering into a long-standing contractual relationship"); *T.M. Hylwa, M.D., Inc.*

*v. Palka*, 823 F.2d 310, 314-15 (9th Cir. 1987) (defendant's action to continue serving as plaintiff's accountant showed "continu[ed] desire to benefit from the contractual relationship" it had with plaintiff based in forum state); *Am. Bank Holdings, Inc. v. Grange Mut. Cas. Co.*, No. 09-2228, 2010 WL 2302356, at *4-5 (D. Md. June 7, 2010) (plaintiff submitted affidavit establishing that defendant "initiated" business contacts with plaintiff and a merger agreement was ultimately executed between the parties). Acquisition negotiations that were initiated by Match, never consummated, and not part of longer-term business relationship with Texas-based Match cannot give rise to specific jurisdiction, for any of the Badoo entities.

### 4. Match's Tortious Conduct Took Place After Mr. Wallichman's Single Trip to Texas.

Match misrepresents Defendants' argument with respect to Mr. Wallichman's trip to Texas in 2017. (*See* Mot. at 21-22.) Defendants do not contend that Mr. Wallichman's trip is "totally 'unrelated'" to Bumble's declaratory judgment claim. (Opp. at 22.) As explained in Defendants' Motion, Mr. Wallichman's trip to Texas is unrelated ***to Match's tortious conduct*** in 2018, which forms the basis of Bumble's counterclaim. (Mot. at 21-22.) Because Match's alleged misrepresentations took place months after Mr. Wallichman's visit to Texas, that single 2017 trip cannot give rise to specific jurisdiction over Match's claim, which seeks a declaration of non-liability related to the 2018 representations.

Match has failed to show a basis to exercise specific jurisdiction over the Tenth Cause of Action against the Badoo Defendants.

### C. Match's Opposition Fails to Show It Would Be Reasonable to Exercise Jurisdiction Over Any of the Badoo Defendants.

Supported by sworn affidavits, the Motion explained why even if the Court finds minimum contacts, personal jurisdiction would not be fair or reasonable over any of the Badoo Defendants. (Mot. at 22-23.) Match's rebuttal fails.

***First***, the Opposition relies on the same speculative and group-pled allegations about the Badoo Defendants' relationship to the Bumble app. (*See* Opp. at 23-25 (including wholly unsupported claims that certain servers "likely" host "the app server functionality as well" and that Defendants "distribute the products of their joint work through established distribution channels").) These allegations should not be credited to determine whether it is reasonable or fair to exercise jurisdiction.

***Second***, Match's explanation for why Texas has an additional interest in this litigation against the Badoo Defendants misses the mark. The Opposition's authority only establishes the undisputed proposition that "a state has a significant interest in discouraging injuries that occur within the state[.]" (Opp. at 24 (quoting *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 813, 828 (E.D. Tex. 2014).) But as explained at length in the Motion and above, the Badoo Defendants did not direct their activities or cause an injury to Match in the state of Texas.[12] Match is correct that "Texas has an interest in [the] dispute . . . [between] multiple Texas entities, Match Group, LLC and Bumble Trading Inc." (Opp. at 24.) However, that says nothing about the state's interest in the alleged dispute that is the subject of this Motion—between Match and the foreign Badoo Defendants that lack sufficient contacts with Texas.

***Third***, Match notes that it cannot obtain recovery for patent infringement claims against the Badoo Defendants in a court outside the United States, but it fails to establish (or even argue) that Match could not obtain the requisite relief on those same claims against Bumble—claims that

---

[12] Match's other case, *Polythane Systems, Inc. v. Marina Ventures International, Ltd.*, 993 F.2d 1201 (5th Cir. 1993), is also distinguishable in this respect. The defendant there had performed a contract with the plaintiff in Texas, the products causing the underlying injury were partly assembled in Texas, and the defendant had already lodged counter-claims against the plaintiff in Texas. *Id.* at 1205-06 (also noting a buyer-seller relationship between plaintiff and defendant had existed between parties for three years). None of these determinative factors apply here.

are already being litigated among domestic defendants. (Opp. at 24.) The same holds true for Match's remark that it "makes little sense to litigate its declaratory judgment request in a different forum[.]" (*Id.*) Match is already litigating its claims and can obtain the relief it seeks from entities based in Texas. There is no argument in the Opposition to the contrary.

**Finally**, Match makes the desperate critique that Defendants do not cite a case "dismissing a nonresident defendant based solely on the fact that its witnesses and evidence were remote." (Opp. at 25.) While it is certainly a relevant factor in whether to exercise jurisdiction (*see* Mot. at 22-23), Defendants are not asking the Court to dismiss the case based "solely" on the fact that their witnesses or evidence are located outside of Texas. As explained in the Motion, not only are there not sufficient minimum contacts to exercise jurisdiction, ***each*** of the four factors that courts weigh to determine the reasonableness of exercising jurisdiction balance against jurisdiction over the Badoo Defendants.

### D.   Match's Opposition Does Not Rebut That Section 1367(C)(3) Permits the Court to Dismiss the Tenth Cause of Action as to the Badoo Defendants.

As an initial matter, Match states "[t]he Badoo Defendants acknowledge that the Court has already ruled that it has the power to rule on Match's DJ request" (Opp. at 25), but cites no source for this incorrect claim. The Motion specifically argues that the Court ***lacks*** personal jurisdiction to rule on the Tenth Cause of Action. (Mot. at 18-21; *see also* Section II.B, *supra*.) In the alternative, the Badoo Defendants argue that ***even if*** the Court determines it has personal jurisdiction over the Tenth Cause of Action, but not the Patent Claims, it still ought to dismiss. (*See* Mot. at 23-25.)

United States Code 28 Section 1367(c)(3) vests this Court with the power to dismiss Match's Tenth Cause Action if the Court cannot exercise jurisdiction over the Badoo Defendants for Match's Patent Claims, because the Court only has original jurisdiction over the Patent Claims.

In response to this authority, Match argues only that there is overlap between the Tenth Cause of Action and claims already pending. (Opp. at 26.) This position, however, is contrary to authority interpreting United States Code 28 Section 1367(c)(3) because, in this scenario, there would be no claim asserted against the Badoo Defendants for which the Court has original jurisdiction. (Mot. at 23-25.) Accordingly, if the Court does not exercise jurisdiction over the Badoo Defendants for Match's Patent Claims, it should also dismiss Match's Tenth Cause of Action, thus resolving all claims against the Badoo Defendants.

## III.     CONCLUSION

Because Match fails to make a *prima facie* showing of personal jurisdiction over any of the Badoo Defendants, the Fourth Amended Complaint should be dismissed as to them.

Dated: October 22, 2019                    Respectfully submitted,


By: */s/ Joseph M. Drayton*

   Joseph M. Drayton (*Pro Hac Vice*)
   NY Bar No. 2875318
   **COOLEY LLP**
   1114 Avenue of the Americas
   New York, NY 10036
   Telephone: (212) 479-6000
   Facsimile: (212) 479-6275
   jdrayton@cooley.com

   Michael G. Rhodes (*Pro Hac Vice*)
   CA Bar No. 116127
   Matthew Caplan (*Pro Hac Vice*)
   CA Bar No. 260388
   **COOLEY LLP**
   101 California Street, 5th Floor
   San Francisco, CA 94111-5800
   Telephone (415) 693-2000
   Facsimile: (415) 693-2222
   mrhodes@cooley.com
   mcaplan@cooley.com

Rose S. Whelan (*Pro Hac Vice*)
DC Bar No. 999367
**COOLEY LLP**
1299 Pennsylvania Ave., N.W.
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
rwhelan@cooley.com

Deron R. Dacus (TX 00790553)
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Defendants Badoo Trading Limited, Badoo Limited, Badoo Software Limited, and Badoo Technologies Limited*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record on October 22, 2019.

*/s/      Joseph M. Drayton*
Joseph M. Drayton

213433559