IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MATCH GROUP, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BUMBLE TRADING INC., BUMBLE HOLDING, LTD., BADOO TRADING LIMITED, MAGIC LAB CO., WORLDWIDE VISION LIMITED, BADOO LIMITED, BADOO SOFTWARE LIMITED, and BADOO TECHNOLOGIES LIMITED, | § | No. 6:18-cv-00080-ADA  JURY TRIAL DEMANDED |
| Defendants. | § | |
| BUMBLE TRADING INC. and BUMBLE HOLDING, LTD., | § | |
| Cross-Plaintiffs, | § | |
| v. | § | |
| MATCH GROUP, LLC and IAC/INTERACTIVECORP, | § | |
| Cross-Defendants. | § | |

## ORDER GOVERNING ELECTRONICALLY STORED INFORMATION

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified upon a stipulation of the parties filed with and approved by the Court, or by a contested motion for good cause shown.

1

3. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. By agreeing to this Order, no party waives any of its rights otherwise available under the Federal Rules, including under the cost shifting provisions of Federal Rule of Civil Procedure 26.

5. Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

    A. **General Document Image Format.** Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF") format. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    B. **Text-Searchable Documents**. The parties will provide document-level searchable text for all produced documents. Electronically extracted text shall be provided if available for all documents collected from electronic sources. Text generated via Optical Character Recognition ("OCR") shall be provided for documents originally maintained in hard copy, redacted documents, and electronic documents that do not contain electronically extractable text (e.g. non-searchable PDF documents and image files).

    C. **Footer.** Each document image shall contain a footer with a sequentially ascending production number.

D. **Native Files**. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format. The parties agree that .xls, .csv and other spreadsheet files will not be converted to another format and instead will be produced natively without a specific request for native production, absent good cause to produce in another format.

E. **No Backup Restoration Required**. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

F. **Load Files**. Metadata load files will contain the applicable fields listed in Appendix A, if available based on reasonable collection efforts.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email. To obtain email parties must propound specific email production requests, which shall not count against the Parties' agreed-upon limits as to requests for production.

7. Email production requests shall be in the form of an identification of the requested custodian(s), search term(s), and time frame. Such requests shall be reasonably specific and identify a reasonable time frame for responsive emails. The parties shall cooperate to identify the proper custodians, proper search terms, and proper timeframe. As part of this cooperation, each party side shall timely exchange a specific identification of the 12 most significant listed e-mail custodians in view of the pleaded claims and defenses within 21 days of the entry of this Order.[1]

---

[1] A "specific identification" requires a short description of why the custodian is believed to be significant.

Each requesting party side[2] may also propound up to five written discovery requests and take one deposition per producing party side to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. Such requests and such deposition does not count against the limits set by the Federal Rules or negotiated by the parties. The court may allow additional discovery upon a showing of good cause.

8. Each requesting party side shall limit its email production requests in the following manner. Each requesting party side shall identify a total of 7 custodians per producing party side for information sought relevant to allegations of patents, trademarks, trade dress and trade secret misappropriation (collectively, the "Intellectual Property Custodians"). For the Intellectual Property Custodians, no timeframes between January 2012 and the present will be presumptively unreasonable in scope. Each requesting party side shall identify 3 custodians per producing party side related to Bumble's allegations of fraud, negligent misrepresentation, unfair competition, promissory estoppel, and interference with prospective business relations and Match's corresponding declaratory judgment claims (collectively, "Bumble's State Law Counterclaim Custodians"). For Bumble's State Law Counterclaim Custodians, any elected timeframe prior to March 2017 is presumptively unreasonable and e-mails prior to that time need not be produced absent good cause. The parties may jointly agree to modify the limits set forth in this order without the Court's leave. The Court shall consider contested requests for up to two custodians related to Bumble's State Law Counterclaims and two other custodians, upon a showing of good cause.

---

[2] As used in this Order a "party side" includes Match Group LLC and IAC on the one hand, and Bumble Trading Inc and Bumble Holding, Ltd., and if the Court exercises jurisdiction over Badoo Trading Limited, Worldwide Vision Limited, Badoo Limited, Badoo Software Limited, and Badoo Technologies Limited on the other hand.

4

9. For the Intellectual Property Custodians, each requesting party side shall limit its email production requests to a total of ten search terms per custodian. The parties may jointly agree to modify this limit without the Court's leave. For Bumble's State Law Counterclaim Custodians, each requesting party side shall limit its email productions requests to a total of eight search terms per custodian. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or have a similar meaning. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the scope of the production. Each party shall serve a disclosure to the other party, within thirty (30) days from the date of this Order, of any limitations on its capability to run narrowing searches.

10. If, at any time, the producing party contends that any of the requesting party's requests, either individually or collectively, exceed any of the limitations of this Order, then the producing party shall inform the requesting party of such contention before the producing party incurs costs relating to such requests and the parties agree to meet and confer in good faith to reach a resolution. Nothing herein prohibits or supersedes the Court's power to order costs to be shifted for disproportionate ESI requests under the Federal Rules. However, before a producing party

incurs costs relating to ESI requests that it believes are disproportionate, the producing party shall inform the requesting party that it believes such ESI requests are disproportionate, identifying the specific ESI requests contended to be disproportionate and explaining the basis for that position, including providing any related ESI hit-counts, quotes or estimates. The parties shall then meet and confer in good faith regarding the identified ESI requests.

11. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding. The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose. The foregoing provisions do not otherwise modify the treatment of inadvertently produced material under the agreed Protective Order.

12. Backup media and systems no longer in use are deemed to be not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) and ESI from those sources must be preserved, but need not be searched, reviewed, or produced, unless good cause is shown. The following sources are also deemed to be not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) and need not be preserved:

- "deleted," "slack," "fragmented," or "unallocated" data on hard drives;
- random access memory (RAM) or other ephemeral data;
- on-line access data such as temporary internet files, history, cache, cookies, etc.;
- data in metadata fields that are frequently updated automatically, such as last-opened dates;
- automatically saved versions of documents;
- system or executable files (.exe, .dll, etc.);

- the contents of audio, video, or audio-visual information, including telephonic recordings or voicemail (e.g., .wav, .mp3, .avi, .swf, etc.), unless the responsiveness of specific files is apparent without searching the content or made known to counsel during search, review, collection, or production of other responsive information;

- unreadable or corrupt files;

- text messages, instant messages, and data from Blackberry, iPhone, or other smartphone devices, unless the responsiveness of specific conversations is made known to counsel during search, review, collection, or production of other responsive information;

- materials retained primarily for backup or disaster recovery purposes;

- any other file types subsequently agreed by the parties.

13. A party is only required to produce a single copy of a responsive document and a party may de-duplicate identical responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, or to the extent that population of the above fields is not possible or practicable, the parties shall meet and confer to discuss any other proposed method of de-duplication.

14. In an effort to reduce disputes and for the purpose of focusing the parties' search terms on relevant information while limiting the review of irrelevant information, the parties agree to run the proposed search terms and exchange ESI Search Reports before reviewing emails. ESI Search Reports should identify the number of hits per search term, and the custodians run against each set of terms, date ranges for the searches, and the actual terms used, to the extent they differ from the e-mail production request due to a party's technical capability. Upon request by either party, the parties agree to negotiate in good faith to refine the scope of the search terms using ESI Search Reports with the intent to better capture relevant information while limiting the collection of irrelevant information. Further, the parties agree not to use the ESI Search Reports to harass the other party and agree not to revise the search terms more than three times without good cause.

15. To the extent that a party intends to bring a corporate representative to trial that was not previously identified as a potential witness or email custodian before the close of discovery, that party shall produce the witness's email as described above, even if that would result in more than the allowed number of custodians subject to e-mail production requests. The producing party should identify the witness with enough time to confer regarding the e-mail search terms and to produce the documents sufficiently before trial to allow for their review.

16. If, after the identification and production of emails from the agreed-upon email custodians, a producing party intends to rely on an email that has not been captured in the email productions, the producing party must immediately give notice to the other side of such production and must also make a reasonable effort to immediately review, collect, and produce all relevant, non-privileged documents related to the produced e-mail document, irrespective of and notwithstanding any other provision in the ESI Order. Additional document custodians under this subsection shall not be counted against the limit of e-mail custodians.

17. Privileged or work-product protected communications that post-date the filing of the complaint in this litigation, involve counsel, and directly concern this litigation or inter partes reviews involving the asserted patents need not be identified on a privilege log. A party need include only one entry on the log (including the names of all of the recipients of the communications) to identify withheld emails that constitute an uninterrupted dialogue between or among individuals, provided that all participants to any portion of such dialogue shall be included in the log entry if the log entry reflects more than one email. The parties shall also log any redacted documents and identify those document(s) by Bates number in the respective log entry(ies).

SIGNED this 1st day of November, 2019

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE