IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MATCH GROUP, LLC, | § | |
| *Plaintiff* | § | |
| | § | W-18-CV-00080-ADA |
| -vs- | § | |
| | § | |
| BUMBLE TRADING INC., BUMBLE | § | |
| HOLDING, LTD, BADOO TRADING | § | |
| LTD., MAGIC LAB CO., | § | |
| WORLDWIDE VISION LIMITED, | § | |
| BADOO LIMITED, BADOO | § | |
| SOFTWARE LIMITED, BADOO | § | |
| TECHNOLOGIES LIMITED, | § | |
| *Defendants* | § | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Before the Court is Defendants Badoo Limited, Badoo Software Limited, Badoo Technologies Limited, and Badoo Trading Ltd.'s ("Defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12(b) which was filed on October 8, 2019. ECF No. 128. Plaintiff Match filed its response on October 16, 2019. ECF No. 130. Defendants filed their reply on October 22, 2019. ECF No. 131. For the reasons described herein, the Court **DENIES** Defendants' Motion.

**I.  Factual Background**

Match filed its Fourth Amended Complaint alleging infringement of U.S. Patents Nos. 9,733,811, 9.959,023, and 10,203,854. ECF No. 100 at 20-65. Match also alleges trademark infringement. *Id.* at 65. The patents are used in connection with innovations embodied in versions of Match's Tinder App. *Id.* at 2. In its Fourth Amended Complaint, Match added defendants Badoo Limited, Badoo Trading Limited, Badoo Software Limited, and Badoo Technologies Limited. *Id.* at 3-4.

1

According to the defendants, Badoo Trading is a foreign company in the United Kingdom that is the parent company of Bumble Holding, Limited. ECF No. 128 at 4. Badoo Limited is also a foreign company in the United Kingdom, and it is alleged to provide mobile development services to Badoo Software Limited. *Id*. Badoo Software Limited is a foreign company in Malta and is alleged to have provided support for the Bumble app. *Id.* at 5. Badoo Technologies Limited is a foreign company in Cyprus that is alleged to have provided services to the Bumble app. *Id.* at 6.

The exact relationships are muddled, but the Badoo Defendants are four sister companies that each have a role in the development of Badoo software. The extent of the role each company has in the development process, particularly in regard to the Bumble app, is a point of disagreement between the parties.

## II. Legal Standards

### A. Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss an action when it lacks personal jurisdiction over the defendant. For patent cases, Federal Circuit law governs personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). When there has not been any jurisdictional discovery or an evidentiary hearing regarding jurisdiction, the "plaintiff usually bears only a *prima facie* burden." *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

Personal jurisdiction is proper where the state long-arm statute permits service of process on the defendant and the requirements of due process are satisfied. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). Because the Texas long-arm statute has been interpreted as extending to the limit of due process, these two inquiries are the

same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). The Supreme Court has articulated a two-pronged test to determine whether the requirements of due process are satisfied: 1) the nonresident must have "minimum contacts" with the forum state, and 2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Breckenridge*, 444 F.3d at 1361.

General jurisdiction is present only when a plaintiff can show the defendant's connection to a forum is "so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third. *Elecs. For Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The test of reasonableness and fairness is "a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (citing *Burger King*, 471 U.S. at 477). This test requires balancing the following factors: " (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp.*, 84 F.3d at 429.

The Federal Circuit has also applied the "stream of commerce" theory born in *WorldWide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) and reaffirmed in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). *See Beverly Hills Fan*, 21 F.3d at 1566. In *Asahi*, two four-justice pluralities offered slightly different versions of this theory as a means of establishing the existence of minimum contacts. *Id.* Justice Brennan, supported by three other justices, argued jurisdiction could be validly exercised over a defendant who placed goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state. *See Beverly Hills Fan*, 21 F.3d at 1566 (citing *Asahi*, 480 U.S. at 117). Justice O'Connor, also supported by three other justices, argued there must be "more than the mere act of placing a product in the stream of commerce" and endorsed the additional requirement of "an action of the defendant purposefully directed toward the forum State." *Id.* (quoting *Asahi*, 480 U.S. at 112 (emphasis removed)).

The Federal Circuit has repeatedly refused to endorse either articulation of the stream of commerce theory. *See, e.g., Beverly Hills Fan*, 21 F.3d at 1566 ("We need not join this debate

4

here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364.

## III. Legal Analysis

### A. Personal Jurisdiction Exists for Match's Patent and Trademark Claims

Badoo defendants argue that Match has not made a prima facie showing that jurisdiction is proper for each of the Badoo defendants individually. ECF No. 128 at 11. The defendants contend that Match relies on group allegations and does not distinguish between the Badoo defendants. *Id.* Badoo relies on the case *Johnathon Paul Eyewear v. Live Eyewear, Inc.*, in which the Court found that generalized, collective allegations of unlawful conduct are insufficient to justify exercising specific jurisdiction over defendant. No. 12-cv-0908, 2013 WL 12090073, at *4 (W.D. Tex. Aug. 5, 2013).

Match argues in its response that Badoo Trading established minimum contacts by owning and operating the source code of the Bumble app while "acting in consort" with Bumble Holding to avail itself to the US market. ECF No. 130 at 10. Match cites *Polar Electro Oy v. Suunto Oy*, where the Court stated that minimum contacts may exist even if a manufacturer does not technically control marketing, distribution, or sales in the United States. 829 F.3d 1350 (Fed. Cir. 2016). Badoo's reply argues that Badoo Trading merely licensed the source code to Bumble

5

Holding, which is not a basis for personal jurisdiction because "stream of commerce" requires a product and not merely a license. ECF No. 131 at 4. Badoo asserts that Match's cited cases are irrelevant because they only involve a manufacturer selling its own goods, whereas the present case does not involve Badoo goods. *Id.* at 5.

In regard to Badoo Technologies, Match asserts that minimum contacts are established by the fact that Badoo Technologies leases servers from Greysom Limited and then leases the same servers to Badoo Trading. ECF No. 130 at 12. Match claims that since one of the suit's infringement theories involves server functionality alone, Badoo Technologies is subject to personal jurisdiction. *Id*. Badoo argues that this is mere guesswork and cannot sustain personal jurisdiction. ECF No. 131 at 7.

Match argues that Badoo Limited and Badoo Software established minimum contacts because they collectively code and license the Bumble application. ECF No. 130 at 13. Match likens these two entitles to the "manufacturers" of the Bumble app, relying on the same reasoning from its Badoo Trading argument that they "act in consort" with Bumble Holding to distribute the app to the United States. *Id.* Match relies on a "stream of commerce" theory that the source code passes through established distribution channels to the United States. *Id.* Badoo argues that Match's argument is purely conjecture. ECF No. 131 at 8–9. Badoo further states that even if Match's allegations regarding the involvement of Badoo Limited and Badoo Software with the development of the Bumble app are true, there is not a basis for personal jurisdiction based on an "attenuated chain" of licensing. *Id.*

The Court finds that the Badoo defendants are part of an established distribution channel, subjecting each of them to personal jurisdiction. The Badoo defendants have created a "stream of commerce" on their own, using an "attenuated chain" of licensing to pass the source code

6

downstream until it lands in the hands of Bumble Trading. The Court will not allow the defendants to destroy the "stream of commerce" chain by simply licensing the code within themselves.

Resolving fact issues in favor of Match would show that Badoo Limited and Badoo Software are analogous to the "manufacturers" of the Bumble app, while Badoo Trading leases servers from Badoo Technologies and finishes development with Bumble Holding, who then distributes the app to the United States through Bumble Trading. Although this case is different than the typical stream of commerce type fact scenario where a manufacturer sells its product to a distributor and the product ends up in a certain form, it has the same analogous fact situation. Here, source code (which creates the "app") is distributed downstream, which is similar enough in the Court's opinion to a tangible product typically found in stream of commerce cases. Thus, given the incestuous relationship between the Badoo entities, the Court finds the stream of commerce theory applicable in this case.

Additionally, the source code produced by Badoo Limited and Badoo Software is a product itself. Although Bumble may apply its own branding and features, the application's architecture is still based on the Badoo defendants' source code. The nature of software distinguishes this case from those where a product is manufactured overseas and brought over via a distributor. For physical products, the manufacturers must produce however many products it intends to sell for the public. The distributor then takes this finite number of manufactured products and sells them. For software, a manufacture only needs to "manufacture" one source code. A distributor could then supply any number of downloads to consumers based on that one source code. Thus, the argument based on the theory that Badoo is not manufacturing and selling its own product fails. Badoo created the source code and entered it into the stream of commerce.

This Court's ruling in *Slyce* also supports finding that jurisdiction is proper for the Badoo defendants. *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2019 WL 7598931 (W.D. Tex. Oct. 22, 2019), reconsideration denied, No. W-19-CV-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020). In *Slyce*, the Court applied personal jurisdiction against an out of state defendant that sold its software to a third-party, who then bundled the software into an app and sold it in the United States. *Id.* The present case has more reason to apply personal jurisdiction, as Badoo Limited and Software licensed their software to their sister company, Badoo Limited. Badoo Limited then licensed or developed the software with a subsidiary company Bumble Holding.

The Court therefore finds that Match has provided prima facie evidence demonstrating that Badoo has made "minimum contacts" with the forum state.

### B. Supplemental Jurisdiction Exists for Match's Declaratory Claims

Because the Court has jurisdiction over Match's patent and trademark claims, it elects to extend supplemental jurisdiction over Match's declaratory judgment claims, pursuant to 28 USC § 1367.

## IV. Conclusion

For the reasons contained herein, the Court **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction and supplemental jurisdiction.

**SIGNED** this 18th day of March, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE